**Case No. 23-1751**

IN THE

# United States Court of Appeals

## FOR THE SEVENTH CIRCUIT

◆ ◆

YORAM KAHN, individually and on behalf of all others similarly situated,

*Plaintiff-Appellant,*

— v. —

WALMART INC.,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION
NO. 1:22-CV-04177
HONORABLE SARA L. ELLIS, DISTRICT COURT JUDGE

## BRIEF AND REQUIRED SHORT APPENDIX
## FOR PLAINTIFF-APPELLANT

STANLEY D. BERNSTEIN
MICHAEL S. BIGIN
STEPHANIE M. BEIGE
BERNSTEIN LIEBHARD LLP
10 East 40th Street, 22nd Floor
New York, New York 10016
(212) 779-1414

SCOTT H. GINGOLD
GINGOLD LEGAL
1326 Isabella Street
Evanston, Illinois 60201
(773) 793-9093

*Attorneys for Plaintiff-Appellant*

Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-1751

Short Caption: Yoram Kahn v. Walmart Inc.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Yoram Kahn

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Bernstein Liebhard LLP, Gingold Legal

(3)     If the party, amicus or intervenor is a corporation:

i)     Identify all its parent corporations, if any; and

N/A

ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Stephanie M. Beige                    Date: 05/05/2023

Attorney's Printed Name:  Stephanie M. Beige

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     Yes ☑   No ☐

Address:  10 E. 40th St.

New York, New York 10016

Phone Number: (212) 779-1414                    Fax Number:  (212) 779-3218

E-Mail Address: beige@bernlieb.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No:    23-1751

Short Caption:    Yoram Kahn v. Walmart Inc.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Yoram Kahn

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Bernstein Liebhard LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b)   Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

---

Attorney's Signature:    s/ Stanley D. Bernstein    Date:    5/2/2023

Attorney's Printed Name:    Stanley D. Bernstein

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes [ ]    No [X]

Address:    10 E. 40th Street

    New York, New York 10016

Phone Number:    (212) 779-1414    Fax Number:    (212) 779-3218

E Mail Address:    bernstein@bernlieb.com

rev. 12/19 AK

Save As   Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: ____23-1751____

Short Caption: _____Yoram Kahn v. Walmart Inc._____

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

        [ ]     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

     Yoram Kahn

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

     Bernstein Liebhard LLP, Gingold Legal

(3)    If the party, amicus or intervenor is a corporation:

    i)     Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

     N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

     N/A

Attorney's Signature: ___/s Michael S. Bigin_____    Date: ___5/2/2023_____

Attorney's Printed Name: ___Michael S. Bigin_____

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** [ ]  **No** [X]

Address: ___10 E. 40th Street_____

      ___New York, New York 10016_____

Phone Number: ___(212) 779-1414_____    Fax Number: ___(212) 779-3218_____

E-Mail Address: ___bigin@bernlieb.com_____

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No:    23-1751

Short Caption:      Yoram Kahn v. Walmart Inc.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Yoram Kahn

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Bernstein Liebhard LLP, Gingold Legal

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b)   Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

---

Attorney's Signature:    /s Scott Gingold                    Date:    5/2/2023

Attorney's Printed Name:    Scott Gingold

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☒

Address:    1326 Isabella Street

    Evanston, IL  60201

Phone Number:    (773) 793-9093                    Fax Number:

E Mail Address:    scott@gingoldlegal.com

rev. 12/19 AK

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ................................................................. 1

STATEMENT OF THE ISSUES .................................................................. 1

STATEMENT OF THE CASE ..................................................................... 3

SUMMARY OF THE ARGUMENT .............................................................. 5

STANDARD OF REVIEW ......................................................................... 12

ARGUMENT .......................................................................................... 13

I.    Plaintiff Properly Pled That Walmart's False Shelf Pricing Is a Deceptive Practice That Violates the ICFA ................................................. 13

    A.    Plaintiff Pled Facts Showing a Deceptive Practice because False Price Advertising Is Unlawful Under the ICFA and Reasonable Consumers, Including Plaintiff, Are Likely To Be Misled by Walmart's False Shelf Pricing Practices .................................................................. 13

    B.    Plaintiff Pled Facts Showing That Walmart Intended for Plaintiff to Rely on Its Deceptive Practice of Advertising False Shelf Prices ........ 28

    C.    The District Court's Opinion Creates a New Judicial Exception for False Shelf Pricing Which Is in Direct Conflict with the Prohibitions and Intent of the ICFA and Is Against Public Policy .......................... 30

II.    Plaintiff Properly Pled That Walmart's False Shelf Pricing Is an Unfair Practice That Violates the ICFA .................................................. 33

III.    The District Court Erred in Dismissing Plaintiff's UDTPA Claim ................ 36

IV.    Plaintiff Properly Pled a Claim for Unjust Enrichment ................................. 38

CONCLUSION ....................................................................................... 39

ADDENDUM A

# TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*Al Haj v. Pfizer Inc.*,
  No. 17 C 6730, 2019 WL 3202807 (N.D. Ill. July 16, 2019) ................................... 27

*Aliano v. Louisville Distilling Co.*,
  115 F. Supp. 3d 921 (N.D. Ill. 2015) ....................................................... 36

*Aliano v. WhistlePig, LLC*,
  No. 14 C 10148, 2015 WL 2399354 (N.D. Ill. May 18, 2015) ................................. 37

*Athey Prod. Corp. v. Harris Bank Roselle*,
  89 F.3d 430 (7th Cir. 1996) ............................................................... 37

*Bank One Milwaukee v. Sanchez*,
  783 N.E.2d 217 (Ill. App. 2003) ...................................................... 24, 31

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................... 12

*Bell v. Publix Super Markets*,
  982 F.3d 468 (7th Cir. 2020) ..................................................... *passim*

*Benson v. Fannie Mae Confections Brands, Inc.*,
  944 F.3d 639 (7th Cir. 2019) ..................................................... *passim*

*Bober v. Glaxo Wellcome PLC*,
  246 F.3d 934 (7th Cir. 2001) ............................................................ 15

*Bonahoom v. Staples, Inc.*,
  No. 20-cv-1942, 2021 WL 1020986 (N.D. Ill. Mar. 17, 2021) .................... 11, 33, 34

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
  761 F.3d 732 (7th Cir. 2014) .................................................. 12, 21, 27

*Camasta v. Omaha Steaks Int'l, Inc.*,
  No. 12-cv-08285, 2013 WL 4495661 (N.D. Ill. Aug. 21, 2013) ....................... *passim*

ii

*Chow v. Aegis Mortg. Corp.*,
    286 F. Supp. 2d 956 (N.D. Ill. 2003) ............................................................ 11, 28

*Cooper v. Retrieval-Masters Creditors Bureau, Inc.*,
    42 F.4th 675 (7th Cir. 2022) .......................................................................... 6, 34

*Danone, U.S., LLC v. Chobani, LLC*,
    362 F. Supp. 3d 109 (S.D.N.Y. 2019) ........................................................... 16, 17

*Davis v. G.N. Mortg. Corp.*,
    396 F.3d 869 (7th Cir. 2005) ............................................................................... 21

*Duhl v. Nash Realty Inc.*,
    429 N.E.2d 1267 (Ill. App. 1981); ...................................................................... 24

*F.T.C. v. Think Achievement Corp.*,
    312 F.3d 259 (7th Cir. 2002) ............................................................................... 26

*Fuchs v. Menard, Inc.*,
    No. 17-cv-01752, 2017 WL 4339821 (N.D. Ill. Sept. 29, 2017) .......................... 22

*Fullerton v. Corelle Brands, LLC*,
    No. 18-CV-4152, 2019 WL 4750039 (N.D. Ill. Sept. 30, 2019)........................... 37

*Gansberg v. Kroger*,
    No. 2022-CH-08071 (Ill. Cir. Ct., Cook Cty. Apr. 7, 2023) ........................ *passim*

*Gohari v. McDonalds Corp.*,
    No. 2016-CH-08261, 2017 WL 11676255 (Cir. Ct., Cook Cty. July 13, 2017) *passim*

*Griffin v. Universal Cas. Co.*,
    654 N.E.2d 694 (Ill. App. 1995) ......................................................................... 29

*HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*,
    545 N.E.2d 672 (Ill. 1989) .................................................................................. 39

*Jefferson v. Sheahan*,
    664 N.E.2d 212 (Ill. App. 1996) ......................................................................... 31

*JPMorgan Chase Bank, N.A. v. Earth Foods, Inc.*,
    939 N.E.2d 487 (Ill. 2010) ................................................................................. 31

*Killeen v. McDonald's Corp.*,
    317 F. Supp. 3d 1012 (N.D. Ill. 2018) ................................................................ 21

*Kim v. Carter's Inc.*,
    598 F.3d 362 (7th Cir. 2010) ........................................................................ 16, 26

*Klunk v. Cnty. of St. Joseph,*
   170 F.3d 772 (7th Cir. 1999) ........................................................ 25

*Le v. Kohls Dep't Stores, Inc.,*
   160 F. Supp. 3d 1096 (E.D. Wis. 2016)........................................ 38

*McIntosh v. Walgreens Boots All., Inc.,*
   135 N.E.3d 73 (Ill. 2019) .............................................................. 29

*Mullins v. Direct Digital, LLC,*
   795 F.3d 654 (7th Cir. 2015) ........................................................ 15

*Oliveira v. Amoco Oil Co.,*
   776 N.E.2d 151 (Ill. 2002) ............................................................ 31

*Pekin Ins. Co. v. Precision Dose, Inc.,*
   968 N.E.2d 664 (Ill. App. 2012) ................................................... 39

*People ex rel. Hartigan v. Knecht Servs., Inc.,*
   575 N.E.2d 1378 (Ill. App. 1991) ................................................. 28

*Pugh v. Tribune Co.,*
   521 F.3d 686 (7th Cir. 2008) .......................................................... 7

*Robinson v. Toyota Motor Credit Corp.,*
   775 N.E.2d 951 (Ill. 2002) ................................................... *passim*

*Saccameno v. Ocwen Loan Servicing, LLC,*
   372 F. Supp. 3d 609 (N.D. Ill. 2019) ..................................... 35, 36

*Saika v. Ocwen Loan Servicing, LLC,*
   357 F. Supp. 3d 704 (N.D. Ill. 2018) ........................................... 35

*Saunders v. Michigan Ave. Nat. Bank,*
   662 N.E.2d 602 (Ill. App. 1996) ................................................... 22

*Siegel v. Shell Oil Co.,*
   612 F.3d 932 (7th Cir. 2010) ........................................................ 30

*Smith v. Prime Cable,*
   658 N.E.2d 1325 (Ill. App. 1995) ................................................. 15

*Stephens v. Capital One, N.A.,*
   No. 15-cv-9702, 2016 WL 4697986 (N.D. Ill. Sept. 7, 2016) ................ 36

*Tudor v. Jewel Food Stores,*
   681 N.E.2d 6 (1997)............................................................. *passim*

*Van Zeeland v. Rand McNally,*
   532 F. Supp. 3d 557 (N.D. Ill. 2021) ........................................ 38

*Vanzant v. Hill's Pet Nutrition, Inc.,*
   934 F.3d 730 (7th Cir. 2019) .............................. 13, 28, 33

*Wigod v. Wells Fargo Bank, N.A.,*
   673 F.3d 875 (7th Cir. 2017) ........................................ 28

*Zahn v. N. Am. Power & Gas LLC,*
   847 F.3d 875 (7th Cir. 2017) ........................................ 12

### Statutes

28 U.S.C. § 1291 ............................................................ 1

28 U.S.C. § 1332(d) ........................................................ 1

815 ILCS 505/1 ............................................................ 30

815 ILCS 505/2 ...................................................... 1, 2, 14, 31

815 ILCS 505/2J.2 ........................................................ 14

815 ILCS 510/2(a)(9) .................................................. 2, 14, 36

815 ILCS 510/2(a)(11) .................................................. 2, 14

815 ILCS 510/2(a)(12) .................................................. 14, 36

### Rules

Fed. R. Civ. P. 8 .......................................................... 33

Fed. R. Civ. P. 9(b) .................................................... 13, 33

Fed. R. Civ. P. 12(b)(6) .............................................. 5, 12, 26

## JURISDICTIONAL STATEMENT

The United States District Court for the Northern District of Illinois ("District Court") had jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d) because the amount in controversy exceeds $5,000,000 and it is a class action with more than 100 class members in which at least one class member is a citizen of a state different from the defendant. Plaintiff-Appellant Yoram Kahn is a citizen of Ohio and Defendant-Appellee Walmart, Inc. is a Delaware corporation with its principal offices in Arkansas and is therefore a citizen of Delaware and Arkansas. (SA8 at ¶¶8, 12, 14).

This Court has appellate jurisdiction over this case under 28 U.S.C. § 1291. The District Court dismissed the case with prejudice and entered final judgment on March 21, 2023. (SA44).

Plaintiff timely filed a Notice of Appeal on April 19, 2023 (SA45).

## STATEMENT OF THE ISSUES

Plaintiff alleges that Walmart knowingly deceives Illinois (and other) consumers by advertising one price on its shelves, successfully inducing consumers to rely on that advertised price to select those items, but then charging consumers a higher price at checkout. Plaintiff sued Walmart, alleging that these practices constitute both deceptive and unfair practices in violation of the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1 ("ICFA") and the Uniform Deceptive Trade Practices Act, 815 ILCS 505/2 ("UDTPA"), and in the alternative constitute unjust enrichment.

By its March 21, 2023 Opinion and Order (the "Opinion"), the District Court dismissed Plaintiff's ICFA claims with prejudice, holding that because Plaintiff was given an itemized receipt *after* he already had relied on the false shelf prices and been overcharged: (1) as a matter of law, there was no deception by Walmart; and (2) Walmart did not intend for Plaintiff to rely on the "incorrectly scanned price." (SA39-40). The District Court dismissed Plaintiff's UDTPA and unjust enrichment claims based on its finding that they were predicated on the same allegations that support Plaintiff's ICFA claims. (SA41).

Walmart routinely advertises lower prices on its store shelves than what it charges consumers for those items at checkout. It is a deceptive practice under the ICFA to advertise goods at one price but knowingly sell them at a higher price. *See e.g.,* 815 ILCS 505/2, 815 ILCS 510/2(a)(9) and (11). There are five issues presented:

1. Whether the District Court erred in holding that the issuance of a receipt, *after* a consumer has relied on a false shelf price and has been overcharged, legally negates the element of deception and insulates a retailer who knowingly uses false shelf price advertisements from liability under ICFA?

2. Whether the District Court erroneously ruled at the pleading stage that the issuance of the receipt, *after* the transaction was complete, proved conclusively that Walmart did not intend for Plaintiff to rely on the advertised shelf prices, despite allegations of exactly this intent?

2

3. Whether the District Court erroneously dismissed Plaintiff's unfair practice claim under the ICFA (with prejudice) without considering the claim separate from Plaintiff's deceptive practice claim and by applying the wrong legal standard?

4. Whether the District Court erred in dismissing Plaintiff's UDTPA claim based solely on its erroneous predicate finding that Plaintiff failed to plead his ICFA claims?

5. Whether the District Court erred in dismissing Plaintiff's unjust enrichment claim based solely on its erroneous predicate finding that Plaintiff failed to plead his ICFA claims?

## STATEMENT OF THE CASE

**Allegations of the Complaint**

Walmart—the nation's largest retailer—targets consumers in Illinois and nationwide with deceptive and unfair pricing practices. (SA7 at ¶¶5-7; A9 at ¶16). Walmart uses its store shelves to advertise the prices of products to consumers ("Shelf Pricing"), intending that they will rely on the Shelf Pricing to select the advertised goods from among similar products located nearby on the shelves. (SA6 at ¶2; SA11 at ¶22). However, as Walmart knows, its Shelf Pricing frequently understates the prices that Walmart will charge them at checkout, causing consumers *unknowingly* to pay higher prices than the Shelf Pricing they relied on. (SA6 at ¶3). Walmart's deceptive Shelf Pricing practices are company-wide, pervasive, continuous, and affect various merchandise throughout its stores. (SA27 at ¶86; SA30 at ¶106). These overcharges cost consumers hundreds of millions of dollars a year. (SA7 at ¶5).

Walmart knows that its Shelf Prices are deceiving consumers because Walmart has been fined for this deceptive practice by local agencies in multiple states numerous times. (*id*.). These fines are economically meaningless to the $500-billion per year retailer, so rather than change its systems to eliminate the practice, Walmart elects to continue to mislead consumers through its deceptive Shelf Pricing practices and to collect hundreds of millions of dollars in annual overcharges. (*id*.). For example, despite being fined $15,000 for overcharging consumers in five Walmart stores in North Carolina in February 2022, Walmart continued to use deceptive Shelf Pricing to overcharge consumers at the same stores just six months later. (SA16 at ¶36; SA18-19 at ¶¶46-48). Thus, Walmart knows that its Shelf Pricing practices deceive consumers to their financial detriment, but Walmart willfully continues to mislead and overcharge them because it is so profitable. (SA7 at ¶5).

Plaintiff was a victim of Walmart's deceptive Shelf Pricing practices. He purchased fifteen items at a Walmart store in Niles, Illinois on August 2, 2022, and for six of those items was charged more at checkout than what Walmart had advertised on the Shelf Pricing. (SA8 at ¶¶12-13; SA11-15 at ¶¶24-28). Plaintiff read and relied upon the false Shelf Pricing that was prepared and approved by Walmart. (SA15 ¶26; *accord* SA35). For each purchase, Plaintiff believed he was paying the price reflected on the Shelf Pricing; and he would not have purchased the items but for the advertised prices. (SA15 at ¶¶26-27). Plaintiff discovered he was overcharged only *after* the transaction at issue, when he was provided with a receipt and then

went back into the store and compared the prices he was charged to the advertised Shelf Pricing. (SA11-15 at ¶¶24-28).

**Procedural History and Disposition by the District Court**

On August 9, 2022, Plaintiff filed a putative class action complaint in the United States District Court for the Northern District of Illinois. (SA2). Walmart filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Fed. R. Civ. P. 12(b)(6)). (SA4). On March 21, 2023, the District Court granted Walmart's Rule 12(b)(6) motion with prejudice, thereby terminating the case. (SA5). The District Court's dismissal was based entirely on its finding that because Walmart issued a receipt that listed the prices Plaintiff was charged, there was no deceptive practice or requisite intent on the part of Walmart under the ICFA (or, by extension, under the UDTPA or for unjust enrichment). (SA39-40; SA41).

## SUMMARY OF THE ARGUMENT

The District Court's decision dismissing Plaintiff's complaint should be reversed because Plaintiff pled facts establishing valid claims under the ICFA, UDTPA, and for unjust enrichment. To plead a claim under the ICFA, a plaintiff must allege: (1) that the defendant committed a deceptive or unfair practice; (2) with the intent that others rely on the deception; (3) that the act occurred in the course of trade or commerce; and (4) that it caused actual damages. *Robinson v. Toyota Motor Credit Corp.*, 775 N.E. 2d 951, 960 (Ill. 2002). The District Court ruled that Plaintiff failed

to allege the first and second elements, defeating both his ICFA and UDTPA claims and, by extension, his unjust enrichment claim.[1] (SA39-41).

As to the first element—that Walmart committed a deceptive practice or unfair act—Plaintiff alleged facts establishing that:

- Walmart uses Shelf Pricing specifically to induce consumers to select the advertised goods from among similar products located nearby on the shelf and into believing that they will pay the price advertised. (SA11 at ¶22). However, after enticing them with the false shelf price advertisements, Walmart charges consumers higher prices than advertised at checkout. (SA11 at ¶23).

- Walmart knows that it is deceiving its consumers in this way and continues doing so because the profits from this deceptive practice far exceed the paltry fines Walmart pays to local agencies if, and when, it is caught. (SA7 at ¶5; SA15-19 at ¶¶32-48). Walmart's false Shelf Pricing practices are pervasive and continuous. (SA15 at ¶32).

- Plaintiff was deceived by Walmart's practices. On August 2, 2022, Plaintiff purchased 15 items from a Walmart store in Niles, Illinois and was charged more for 6 of the items at checkout than the prices misrepresented by the Shelf Pricing. (SA11 at ¶24; SA25 at ¶71).

- In selecting the items he did, Plaintiff relied on the Shelf Pricing and believed that he was paying the price reflected on the Shelf Pricing. (SA14-15 at ¶¶25-27).

- Walmart's Shelf Pricing / Overcharge practices are both deceptive and unfair. (*E.g.,* SA15-16 at ¶¶31-33; SA17 at ¶¶37, 41; SA21-22 at ¶55; SA24 at ¶¶67-69; SA25 at ¶¶71, 73).

---

[1] The District Court did not take any issue with the third and fourth elements. Nor did Walmart argue to the District Court that Plaintiff failed to establish them. *See Cooper v. Retrieval-Masters Creditors Bureau, Inc.*, 42 F.4th 675, 688 (7th Cir. 2022) ("a party has waived the ability to make a specific argument for the first time on appeal when the party failed to present that specific argument to the district court, even though the issue may have been before the district court in more general terms") (citing prior Seventh Circuit cases). Regardless, Plaintiff pled facts establishing the remaining elements.

As to the second element, regarding the requisite intent, Plaintiff alleged that Walmart intends for consumers to rely on its deceptive Shelf Pricing in choosing which items to purchase (SA11 at ¶22; SA25 at ¶70; SA27 at ¶84), and that consumers (including Plaintiff) reasonably rely on Walmart's Shelf Pricing to make such decisions. (SA6 at ¶2; SA14-15 at ¶¶26-27).

Notwithstanding these allegations (*see* SA35-36) (acknowledging the pleading of these facts), the District Court ruled:

> Here, Walmart provided Kahn with a receipt, reflecting the *incorrectly scanned prices*. Kahn could, and indeed did, use this receipt to compare the prices Walmart charged him with the advertised shelf pricing. This comparison revealed the discrepancy and dispelled any potential deception. (SA39-40). ... [2]
>
> Here, in light of the fact that Walmart provided Kahn with a receipt against which he could, and indeed did, compare the shelf price to the scanned price to determine if they differed, the Court cannot find that Walmart intended for Kahn to rely on the *incorrectly scanned price*.

(SA40) (emphasis added to reflect District Court's mischaracterization of facts alleged in Complaint).

Thus, this Appeal disputes the District Court's ruling that—even when a retailer knowingly engages in a practice whereby it misleadingly advertises one price on its shelves and then charges consumers a higher price at checkout (as is alleged here)—the issuance of a receipt *after* the consumer already has relied on the deceptive Shelf Pricing and overpaid for certain items, dispels the deception and effectively insulates

---

[2] In its Motion to Dismiss, Walmart reframed its allegedly deceptive practice as a "discrepancy" or "mere error" (SA38), and the District Court seems to have credited that characterization in its treatment of the arguments (SA39) rather than accept Plaintiff's allegations as true and resolving all reasonable inferences in Plaintiff's favor as was required. *See Pugh v. Tribune Co.*, 521 F.3d 686, 692 (7th Cir. 2008).

the retailer from liability under the ICFA, UDTPA, and common law. The Opinion is wrong as a matter of law and depends largely on the District Court's misapplication of *Tudor v. Jewel Food Stores*, 681 N.E.2d 6 (Ill. App. 1997) and other law.

In dismissing Plaintiff's claims, the District Court erred in the following ways:

***First,*** the District Court disregarded the allegations of deception in the Complaint. The District Court failed to accept as true Plaintiff's allegations, let alone view the allegations in the light most favorable to Plaintiff, as required at the pleading stage. Instead, the District Court effectively ruled that a retailer (Walmart) may use its Shelf Pricing to deceive consumers about the price they will be charged at checkout so long as the retailer issues a receipt after the transaction.

Neither *Tudor*, nor the cases cited by the District Court, nor any other case law, support the District Court's holding that a receipt alone negates a defendant's deception under the ICFA or UDTPA. *Tudor* and the other cases cited by the District Court hinge on the "totality of information" made available to the plaintiff ***before the fraud occurs***. While the issuance of a receipt was one of a "combination of factors" that led to the dismissal in *Tudor*, other courts have recognized that the *Tudor* decision was driven primarily by the fact that the defendant had a published policy specifically stating, "if the scanned price of any unmarked item is different from the price on the shelf, you will get the item for free." Thus, in *Tudor* there was no evidence of deception because the policy specifically warned shoppers in advance of their transactions that scanning errors might occur, and the defendant gave them a complementary means (a receipt and a free item) to enforce that policy. In contrast,

8

here Walmart provides no similar warning or notice alerting its consumers that charged prices may not match what they saw on the shelf; to the contrary, Plaintiff alleges that Walmart *intends* for its Shelf Pricing to mislead consumers and to result in overcharges.

The District Court's decision also conflicts with other Illinois state and federal courts that have addressed false price advertisements under the ICFA (both before and after the District Court ruled) and have rejected the view that the issuance of a receipt alone or a general money-back policy exonerates retailers for false price advertising. Indeed, just two weeks after the District Court dismissed Plaintiff's claims (with prejudice), an Illinois state court upheld an ICFA claim with virtually identical facts in *Gansberg v. Kroger*, No. 2022-CH-08071 (Ill. Cir. Ct., Cook Cty. Apr. 7, 2023) (attached hereto as Addendum A). The court in *Kroger* distinguished *Tudor* for the same reasons *Tudor* is distinguishable from this case, and rejected the assertion that a receipt given to a consumer after she relied on false Shelf Pricing negated the deception. The court was especially critical of the notion that a retailer issuing a receipt would be insulated from liability under the ICFA, emphasizing that reasonable consumers are not expected to go back and audit their receipts to ensure that a retailer is not falsely advertising prices. *Kroger*, No. 2022-CH-08071 at ¶2. Indeed, this Court recognized that a receipt does not dispel deception under the ICFA as a matter of law in *Benson v. Fannie Mae Confections Brands, Inc.*, 944 F.3d 639, 646-47) (7th Cir. 2019), where the Court declined to find a lack of deception based on the issuance of a receipt and information on the product's packaging which, the

9

defendant argued, fully disclosed the net weight and number of candies contained in the package (even though the Court relied on the receipt to dismiss an implied contract claim) (*see id.* at 646-47; 648-49).

By holding that a receipt alone negates any deception created by false Shelf Pricing, the District Court essentially created a judicial exception to the ICFA for false price advertising when no such exception exists. But, to the contrary, advertising false shelf prices is *per se* unlawful under the ICFA (including by incorporation of the UDTPA). Thus, the District Court's Opinion severely limits the ICFA by permitting deceptive price advertising by retailers so long as they issue receipts (which is likely almost 100% of the time). The Opinion, if upheld, will allow, and indeed incentivize, Walmart to continue to deceptively induce consumers to purchase items based on false Shelf Pricing, only to overcharge unknowing consumers at checkout. Such a judicially-created "safe harbor" has been rejected by Illinois courts, is contrary to the purpose and intent of the ICFA, and is detrimental to Illinois consumers.

**Second,** the District Court erred in finding that because Walmart provided a receipt, "the Court cannot find that Walmart intended for Kahn to rely on the *incorrectly scanned price.*" *See* SA40-41 (emphasis added). Mischaracterizing the Complaint, the District Court ignored allegations that Walmart intends for consumers to rely on *advertised shelf prices* to induce consumers to make purchase choices, but then charges them higher prices than advertised. (SA6 at ¶¶1-2; SA11 at ¶22; SA19 at ¶70; SA27 at ¶84). These facts adequately allege the required intent.

*See Chow v. Aegis Mortg. Corp.*, 286 F. Supp. 2d 956, 963 (N.D. Ill. 2003) ("To satisfy [the ICFA's] intent requirement, plaintiff need not show that defendant intended to deceive the plaintiff, but only that the defendant intended the plaintiff to rely on the (intentionally or unintentionally) deceptive information given").

***Third,*** the District Court erred in dismissing with prejudice Plaintiff's ICFA unfair practices claim. While the District Court acknowledged that Plaintiff alleges both deceptive practices and unfair practices claims under the ICFA (SA37-38), it erroneously elected to "interpret" the ICFA claim "solely as a deceptive practices claim." *Id.* However, deceptive practice claims and unfair practice claims are separate claims under the ICFA, with different elements and standards applicable to each claim, and both may be pled in the alternative in the same complaint even if they are based on the same alleged conduct. *See Benson*, 944 F.3d at 647 (holding that the same deceptive packaging behavior can support both claims, and denying a motion to dismiss both claims); *see also Bonahoom v. Staples, Inc.*, No. 20-cv-1942, 2021 WL 1020986, at *5 (N.D. Ill. Mar. 17, 2021) (holding that detailed factual allegations of false advertising and overcharging customers adequately pled an unfair practice under ICFA). The District Court failed to consider (and Walmart also did not address) Plaintiff's allegations that Walmart's pricing practices offend public policy, are immoral, unethical, unscrupulous, and are substantially injurious to consumers. Moreover, the District Court erred in dismissing Plaintiff's ICFA unfair practice claim as that claim does not require the element of deception.

**Fourth,** the District Court erred in dismissing Plaintiff's UDTPA claim based on its erroneous predicate finding that Plaintiff failed to plead his ICFA claims. Plaintiff adequately pled facts supporting the UDTPA claim.

**Fifth,** the District Court erred in dismissing Plaintiff's unjust enrichment claim based on its erroneous predicate finding that Plaintiff failed to plead his ICFA claims. Plaintiff adequately pled facts supporting all claims.

## STANDARD OF REVIEW

This Court reviews "de novo the dismissal of a complaint for failure to state a claim" pursuant to Fed. R. Civ. P. 12(b)(6). *Benson*, 944 F.3d at 644. "In so doing, [it] construe[s] the complaint in the light most favorable to the nonmoving party, accept[s] well-pleaded facts as true, and draw[s] all inferences in the nonmoving party's favor." *Zahn v. N. Am. Power & Gas LLC*, 847 F.3d 875, 877 (7th Cir. 2017) (internal quotations and alterations omitted). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014) (internal quotation marks omitted). "The plaintiffs need only 'nudge[ ] their claims across the line from conceivable to plausible.'" *Bell v. Publix Super Markets*, 982 F.3d 468, 476 (7th Cir. 2020) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).

**ARGUMENT**

**I.    Plaintiff Properly Pled That Walmart's False Shelf Pricing Is a Deceptive Practice That Violates the ICFA**

To state a claim under the ICFA based on a "deceptive practice" (as opposed to an "unfair practice," discussed separately in Section II below) a plaintiff must allege, in accordance with Rule 9(b): (1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive statement; (3) the deception occurred in the course of conduct involving trade or commerce; and (4) actual damages to the plaintiff proximately caused by the deception. *Robinson*, 775 N.E. 2d at 960; *see also Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739 (7th Cir. 2019) (applying Rule 9(b) to an ICFA claim); *Benson*, 944 F.3d at 646 (same).

Here, Plaintiff sufficiently pled detailed facts establishing each element of an ICFA deceptive practice claim. The District Court, however, dismissed the Complaint, holding that the first and second elements cannot be met because Walmart issues receipts to customers. These holdings are incorrect as they ignore the allegations of the Complaint, misapply Illinois law, and otherwise violate the intent of the ICFA. Accordingly, this Court should reverse the District Court's dismissal and deny Walmart's motion to dismiss Plaintiff's ICFA deceptive practice claim.

**A.    Plaintiff Pled Facts Showing a Deceptive Practice because False Price Advertising Is Unlawful Under the ICFA and Reasonable Consumers, Including Plaintiff, Are Likely To Be Misled by Walmart's False Shelf Pricing Practices**

The ICFA exists to protect consumers from being defrauded by retailers. As such, false price advertising is unlawful under the ICFA. The ICFA prohibits retailers, such as Walmart, from engaging in any unfair or deceptive act or practice using any false

13

promise, misrepresentation, or the use or employment of any practice described in Section 2 of the UDTPA. 815 ILCS 505/2. In turn, Section 2 of the UDTPA defines a "deceptive trade practice" to include: (1) advertising goods with intent not to sell them as advertised; (2) making false or misleading statements of fact concerning the reasons for, existence of, or amount of price reductions; and/or (3) engaging in any other conduct which similarly creates a likelihood of confusion or misunderstanding. 815 ILCS 510/2(a)(9), (11) and (12); *see also* 815 ILCS 505/2J.2.[3]

Walmart's Shelf Pricing practices violate the foregoing list of unlawful acts because: Walmart makes false promises as to the price that will be charged; its shelf prices are misrepresentations to the consumer; it makes shelf advertisements to sell goods (at one price) with the intent not to sell them at the advertised price; and it makes false statements concerning the amount of price reductions. There are no statutory exceptions to these unlawful practices for retailers who later issue a receipt.[4]

Further, under the catch-all broad language of the ICFA and UDTPA, a practice is deceptive if it "creates the likelihood of deception or has the capacity to deceive."

---

[3] 815 ILCS 2J.2 provides that if a retailer uses an automatic price look up system (*i.e.*, scanner system) rather than marking the price on each individual item, then that retailer must display the current price information in close proximity to the item, further demonstrating the Illinois legislature's intent that consumers be presented with accurate pricing information before they reach checkout and that they be able to rely on such price displays as accurate.

[4] Indeed, as discussed in Section I.C below, because essentially all retailers issue receipts, such an exception would frustrate the statute. For example, while the ICFA / UDTPA specifically prohibits retailers from "advertising goods with intent not to sell them as advertised" (as is alleged here), the District Court's ruling would allow any such transaction with the issuance of a receipt.

*Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001). "Where the deception is based on a misrepresentation, that misrepresentation must be material and must relate to a matter upon which the plaintiff could be expected to rely in determining whether to engage in the conduct in question." *Smith v. Prime Cable*, 658 N.E.2d 1325, 1336 (Ill. App. 1995). Courts apply a "reasonable consumer" standard in evaluating the likelihood of deception and look at this question in view of the "totality of information" available to the consumer. *Benson*, 944 F.3d at 647 (finding that the plaintiff pled a deceptive act where she alleged that she and others attached importance to the size of packaging, which was sufficient to indicate that a "reasonable consumer" would as well); *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 673 (7th Cir. 2015). "What matters most is how real consumers understand and react to the advertising." *Bell*, 982 F.3d at 476. This typically cannot be resolved at the pleading stage and dismissal is appropriate only if the statement "is not misleading as a matter of law." *Bober*, 246 F.3d at 938; *Bell*, 982 F.3d at 481. Only where a plaintiff bases deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, is dismissal on the pleadings justified. *Id.* at 477.

Walmart's alleged deceptive Shelf Pricing practice is straightforward: it advertises false, teaser prices that deceive reasonable consumers. Walmart intends that consumers will rely on the false Shelf Pricing and intends to profit when those consumers unknowingly overpay at checkout. Plaintiff's allegations are sufficient for pleading a deceptive practice under the ICFA. *Accord Gansberg v. Kroger*, No. 2022-

CH-08071 (Cir. Ct., Cook Cty. April 7, 2023) (Order) (claims that the defendant-grocery store charged more at checkout out than its advertised shelf prices sufficiently alleged a deceitful act under the ICFA); *Gohari v. McDonalds Corp.*, No. 2016-CH-08261, 2017 WL 11676255, at *1-2 (Cir. Ct., Cook Cty. July 13, 2017) (allegations that fast food chain charged higher prices at checkout than prices listed on its menu stated a claim for deceptive conduct under the ICFA); *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010) (allegations that a retailer used false price comparisons and that reasonable consumers were misled by the false comparisons were sufficient to plead that the defendant engaged in a deceptive act under the ICFA) (dismissal affirmed on other grounds).

This Court's decision in *Bell v. Publix Super Markets, Inc.* is instructive with respect to what is expected of a reasonable consumer. The plaintiffs in *Bell* alleged that they were misled by labels that stated "100% Grated Parmesan Cheese" because the products contained non-cheese ingredients. 982 F.3d at 474. The district court held that the labels were not deceptive as a matter of law because any ambiguity created by the 100% claim could be cleared up by reading the ingredient list on the back of the package. *Id* at 475. This Court disagreed, holding that even "an accurate fine-print list of ingredients does not foreclose as a matter of law a claim that an ambiguous front label deceives reasonable consumers." *Id.* at 476 (emphasizing that "[c]onsumer protection laws do not impose on average consumers an obligation to question the labels they see and parse them as lawyers might for ambiguities, especially in the seconds usually spend picking a low-cost product") (quoting *Danone,*

*U.S., LLC v. Chobani, LLC*, 362 F. Supp. 3d 109, 123 (S.D.N.Y. 2019) ("[A] parent walking down the dairy aisle in a grocery store, possibly with a child or two in tow, is not likely to study with great diligence the contents of a complicated product package, searching for and making sense of fine-print disclosures in asterisked footnotes. . . . Nor does the law expect this of the reasonable consumer"); *see also Benson*, 944 F.3d 646-47 (declining to accept the defendant's argument that the candy's packaging and the issued receipt dispelled deception because they disclosed the accurate weight and price of the candy because the plaintiffs alleged that reasonable consumers place significance on packaging size).

The same is true here. Just as reasonable consumers can be deceived by ambiguous or inaccurate labels and are not expected to investigate the accuracy of the representations by reading a package's fine print, reasonable consumers are also deceived by false shelf price advertisements and are not required to confirm those price representations by auditing their receipts after already having unknowingly overpaid.[5] *See Kroger*, No. 2022-CH-08071 at ¶2 (rejecting the assertion that consumers must record all prices of their items, purchase them, and then compare the receipt to their own data to ensure that the retailer is honoring its advertised prices). Instead, reasonable consumers expect that retailers—especially a nationwide giant such as Walmart—will charge them the prices advertised. Accordingly, the

---

[5] Notably, in fact, while the ingredient lists on the back of products *are* part of the totality of information available to consumers when evaluating representations on front labels (at the time they are deceived by the misleading representations), in contrast, the charges shown on a receipt *are not* available to the consumer at the time they select a product for purchase based on Walmart's deceptive Shelf Pricing.

17

Complaint details a deceptive practice that is sufficient to withstand a Rule 12 motion.

### 1.   *Tudor* Does Not Support the District Court's Holding That a Receipt Dispels the Deception Caused by Walmart's False Shelf Pricing

Ignoring Plaintiff's allegations that Walmart's deceptive false Shelf Pricing practices are intentional and pervasive, the District Court mistakenly twisted the holding of *Tudor v. Jewel Food Stores, Inc.*, 681 N.E.2d 6 (Ill. App. 1997), to opine that because Plaintiff was provided with a receipt evidencing the overcharges, there was no deception under the ICFA. (SA39). *Tudor* does not support the District Court's novel holding.

The plaintiff in *Tudor* brought consumer fraud claims for items that were mis-scanned, causing her to pay more for the items than the advertised prices. *Tudor*, 681 N.E.2d at 7-8. While *Tudor* involved a similar claim to the one at issue here (*e.g.*, that the plaintiff was overcharged at checkout) it is entirely distinguishable from this case because its holding was driven by materially different fact allegations and a superseded regulatory interpretation.

Critically, *Tudor* did not hold, as the District Court wrongly interpreted, that a receipt alone dispelled the alleged deception for mis-scanned items. Rather, the court found that a "combination" of facts indicated that there was no deception on the part of the defendant—including facts that are not present here. *Tudor*, 681 N.E.2d at 8. Specifically, the appellate court in *Tudor* placed heavy emphasis on the admissions in the complaint that the defendant's scanners were 96% accurate and that the

18

defendant had a policy that specifically offered mis-scanned items for free. *See id*. at 8; *accord Camasta v. Omaha Steaks Int'l, Inc.*, No. 12-cv-08285, 2013 WL 4495661, at *9-10 (N.D. Ill. Aug. 21, 2013) (stressing that it was this combination of facts that drove *Tudor*, and not any one of them alone).

In analyzing the facts that dispelled the alleged deception in *Tudor*, the *Tudor* court first contrasted the plaintiff's allegation that the defendant had a company-wide 96% scanner accuracy rate from 1991 to 1993 with what the National Conference on Weights and Measures ("NCWM") then-considered a "serious violation" of its guidelines −75-92% accuracy rates. *See Tudor*, 681 N.E.2d at 8. Significantly, fifteen years after *Tudor* was decided, in 2012, the U.S. Government published its clarification on the significance of the NCWM error rate "guideline" in the FAQs on its website (an official website of the U.S. Government), and clarified that even 98% accuracy rates do not insulate retailers from liability for deceptive overcharges: "It is unlawful in all States to advertise a price that is not accurate" and "It would be incorrect to interpret the [guidelines] to mean that stores are allowed to have 2% of their products incorrectly priced."[6]

Today, the *Tudor* court would be wrong to interpret the recommended regulatory error rate in the way it did in 1997 (that relatively high accuracy rates are suggestive of a legal lack of deception). Because the defendant's accuracy rate was one of the facts that drove the court's decision in *Tudor*, its dismissal of the ICFA claim is unreliable. That aside, Plaintiff's allegations showing Walmart's Shelf Pricing was

---

[6]    *See https://www.nist.gov/pml/*owm/*laws-and-regulations/price-verification* (stating these FAQs were created January 30, 2012 and updated October 8, 2019).

fraudulent for 40% of the items he purchased on one shopping trip distinguishes the facts here from *Tudor*. (SA11 at ¶24).

The *Tudor* court also found it material that the defendant had a store policy that specifically put consumers on notice that the scanned prices may not match the shelf prices, and guaranteed its shelf prices by offering any mismarked item free. *Tudor*, 681 N.E.2d at 8 (defendant's published policy expressly applicable "if the scanned price on any unmarked item is different from the price on the shelf"). Thus, the receipt issued by the *Tudor* defendant did not contribute to dispelling the alleged deception; it was the enforcement mechanism for the shelf-price-specific money-back policy. *See also Camasta v. Omaha Steaks*, 2013 WL 4495661, at *9 (rejecting defendant's "no deception" argument because "Unlike in *Tudor*, where the money back guarantee specifically highlighted the [shelf price - scanner] overpayment at issue…, here [plaintiff's] allegations do not foreclose a finding that defendant's advertising practices were deceptive").

Perhaps, when a retailer specifically tells its customers in advance that the scanned price may be higher than the shelf price, the retailer does not intend to deceive its customers. But that circumstance is not present here. Walmart does not warn its shoppers that its Shelf Pricing may understate the price they may be charged at checkout and does not specifically guarantee Shelf Pricing accuracy by offering overcharged items for free. (SA41 at n. 4). To the contrary, Plaintiff alleges that Walmart profits hundreds of millions of dollars each year from this practice, and that

it therefore intentionally chooses not to put systems in place to put an end to the deception. (SA7 at ¶5; SA15 at ¶32).[7]

Further, unlike in *Tudor*, there was no information made available to Plaintiff *at the time he was misled* that could have dispelled the misleading nature of Walmart's false Shelf Pricing. *See Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005) ("the allegedly deceptive act must be looked upon in light of the totality of the information made available to the plaintiff"). Plaintiff was misled about the prices when he read and relied upon the false Shelf Pricing. Plaintiff did not learn (and cannot possibly have learned) that he was deceived—or for which items—until *after* he completed his purchase. The receipt was given to Plaintiff *after* his purchase was complete—after the deception *already* had occurred. *See Camasta v Jos. A. Bank Clothiers*, 761 F.3d at 737-38 ("A sales receipt provided to a consumer *after* a purchase cannot show what was supposedly advertised; the representation must have been made to him before the purchase of the merchandise") (emphasis added).

For this reason, the other deception cases relied upon by the District Court are completely inapposite, as they all deal with information available to the plaintiff which revealed the deception *before* the transaction was complete. (SA39). *See Killeen v. McDonald's Corp.*, 317 F. Supp. 3d 1012, 1013 (N.D. Ill. 2018) (finding no deception because the prices for individual items appeared on the menu alongside the prices for

---

[7] Even if Walmart offered a return policy, a fact not a part of the record here, it would be far less indicia of lack of intent than warning consumers of possible pricing errors and offering any mispriced item for free. Giving the customer the overcharged item for free creates a financial loss for the retailer, which suggests the retailer did not intend to deceive consumers with false shelf prices. A price adjustment/refund insulates the retailer from writing off the item as a loss and maintains a profit margin for the item.

the Extra Value Meal that the plaintiff claimed were misleading); *Fuchs v. Menard, Inc.*, No. 17-cv-01752, 2017 WL 4339821, at *5 (N.D. Ill. Sept. 29, 2017) ("[T]he lumber's width and height are right there for the measuring. … Plaintiffs can readily see if there is a mismatch between what they perceive as the size on the label and the height and width of the lumber"); *Saunders v. Michigan Ave. Nat. Bank*, 662 N.E.2d 602, 608  (Ill. App. 1996) ("[T]he listing of the overdraft charge was buried in several documents[.] … Saunders received all the information necessary concerning overdraft charges. … Saunders accepted the unambiguous fee terms by opening her account").

Thus, the totality of information available to Plaintiff here did not negate the deception caused by Walmart's false Shelf Pricing. Unlike *Tudor*, Plaintiff alleges a deceptive, company-wide practice whereby Walmart *knowingly* misleads consumers through its false Shelf Pricing and *intentionally* chooses to continue to deceive and overcharge its shoppers. (SA15-16 at ¶¶32-36). The District Court's reliance on *Tudor* was wrong.

### 2. Illinois Courts That Have Addressed Fraudulent Pricing Claims Since *Tudor* Have Rejected the View Adopted by the District Court

The District Court's finding that a receipt alone dispels any deception as a matter of law is a misapplication of *Tudor* that has been rejected by Illinois state courts in cases involving the same type of false price advertisements that are alleged here.

For example, two weeks after the District Court issued its decision in this case, Cook County Circuit Court Judge Eve M. Reilly came to the exact opposite conclusion as the District Court here. *See Kroger*, No. 2022-CH-08071. Like Plaintiff, the

plaintiff in *Kroger* alleged that the defendant-retailer violated the ICFA by advertising lower prices on its shelves but charging higher prices at checkout. *Id.* at ¶1. Like Walmart, the defendant in *Kroger* moved to dismiss the plaintiff's complaint based on *Tudor*, claiming that because the plaintiff was provided with a receipt, she was not deceived. *Id.* at ¶2. However, contrary to the District Court, Judge Reilly flatly rejected the assertion that a receipt dispels the deception caused by false shelf prices, and distinguished *Tudor* for the same reasons Plaintiff argues *Tudor* is distinguishable from this case. *Id.* Notably, Judge Reilly also highlighted that, unlike *Tudor*, the plaintiff in *Kroger* (like Plaintiff here) alleged that the defendant's continued false shelf pricing was intentional. *Id.* ("despite Defendant being aware of the overcharging issue 'Defendant continues to routinely charge more for various groceries than their advertised price'").

Judge Reilly also articulated the absurdity of the assertion (and thus, the District Court's holding) that consumers are not misled by false shelf prices if they are provided with a receipt:

> By Defendant's logic, Plaintiff, and all others similarly situated, should record all pricing of their shopping, purchase the items to acquire a receipt, and then compare the receipt to their own data to ensure that Defendant is, in fact, honoring its own advertised pricing, and Plaintiff's failure to do so would excuse Defendant from having to charge its advertised pricing as Plaintiff 'should have known' some advertised prices were not what Plaintiff was actually charged. Should Plaintiff then realize she was overcharged, she must not have [been] deceived by Defendant's practice and Defendant cannot be liable under the UDTPA and ICFA because, any alleged deceitful act did not actually deceive Plaintiff. Despite Defendant's creative approach, the language of the ICFA … [makes such behavior] unlawful **whether any person has in fact been misled[ or] deceived** ….

23

*Id.* (emphasis in original).

Judge Reilly's rejection of the defendant's attempt to insulate itself from liability under the ICFA through the issuance of a receipt recognizes the reality of the consumer shopping experience and highlights the pernicious effects of the District Court's decision here. This is not only an illogical result, but it runs afoul of the very purpose of the ICFA. *See Bank One Milwaukee v. Sanchez*, 783 N.E.2d 217, 220 (Ill. App. 2003) (noting that "there is a clear mandate from the Illinois legislature that the courts utilize the Act to the utmost degree in eradicating all forms of deceptive and unfair business practices and grant appropriate remedies to injured parties") (quoting *Duhl v. Nash Realty Inc.*, 429 N.E.2d 1267, 1277 (Ill. App. 1981); *see also Bell*, 982 F.3d 468 at 476 (recognizing that the law does not expect reasonable consumers to study packaging fine-print searching for disclosures).

For the same reasons, in *Gohari*, Judge Kathleen M. Pantle rejected the assertion that the issuance of a receipt dispelled any deception in a case against a fast-food retailer for advertising false menu prices. Similar to Plaintiff's allegations, the plaintiff in *Gohari* alleged that McDonald's violated the ICFA by advertising lower prices on its digital display menu but then charging the plaintiff higher prices at checkout. 2017 WL 11676255, at *1-2. In denying the defendant's motion to dismiss (for the second time), Judge Pantle distinguished *Tudor*: "Similar to Jewel, McDonald's Lott #1 issued Gohari a receipt, which allowed her to check whether she had been correctly charged. However, unlike Jewel, McDonald's did not offer Gohari a money-back guarantee if the price she was charged differed from the price

advertised on the menu board." *Id.* at \*6. And, like Judge Reilly in *Kroger*, Judge Pantle found it notable that the plaintiff in *Gohari* (like Plaintiff here, but unlike the plaintiff in *Tudor*) alleged that McDonald's knew its advertised prices were wrong and intentionally failed to correct them. *Id.* at \*6 (trier of fact could conclude that McDonald's conduct was deceptive because McDonald's knew the menu boards were wrong and didn't fix them or charge her the price advertised).

Thus, *Kroger* and *Gohari*, two state court decisions interpreting Illinois state law in cases involving overcharges, held that a receipt alone does not dispel the deception caused by false price advertisements. To Plaintiff's knowledge, *Kroger* and *Gohari* are the only Illinois state cases involving the type of false price advertising practices alleged here (*i.e.*, advertising one price but charging a higher price at checkout) (other than *Tudor*) and both cases flatly rejected the position taken by the District Court. Because Plaintiff's substantive claims arise under state law and state courts have addressed the specific questions raised, *Kroger* and *Gohari* are persuasive. *See Klunk v. Cnty. of St. Joseph*, 170 F.3d 772, 777 (7th Cir. 1999) ("To the extent that the state's highest court has not addressed an issue, we examine the decisions of the lower state courts").

Indeed, in *Benson*, this Court declined to accept the argument that a receipt proved a lack of deception as a matter of law under the ICFA (even though the Court relied on the receipt to dismiss the plaintiffs' implied contract claim). *See Benson*, 944 F.3d at 646-49. Further, at least one other Illinois federal court has rejected the concept that a receipt alone would be enough to dispel a deceptive act at the pleading

25

stage. In *Camasta v. Omaha Steaks*, 2013 WL 4495661, at *1, Judge Lefkow denied a Rule 12(b)(6) motion to dismiss and rejected the defendant's attempt to rely on *Tudor* the way the District Court has here. In *Camasta v. Omaha Steaks,* the plaintiff alleged that he was induced to purchase steaks based on allegedly misleading signage of "sale prices" that were fictitious. *Id.* at *1-3. The plaintiff received a receipt that showed the actual price he paid (which matched the price advertised) and included a general money-back guarantee "for any reason at all." *Id.* at *1. Like Walmart, the defendant argued that the information available to plaintiff allowed him to "determine defendants' pricing practices" and to return the steaks for a full refund, and therefore under *Tudor* there was no deception. Judge Lefkow disagreed, finding "[u]nlike in *Tudor*, however, where the money back guarantee specifically highlighted the [type of conduct that could lead to the] overpayment at issue and the plaintiff admitted that charges were 96% accurate, here [plaintiff's] allegations do not foreclose a finding that defendants' advertising practices were deceptive." 2013 WL 4495661, at *9.[8]

Judge Lefkow further observed, "the argument that a money back guarantee essentially makes any alleged falsity in advertising irrelevant because it is harmless 'has been repeatedly rejected.'" *Camasta v. Omaha Steaks*, 2013 WL 4495661, at *9 (citing *inter alia F.T.C. v. Think Achievement Corp.*, 312 F.3d 259, 261 (7th Cir.

---

[8] Judge Lefkow's holding in *Camasta* also is consistent with this Court's holding in *Carter's Inc.*, a case involving similar alleged fictitious price reductions. While this Court did not address *Tudor* in *Carters*, it did hold, like Judge Lefkow, that the plaintiffs alleged a deceptive practice under the ICFA by alleging that they were misled by the false advertisements. 598 F.3d at 364-66 (dismissal affirmed on other grounds).

2002)). Thus, it stands to reason that the issuance of a receipt—which certainly is a fact present in any case in which a retailer offers a money back guarantee—similarly does not negate the falsity of the deceptive ads or the ICFA claim.

The District Court wrongly disregarded Judge Lefkow's rejection of *Tudor*, limiting its discussion to a footnote. (SA40 at n.3). The District Court attempted to distinguish *Camasta v. Omaha Steaks*, arguing that due to the nature of the defendant's deception in that case "nothing suggests that the provision of the receipt in *Omaha Steaks* would have dispelled the deception, as [the Court holds] it did here." However, the "information" available to the plaintiff in *Camasta v. Omaha Steaks* is analogous to the receipt issued to Plaintiff here and, just as in *Camasta v. Omaha Steaks*, that information alone does not foreclose a finding that Walmart's Shelf Pricing practices are deceptive. Nothing on the receipt provided to Plaintiff stated that he was or may have been overcharged for certain items. The receipt issued to Plaintiff lists only the actual prices he was charged, not the advertised Shelf Pricing. Thus, despite the receipt, Plaintiff would have no way of knowing that he was overcharged unless he underwent a separate price "audit," something not required of ICFA victims as Judge Reilly emphasized in *Kroger. See also Camasta v. Jos. A. Bank Clothiers*, 761 F.3d at 737-38 ("A sales receipt provided to a consumer *after* a purchase cannot show what was supposedly advertised") (emphasis added); *see also Al Haj v. Pfizer Inc.,* No. 17 C 6730, 2019 WL 3202807, at *7 (N.D. Ill. July 16, 2019) (recognizing that under *Camasta v. Jos. A. Bank Clothiers*, events that occur after the relevant purchase have no bearing on an ICFA claim).

27

Accordingly, the District Court's holding that the post-transaction issuance of a receipt negates Walmart's deception is based on a misreading of the case on which it relies and is in direct contrast to other decisions holding otherwise under similar facts.

**B.    Plaintiff Pled Facts Showing That Walmart Intended for Plaintiff to Rely on Its Deceptive Practice of Advertising False Shelf Prices**

Plaintiff pled that, as part of its deceptive practice, Walmart intends that consumers will rely on its false Shelf Pricing in choosing which items to purchase. (SA6 at ¶2; SA24 at ¶84). These allegations meet Plaintiff's pleading requirements for this element of the claim. *See People ex rel. Hartigan v. Knecht Servs., Inc.*, 575 N.E.2d 1378, 1387 (Ill. App. 1991) (intent to deceive sufficiently pled where the defendants advertised their services at a minimum charge, advertisement was likely to create a misunderstanding as to the defendant's charges, and the defendants intended for consumers to rely on the advertisement); *Vanzant*, 934 F.3d at 739 (finding that plaintiffs had pled a claim under the ICFA where they alleged that the label and marketing materials were deceptive and that the plaintiffs saw the specific "prescription" language and symbols when they made their purchases).

The District Court seems to have mistakenly required allegations of Walmart's intent to deceive its consumers. However, that is not the standard applicable to the intent element of a deceptive practice claim. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 575 (7th Cir. 2012) ("pleading intent [to deceive] is not necessary, since a claim for deceptive business practices under the Consumer Fraud Act does not require proof of intent to deceive"); *Chow*, 286 F. Supp. 2d at 963 ("To satisfy [the

ICFA's] intent requirement, plaintiff need not show that defendant intended to deceive the plaintiff, but only that the defendant intended the plaintiff to rely on the (intentionally or unintentionally) deceptive information given"); *McIntosh v. Walgreens Boots All., Inc.*, 135 N.E.3d 73, 80 (Ill. 2019) (same); *Griffin v. Universal Cas. Co.*, 654 N.E.2d 694, 700 (Ill. App. 1995) (plaintiff need not show that defendant intended to deceive, but only that it intended plaintiff to rely on its act or information; even innocent or negligent misrepresentation may be actionable under the ICFA).

However, based on its misapplication of *Tudor*, the District Court erroneously held that because Plaintiff was provided with a receipt, Walmart did not intend for him to rely on the "incorrectly scanned price." (SA40-41). As an initial matter, the District Court appears to have misconstrued Plaintiff's allegations as claims that Walmart's *scanned prices* were incorrect and deceptive. However, unlike in *Tudor*, Plaintiff does not allege that Walmart's scanned prices are the result of some technical error. Instead, Plaintiff alleges that Walmart knows it advertises lower Shelf Prices than it charges consumers, that *Walmart intended for Plaintiff to rely on its Shelf Prices*, and that Plaintiff did so to his detriment.

Unlike in *Tudor*, where the retailer's published policy provided that "if the scanned price … is different from the price on the shelf, you will get the item for free," Walmart does not provide any warning to consumers that its shelf prices are unreliable (or offer a mispriced item for free) and that therefore might suggest Walmart does not intend for its consumers to rely on the Shelf Prices. *Accord*

29

*Camasta v. Omaha Steaks*, 2013 WL 4495661, at *10 ("But again, this case is distinguishable from *Tudor*, for the money back guarantee [at Omaha Steaks] was not specifically targeted at correcting overcharges based on scanner error… Instead, it is reasonable to conclude [at the pleading stage] that defendants pursued the alleged deceptive advertising with the intent of inducing consumers to purchase their products").

Indeed, the very notion that shelf prices are not or should not be relied upon by consumers is absurd. The very purpose of Shelf Pricing is to inform consumers of prices so that they can compare items and make purchasing decisions. (SA6 at ¶2; SA23 at ¶63). The suggestion that Walmart does not intend for Plaintiff (or any other consumer) to rely on Shelf Pricing is nonsensical. If Walmart did not intend for Plaintiff to rely on its Shelf Pricing, at the very least, it would have alerted Plaintiff of that possibility (as in *Tudor*).

Plaintiff has sufficiently pled that Walmart intended for Plaintiff to rely on its Shelf Pricing. SA6 at ¶2; SA27 at ¶84. That is all that is required to satisfy the "intent" element of an ICFA claim for deceptive practices.

**C.   The District Court's Opinion Creates a New Judicial Exception for False Shelf Pricing Which Is in Direct Conflict with the Prohibitions and Intent of the ICFA and Is Against Public Policy**

The District Court's findings run afoul of the very prohibitions and purpose of the ICFA. The Illinois legislature enacted the ICFA to protect consumers against fraud, unfair methods of competition, and other unfair and deceptive business practices. 815 ILCS 505/1; *Siegel v. Shell Oil Co*., 612 F.3d 932, 935 (7th Cir. 2010) (citing *Robinson*,

775 N.E.2d at 960). The statute is to be liberally construed to effectuate its purpose. 815 ILCS 505/2; *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 166 (Ill. 2002). Indeed, "several courts have noted that there is a clear mandate from the Illinois legislature that the courts utilize the Act to the utmost degree in eradicating all forms of deceptive and unfair business practices and grant appropriate remedies to injured parties." *Gohari*, 2017 WL 11676255, at *3 (citing *Sanchez*, 783 N.E.2d at 219-20).

Rather than protect consumers, the District Court's new exception to the ICFA encourages all Illinois retailers who issue receipts to deceptively advertise prices. *Compare Bell*, 982 F.3d at 477 (warning that the district court's ruling, that as long as the ingredient list on the back of a package could clarify any ambiguity with respect to representations on the package's front label, "would, we fear, encourage deceptive advertising and labeling"). Indeed, it is not the District Court's place to create new exceptions to the ICFA that the legislature did not see fit to create, particularly when the false pricing practice is *per se* unlawful. *See JPMorgan Chase Bank, N.A. v. Earth Foods, Inc.*, 939 N.E.2d 487, 491 (2010) ("We do not depart from the plain language of a statute by reading into it exceptions, limitations or conditions that conflict with the legislative intent"); *Jefferson v. Sheahan*, 664 N.E.2d 212, 213-14 (Ill. App. 1996) ("a judicial finding of an exception for willful and wanton conduct where none was expressly provided by the legislature contravenes a court's duty to give effect to legislative intent") (internal quotations omitted).

The District Court's finding also wrongly imposes on Plaintiff and reasonable consumers the requirement and cost (in time and aggravation) that they audit their

receipts by going back into the store to check each shelf price after they have completed their purchases to confirm whether Walmart (or any other retailer) has charged them the advertised prices. This is not the standard; nor should it be. *See Kroger*, No. 2022-CH-08071 at ¶3. Tens of millions of retail transactions, likely, take place daily. Consumers go through their daily lives purchasing items and swiping their credit cards, reasonably relying on retailers to charge them the advertised prices, and should not have to go back into and through a store after having paid for their items in order to re-audit whether they were correctly charged for each of the items they bought (in Plaintiff's case, fifteen items; but in many cases there could be multiples of that amount), effectively doubling the time of their shopping experience.[9]

Indeed, based on the District Court's holding, Walmart gets a "heads I win, tails you lose" result: it first burdens consumers by putting the onus on them to verify Walmart's Shelf Pricing (something Walmart itself chooses not to do despite having the technology to do so) by going back into the store and painstakingly matching the Shelf Pricing for every item purchased to the prices charged and reflected on receipts; if overcharges are not noticed or if consumers do not spend the additional time required to request a refund or adjustment, then Walmart keeps the excess price; if consumers notice overcharges and request adjustments, Walmart may refund their money or the amount of overpayment, which simply puts the consumers back where

---

[9] Further, the District Court's holding that a receipt alone negates allegations of deception will lead to absurd results. For example, gas stations display prices on large signage along roadways to induce consumers to purchase gas. According to the District Court's holding, regardless of its price advertisements, a gas station can charge a higher price at the pump since the consumer is offered a receipt after the gas is pumped. This simply cannot be the law.

they should have been, albeit charged with annoyance and wasted time. In fact, under the District Court's ruling, Walmart need not refund their money at all because the issuance of a receipt legally washed away the fraud.

The District Court's decision, insulating Walmart from liability under the ICFA for its intentional pricing errors by issuing a receipt that lists the amounts paid is counter to the ICFA and will have pernicious effects on Illinois consumers.

## II.    Plaintiff Properly Pled That Walmart's False Shelf Pricing Is an Unfair Practice That Violates the ICFA

Plaintiff pled facts and claims that Walmart's conduct is an "unfair practice" under the ICFA. *See e.g.*, SA23 at ¶61; SA24 at ¶¶67-69. The District Court erroneously dismissed Plaintiff's unfair practice claim by finding, "Although Kahn uses language of unfairness in his complaint, he premises his ICFA claim on Walmart's alleged concealment of the actual prices of its items, and so the Court interprets it solely as a deceptive practices claim…." (SA38). The District Court committed a legal error because under the ICFA a plaintiff may premise its claims on either a deceptive or unfair practice, *or both*; and the exact same conduct can give rise to liability under both categories. *See Benson*, 944 F.3d at 646-647 (finding that the same behavior can be both a "deceptive act" and an "unfair practice");[10] *Bonahoom*, 2021 WL 1020986, at *5 (holding allegations of false advertising and

---

[10] Further highlighting the difference between an unfair practice claim and a deceptive practice claim is this Court's finding that Rule 8(a) applies to unfair practice claims and Rule 9(b) applies to deceptive practice claims. *Vanzant*, 934 F.3d at 739. Regardless, Plaintiff's allegations satisfy Rule 9(b) for all claims.

33

overcharging customers adequately pled both a deceptive and unfair practice under ICFA).[11]

Had the District Court properly evaluated Plaintiff's ICFA unfair practice claim, it would have had to sustain that claim. To plead an "unfair practice" claim under the ICFA (as opposed to a "deceptive practice," discussed in Section I above), Plaintiff must allege: (1) an unfair practice; (2) intent that the plaintiff rely on the unfair practice; (3) the occurrence of the unfair practice in trade or commerce; and (4) actual damage (5) proximately caused by the unfair practice. *See Robinson*, 775 N.E.2d at 960. To determine whether an act is unfair within the meaning of the ICFA, courts look to three factors: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and / or] (3) whether it causes substantial injury to consumers." *Benson*, 944 F.3d at 647. A plaintiff need not satisfy all three of these factors. *Id*. Indeed, courts have found that false advertising is in and of itself, an unfair practice. *See Bonahoom*, 2021 WL 1020986 at *5. Regardless, Plaintiff pled all three factors and sufficiently states an unfair practice claim. *See e.g.*, SA23 at ¶61 (incorporating all fact allegations); SA24-25 at ¶¶67-73.

The issue of whether false pricing advertisements are an unfair practice under the ICFA was addressed in *Gohari*, where the court found that the plaintiff's allegations

---

[11] The District Court's dismissal of Plaintiff's unfair practice claim is especially egregious because Walmart did not challenge in its Motion to Dismiss whether Plaintiff adequately pled an unfair practice claim. Plaintiff noted this failure in his opposition to the Motion to Dismiss and further described how Plaintiff had adequately pled the claim. (*See* SA5, Dkt. No. 34 at 13-14). Walmart again failed to address the claim in its Reply brief other than in a footnote discussing the pleading standard. (*See* SA5, Dkt. No. 35 at 5 n.4). Accordingly, Walmart waived this argument. *Cooper*, 42 F.4th at 688.

that McDonald's practice of listing incorrect prices on its menu and then charging customers higher prices at checkout was an unfair practice. *Gohari*, 2017 WL 11676255, at \*5-\*6. The court found that McDonald's false pricing practices met the first and third factors, *i.e.*, they violated public policy and caused substantial losses to consumers, noting, "while the sale in this case allegedly reflects only a few dollars in overcharges, similar overcharges, if true, could aggregate very substantial losses and injuries to the public." *Id*. at \*5. The same is true here.

With respect to the second factor, a practice is immoral, unethical, oppressive, or unscrupulous when "it imposes a lack of meaningful choice or an unreasonable burden on the consumer." *Saika v. Ocwen Loan Servicing, LLC*, 357 F. Supp. 3d 704, 715 (N.D. Ill. 2018). Under the facts alleged (which must be accepted as true at this stage), Walmart's practice is incredibly unscrupulous, particularly where it takes the position that after overcharging customers, the mere issuance of a receipt clears Walmart of any liability. Further, Plaintiff and members of the putative class are unreasonably burdened by Walmart's practice, particularly under the weight of the District Court's ruling ensuring that Plaintiff and members of the putative class must record all shelf prices while shopping, purchase the items to acquire a receipt, and then compare the receipt to their own data to ensure that Walmart is, in fact, charging its advertised pricing. (SA24 at ¶69). Thus, Plaintiff satisfies the second factor for an unfair practice claim.

As to the third factor, "[t]he question is only whether [defendant's] conduct carries the *potential* to harm a large number of other consumers." *Saccameno v. Ocwen Loan*

*Servicing, LLC*, 372 F. Supp. 3d 609, 632 (N.D. Ill. 2019) (emphasis in original); *see also Stephens v. Capital One, N.A.*, No. 15-cv-9702, 2016 WL 4697986, at *6 (N.D. Ill. Sept. 7, 2016) ("Defendant's expansive consumer base similarly allows the Court to reasonably infer that a large consumer base may be at risk for similar conduct that has been alleged to qualify as 'unfair' under the ICFA") (citation omitted); *Gohari* 2017 WL 11676255, at *5 ("While the sale in this case allegedly reflects only a few dollars in overcharges, similar overcharges, if true, could aggregate very substantial losses and injuries to the public"). Walmart is the nation's largest retailer and, as alleged in the Complaint, the overwhelming majority of Walmart's sales come from consumers purchasing merchandise at its brick and mortar locations. (SA10 at ¶21). Walmart profits by hundreds of millions of dollars each year from this unfair practice. (SA7 at ¶5). Thus, Plaintiff's allegations satisfy the third factor.

Accordingly, the Complaint adequately alleged an ICFA unfair practice claim. It was reversible error to dismiss the claim with prejudice.

## III.   The District Court Erred in Dismissing Plaintiff's UDTPA Claim

Plaintiff adequately alleged a UDTPA claim for injunctive relief. "In order to obtain injunctive relief, a plaintiff must demonstrate that a defendant engaged in any of the 12 enumerated types of deceptive conduct listed in Section 510/2." *Aliano v. WhistlePig, LLC*, No. 14 C 10148, 2015 WL 2399354, at *4 (N.D. Ill. May 18, 2015). The enumerated types of deceptive conduct include, *inter alia,* "advertis[ing] goods [at one price] with intent not to sell them [at that price]" and "conduct which similarly creates a likelihood of confusion or misunderstanding." 815 ILCS 510/2(a)(9) and (12).

"The UDTPA is designed to enjoin trade practices that are deceptive or confusing to consumers." *Fullerton v. Corelle Brands, LLC*, No. 18-CV-4152, 2019 WL 4750039, at *11 (N.D. Ill. Sept. 30, 2019). UDTPA claims may proceed where the alleged deceptive practices are directed to the market generally or otherwise implicate consumer protection concerns. *See Athey Prod. Corp. v. Harris Bank Roselle*, 89 F.3d 430, 437 (7th Cir. 1996). Moreover, a claim is proper under the UDTPA when the plaintiff alleges facts showing a likelihood of future damage. *See Aliano v. Louisville Distilling Co.*, 115 F. Supp. 3d 921, 928 (N.D. Ill. 2015).

The District Court wrongly ruled that because Plaintiff "cannot plead the required deceptive conduct or intent to deceive, ... his UDTPA claim fails for the same reasons as his ICFA claim." (SA41). But, as shown above, Plaintiff's ICFA claims were not deficient. Plaintiff adequately alleged that Walmart's practices are deceptive, pervasive, continuous, directed to the market, (SA11 at ¶22-23), implicate consumer protection concerns, (SA15 at ¶¶29-31), and show a likelihood of future harm. (SA27 at ¶86).

Plaintiff's allegations that Walmart continues to advertise items for sale at one price with intent to sell them at a higher price establishes deceptive conduct under the UDTPA. Indeed, because Walmart's false Shelf Pricing applies to different items at various times, there is a high likelihood of future harm. (SA21-22 at ¶¶80-84). Walmart's false Shelf Pricing varies by product from day-to-day and Plaintiff (and all Illinois consumers) are likely to be misled by the false Shelf Pricing in the future regardless of whether they have been misled previously. For example, just because

37

Plaintiff knows he was overcharged for Hershey Syrup in August 2022, does not put him on notice that he may be overcharged for tuna or some other product at a later date. *See Kroger*, No. 2022-CH-08071 at ¶3 (finding that the plaintiff adequately pled a risk of future harm under the UDTPA where the defendant continues to charge more for certain grocery items than what is advertised on its shelves, that the practice occurs frequently and harms other consumers, and that the store often offers discounts on items, making it more expensive for consumers to merely shop elsewhere); *see Van Zeeland v. Rand McNally*, 532 F. Supp. 3d 557, 563, 571-72 (N.D. Ill. 2021) (allegations that defendant misled plaintiff and was continuing to mislead consumers by knowingly and intentionally selling a defective product, accompanied by request in complaint for an order requiring seller to cease and desist from engaging in alleged wrongful conduct adequately stated UDTPA claim); *Le v. Kohls Dep't Stores, Inc.*, 160 F. Supp. 3d 1096, 1109 (E.D. Wis. 2016) (finding that plaintiff has standing to seek injunctive relief, notwithstanding plaintiff's awareness of defendant's alleged false pricing scheme because like Plaintiff's allegations here, "the complaint is aimed at 'company-wide, pervasive, and continuous' false advertising claims"). *See* (SA15-19 at ¶¶32-49). Accordingly, Plaintiff has adequately alleged a UDTPA claim.

## IV.    Plaintiff Properly Pled a Claim for Unjust Enrichment

Plaintiff sufficiently pled a claim for unjust enrichment. To state an unjust enrichment claim under Illinois law, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention

of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989). When a defendant "obtains money to which he is not entitled … he ought not retain it." *Pekin Ins. Co. v. Precision Dose, Inc.*, 968 N.E.2d 664, 681 (Ill. App. 2012).

Plaintiff alleges that Walmart deceptively and unfairly misleads consumers by advertising prices on its shelves and then overcharging consumers at checkout. (SA30-31 at ¶¶109-118). Plaintiff also alleges that:

> Defendant knew that Plaintiff and Class Members conferred a benefit on Defendant and accepted or retained that benefit. Through its false, misleading, unfair and deceptive pricing practices, Defendant unjustly received and retained benefits at the expense of Plaintiff and Class members, specifically the difference in price between what was charged and what should have been charged, and the failure to provide the Overcharged Goods based on its representations.

(SA31 at. ¶112).

Accordingly, Plaintiff adequately pled a claim for unjust enrichment, and it was incorrect for the District Court to hold otherwise.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court reverse the District Court's order dismissing the Complaint, direct the District Court to find that Plaintiff stated cognizable causes of action against Walmart under the ICFA for deceptive and unfair practices, the UDTPA, and for unjust enrichment, and remand for further proceedings.

Respectfully submitted,

**BERNSTEIN LIEBHARD LLP**
Stanley D. Bernstein
Michael S. Bigin
Stephanie M. Beige

By: /s/ Stanley D. Bernstein
    STANLEY D. BERNSTEIN
    10 East 40th Street
    New York, New York 10016
    Telephone: (212)779-1414
    Bernstein@bernlieb.com
    Bigin@bernlieb.com
    Beige@bernlieb.com

**GINGOLD LEGAL**
Scott H. Gingold
1326 Isabella Street
Evanston, IL 60201
Telephone: (773)793-9093
scott@gingoldlegal.com

## CIRCUIT RULE 30(d) STATEMENT

I hereby certify that all of the materials required by Circuit Rules 30(a) and

(b) are included in the appendix.


Dated: July 17, 2023

**BERNSTEIN LIEBHARD LLP**
Stanley D. Bernstein
Michael S. Bigin
Stephanie M. Beige

By:/s/ Stanley D. Bernstein

    STANLEY D. BERNSTEIN

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Brief of Plaintiff-Appellant conforms to Federal Rule AppellateProcedure 32 and Circuit Rule 32.

1.     This brief complies with the type-volume limitations set forth in Appellate Procedure 32(a)(7) and 32(g), as supplemented by Circuit Rule 32, because it contains 11,064 words based on the Word Count feature of Microsoft Word.

2.     This brief complies with the typeface and type style requirements set forth in Circuit Rule 32 because the brief has been prepared in a proportionally spaced typeface using Microsoft Word in 12-point Century Schoolbook font.

Dated: July 17, 2023

**BERNSTEIN LIEBHARD LLP**
Stanley D. Bernstein
Michael S. Bigin
Stephanie M. Beige

By:/s/ Stanley D. Bernstein
    STANLEY D. BERNSTEIN

## CERTIFICATE OF SERVICE

The Undersigned Counsel of Record for the Plaintiff-Appellant, Yoram Kahn, hereby certifies that on 17th day of July, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and will be served by the CM/ECF system.


Dated: July 17, 2023

**BERNSTEIN LIEBHARD LLP**
Stanley D. Bernstein
Michael S. Bigin
Stephanie M. Beige

By:/s/ Stanley D. Bernstein
    STANLEY D. BERNSTEIN

ADDENDUM A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

LISABETH GANSBERG, on behalf of herself
and all others similarly situated,

      Plaintiff,

v.

THE KROGER CO.,

      Defendant.

Case No. 2022-CH-08071

Judge Eve M. Reilly

Calendar: 7

## <u>ORDER</u>

This matter coming to be heard on Defendant, The Kroger Co.'s Motion to Dismiss, due notice having been given and the Court being fully advised in the premises, having read the briefs and heard oral argument,

IT IS HEREBY ORDERED:

1. Defendant's Motion to Dismiss as to Count I is GRANTED. A buyer claiming breach of contract for a sale of goods must notify the seller of any breach within a reasonable time of discovering any such breach, or the buyer will be barred from any remedy. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 492 (1996) (quoting 810 ILCS 5/2-607). Pre-suit notice of a breach is sufficient if it "lets the seller know that a particular 'transaction is still troublesome and must be watched.' 810 ILCS Ann. 5/2-607." *Id.* Direct notice is not required if the seller has actual knowledge of the particular product, or, if the buyer has a claim for personal injury, the seller is deemed reasonably notified by the filing of the buyer's complaint. *Id.* While it is unnecessary to list specific claims in giving notice under section 2-607, it is essential that the seller has notice that a particular transaction is "troublesome and must be watched." *Id.* at 493. Even if a seller is aware of problems, the notice requirement is only satisfied where the seller somehow knows of the problem of a particular product purchased by a particular buyer. *Id.* at 494.

Here, Plaintiff alleges that when she would "catch the overcharge" she would "attempt to convince the store to charge the correct price," and that on "at least four occasions, the store refused to refund the overcharge until Plaintiff went back to the isle [sic] where the product was and took a picture of the price to document the overcharge." Compl. ¶ 8. Plaintiff provides two instances where she alleges she was charged an incorrect price for a product: on July 3, 2022, for 1.34lbs of Northwest Red Cherries, and on July 10, 2022, for five Slim Jim Sticks. Compl. ¶¶ 11-14. When ruling on a motion to dismiss, the Court must interpret all pleadings and supporting documents in a light most favorable to the nonmoving party, and should only grant the motion if plaintiff can prove no set of facts that would support a cause of action. *Stephen L. Winternitz, Inc. v. Nat'l Bank*, 289 Ill. App. 3d 753, 755 (1st Dist. 1997). Plaintiff alleges that Defendant has "actual knowledge of the facts underlying the

breach of contract—i.e., for every grocery product Defendant knows the price it advertised and the price it actually charged customers." Compl. ¶ 10. However, Plaintiff does not allege anywhere in her complaint that for the specified purchases she informed Defendant of the price discrepancy. Plaintiff does allege that "[o]ften, Mrs. Gansberg would catch the overcharge and attempt to convince the store to charge the correct price," and that over a period of three to four months, Plaintiff "spent several hours working with the store manager, the regional manager and the corporate Director of Strategic Brand Development." Compl. ¶ 8. While, this demonstrates Defendant was generally aware of an issue, these allegations do not show that Defendant was aware of the issue with a particular product purchased by a particular buyer. *Connick*, 174 Ill. 2d at 494 (holding that even if a manufacturer is aware of problems with a product line, the notice requirement of section 2-607 is only satisfied where the manufacturer is aware of the trouble with a particular purchase by a particular buyer). Therefore, Plaintiff has failed to allege that Defendant had pre-suit notice of the particular transactions at issue as required under 2-607.

In all the transactions that Plaintiff alleges Defendant was apprised of the breach, Plaintiff does not allege that Defendant did not issue a refund of the overcharged amount. Plaintiff alleges that when she caught the overcharge she would "attempt to convince the store to charge the correct price," which invoked a "variety of responses" from Defendant employees. Compl. ¶ 8. However, Plaintiff continues that her "challenging the price would be met with reluctance or refusal to correct the price," and that on at least four occasions, "the store refused to refund the overcharge until Plaintiff went back to the isle [sic] where the product was and took a picture of the price to document the overcharge. In any event, it consistently took a minimum of 30 minutes to an hour to get the price corrected or the overcharge refunded." Compl. ¶ 8. Taking Plaintiff's allegations as true, of the transactions Plaintiff brought to Defendant's attention, thereby satisfying the pre-notice requirements under 2-607, Plaintiff ultimately cannot plead she suffered any damages as a result of Defendant's alleged breach. Plaintiff's claim for breach of contract is, therefore, dismissed WITH PREJUDICE.

2. Defendant's Motion to Dismiss Counts II of Plaintiff's Complaint is DENIED. Under section two of the Illinois Consumer Fraud Act, "any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act,'" is considered a violation of the Consumer Fraud Act "whether any person has in fact been misled, deceived or damaged." 815 ILCS 505/2. The elements of a claim under the ILCFA are usually: (1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; and (3) the occurrence of the deception during a course of conduct involving trade or commerce. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417 (2002).

Defendant relies on *Tudor v. Jewel Food Stores* to allege that Plaintiff cannot properly allege the second element. 288 Ill. App. 3d 207 (1st Dist. 1997). *Tudor* is, however, distinguishable from these facts. In *Tudor*, the defendant had a money-back policy that plainly stated that if the scanned price was different than the shelf price the item would be free. *Id.* at 210. Additionally, the plaintiff had alleged the price discrepancy was due to the scanning technology, which had a 96% accuracy rate. *Id.* These facts, combined with the plaintiff being given a receipt, indicated that there was no intent to deceive or deception by the defendant. *Id.* Contrarily, Plaintiff here pleads that, upon notifying Defendant of the overcharges, Defendant would give a "variety of responses" and that on at least four separate

occasions Defendant "refused to refund the overcharge" until Plaintiff proved that the charged price was correct. Compl. ¶ 8. Plaintiff alleges this issue is not due to a scanning technology problem, but human error. Compl. ¶ 15. Plaintiff further alleges that despite Defendant being aware of the overcharging issue "Defendant continues to routinely charge more for various groceries than their advertised price." Compl. ¶ 9.

Defendant further asserts that "Plaintiff acknowledges that she was not deceived or misled," because Plaintiff attached a photo of the advertised price "indicating she knew what the advertised discounted price was at the time of purchase and should have known it was not applied when the item was scanned and she was provided the receipt." Mot. at 7. The statutory language of the Illinois Uniform Deceptive Trade Practices Act deems "making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions," unlawful. Notwithstanding that language, by Defendant's logic, Plaintiff, and all others similarly situated, should record all pricing of their shopping, purchase the items to acquire a receipt, and then compare the receipt to their own data to ensure that Defendant is, in fact, honoring its own advertised pricing, and Plaintiff's failure to do so would excuse Defendant from having to charge its advertised prices as Plaintiff "should have known" some advertised prices were not what Plaintiff was actually charged. Should Plaintiff then realize she was overcharged, she must not have deceived by Defendant's practice and Defendant cannot be liable under the UDTPA and ICFA because, any alleged deceitful act did not actually deceive Plaintiff. Despite Defendant's creative approach, the language of the ICFA states that "any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act," approved August 5, 2056, in the conduct of any trade or commerce are hereby declared unlawful **whether any person has in fact been misled, deceived or damaged thereby**." 815 ILCS 505/2 (emphasis added). Plaintiff additionally alleges that she has "repeatedly brought these overcharges to Defendant's attention, and Defendant continues its practice of overcharging," and therefore, Defendant's conduct is intentional. Compl. ¶ 52. As such, Plaintiff has sufficient alleged facts of a deceitful act to survive a 2-615 motion to dismiss, and Defendant's motion is denied.

3. Defendant's Motion to Dismiss Count III is DENIED. Defendant argues that Plaintiff cannot allege a future harm and therefore cannot state a cause of action under the UDTPA. In *Popp v. Cash Station*, the First Circuit held that a consumer action is possible under the UDTPA if the consumer alleges facts to indicate that they are likely to be harmed in the future. 244 Ill. App. 3d, 87, 99 (1st Dist. 1992). In *Popp*, the Court held that a claim for inadequate security at ATMs that put users at "risk of injury from third-party attacks" failed to allege a future harm as the plaintiff was now aware that there was no security provided at the ATMs. *Id.* at 91. The plaintiff had alleged that the defendant's conduct "created a likelihood of confusion and misunderstanding for Plaintiff in possession and/or using their Cash Station cards, which threatens their personal security." *Id.* at 99. The Court found that, besides only that bare conclusory allegation, the plaintiff alleged no facts regarding her confusion, and that because the plaintiff was now aware that the ATM machines provided "inadequate security," there could be no confusion in the future arising from the defendant's nondisclosure in marketing their services. *Id.*

Taking all well-pled facts as true, Plaintiff here alleges that: "Mariano's frequently charges, or attempts to charge" more for "certain grocery items than the price for the product stated on the shelf;" "these practices occur frequently and harm other customers at this Mariano's store

and other Kroger brand stores in Illinois;" "Defendant still frequently overcharges for grocery items;" "Defendant's stores…regularly offer discounts on certain grocery items making them less expensive that [sic] shopping for competitors," therefore, "Defendant cannot assert that Plaintiff and class members can merely shop at a different store to avoid damages, as they will end up paying more…for certain items." Compl. ¶¶ 7, 16, 50, 51. These factual allegations sufficiently allege a risk of future harm. Unlike in *Popp*, where the plaintiff's future harm was alleged confusion based on an undisclosed fact she was now aware of and therefore could no longer be confused about, Plaintiff alleges that Defendant continues to overcharge customers for items by entering the wrong price or not applying advertised discounts. Compl. ¶ 50.  Defendant's contention that Plaintiff is essentially assuming the risk of being incorrectly charged for items does not negate Plaintiff's well-plead facts. *See*, Mot. at 5 ("Given Plaintiff's awareness of past human error inputting pricing and because she can avoid the alleged problem by shopping elsewhere, she cannot allege the likelihood of future harm). Plaintiff has alleged sufficient facts to bring a claim under the UDTPA and Defendant's motion is denied.

4. Defendant has 28 days to answer Count II and Count III of Plaintiff's Complaint.

5. This matter is set for status on the pleadings on May 8, 2023, at 9:30 am.

Judge Eve M. Reilly

APR 07 2023

Circuit Court-2122

ENTERED:

_____

Judge Eve M. Reilly

# REQUIRED SHORT APPENDIX

# TABLE OF CONTENTS

PAGE

District Court Docket Entries . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  SA1

Complaint, filed August 9, 2022 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  SA6

Opinion and Order of the Honorable Sara L. Ellis,
    filed March 21, 2023. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  SA34

Judgment, filed March 21, 2023 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  SA44

Notice of Appeal, filed April 19, 2023 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  SA45

Seventh Circuit Rule 3(c) Docketing Statement,
    filed April 19, 2023. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  SA47

APPEAL,KIM,TERMED

# United States District Court
# Northern District of Illinois – CM/ECF NextGen 1.7.1.1 (Chicago)
# CIVIL DOCKET FOR CASE #: <u>1:22–cv–04177</u>
### *Internal Use Only*

Kahn v. Walmart, Inc.
Assigned to: Honorable Sara L. Ellis
Demand: $9,999,000
Cause: 28:1332 Diversity–Fraud

Date Filed: 08/09/2022
Date Terminated: 03/21/2023
Jury Demand: Plaintiff
Nature of Suit: 370 Other Fraud
Jurisdiction: Diversity

**<u>Plaintiff</u>**

**Yoram Kahn**
*individually and on behalf of all others*
*similarly situated*

represented by **Scott H. Gingold**
Gingold Legal
1326 Isabella St.
Evanston, IL 60201
773–793–9093
Email: scott@gingoldlegal.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sandy A Liebhard**
Bernstein Liebhard LLP
10 East 40th Street, 28th Floor
New York
New York, NY 10016
212–779–1414
Email: liebhard@bernlieb.com
*ATTORNEY TO BE NOTICED*

**Stanley D Bernstein**
Bernstein, Liebhard
10 East 40th Street
New York, NY 10016
(212) 779–1414
Email: bernstein@bernlieb.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephanie M Beige**
Bernstein Liebhard LLP
10 East 40th Street
New York, NY 10016
212–779–1414
Email: beige@bernlieb.com
*ATTORNEY TO BE NOTICED*

V.

1

**Defendant**

**Walmart, Inc.**                                    represented by **Daniel Michael Blouin**
                                                        Winston & Strawn LLP
                                                        35 West Wacker Drive
                                                        Chicago, IL 60601–9703
                                                        (312) 558–5600
                                                        Email: dblouin@winston.com
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Frank A. Battaglia**
                                                        Winston & Strawn LLP
                                                        35 W. Wacker Drive
                                                        Chicago, IL 60601
                                                        (312) 558–7952
                                                        Email: fbattaglia@winston.com
                                                        *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/09/2022 | 1 | COMPLAINT filed by Yoram Kahn; Jury Demand. Filing fee $ 402, receipt number AILNDC–19726868.(Gingold, Scott) (Entered: 08/09/2022) |
| 08/09/2022 | 2 | CIVIL Cover Sheet (Gingold, Scott) (Entered: 08/09/2022) |
| 08/09/2022 | | CASE ASSIGNED to the Honorable Sara L. Ellis. Designated as Magistrate Judge the Honorable Young B. Kim. Case assignment: Random assignment. (jb, ) (Entered: 08/09/2022) |
| 08/09/2022 | | CLERK'S NOTICE: Pursuant to Local Rule 73.1(b), a United States Magistrate Judge of this court is available to conduct all proceedings in this civil action. If all parties consent to have the currently assigned United States Magistrate Judge conduct all proceedings in this case, including trial, the entry of final judgment, and all post–trial proceedings, all parties must sign their names on the attached Consent To form. This consent form is eligible for filing only if executed by all parties. The parties can also express their consent to jurisdiction by a magistrate judge in any joint filing, including the Joint Initial Status Report or proposed Case Management Order. (jb, ) (Entered: 08/09/2022) |
| 08/09/2022 | 3 | ATTORNEY Appearance for Plaintiff Yoram Kahn by Scott H. Gingold (Gingold, Scott) (Entered: 08/09/2022) |
| 08/10/2022 | | SUMMONS Issued as to Defendant Walmart, Inc. (jb, ) (Entered: 08/10/2022) |
| 08/10/2022 | 4 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC–19730050. *re Stanley Bernstein* (Gingold, Scott) (Entered: 08/10/2022) |
| 08/10/2022 | 5 | ATTORNEY Appearance for Plaintiff Yoram Kahn by Sandy Liebhard. Filing fee $ 150, receipt number AILNDC–19730083. *re Sandy Liebhard* (Gingold, Scott) (Docket text modified by Clerk's Office on 8/30/2022) (lxk, ). (Entered: 08/10/2022) |
| 08/10/2022 | 6 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC–19730093. *re Stephanie Beige* (Gingold, Scott) (Entered: 08/10/2022) |

| 08/10/2022 | 7 | REQUEST for Clerk of Court to refund filing fee in the amount of 150, receipt no. AILNDC–19730083, (Gingold, Scott) (Entered: 08/10/2022) |
|---|---|---|
| 08/10/2022 | 8 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC–19730174. *re Sandy Liebhard* (Gingold, Scott) (Entered: 08/10/2022) |
| 08/11/2022 | 9 | REFUND REQUEST DENIED re REQUEST for Clerk of Court to refund filing fee 7 . (lw, ) (Entered: 08/11/2022) |
| 08/11/2022 | 10 | REQUEST for Clerk of Court to refund filing fee in the amount of 150, receipt no. AILNDC–19730083, regarding motion to appear pro hac vice 5 (Gingold, Scott) (Entered: 08/11/2022) |
| 08/17/2022 | 11 | REFUND PROCESSED re REQUEST for Clerk of Court to refund filing fee in the amount of 150, receipt no. AILNDC–19730083, regarding motion to appear pro hac vice 5 (Gingold, Scott) 10 (td, ) (Entered: 08/17/2022) |
| 08/23/2022 | 12 | SUMMONS Returned Executed by Yoram Kahn as to Walmart, Inc. on 8/18/2022, answer due 9/8/2022. (Gingold, Scott) (Entered: 08/23/2022) |
| 08/30/2022 | 13 | ORDER: The initial status conference in this matter is set for 10/12/22 at 9:30 a.m. The parties are directed to review the procedures and requirements for this conference on Judge Ellis' website and to submit the required Initial Status Report by 10/5/22. Members of the public and media will be able to call in to listen to this hearing. The call–in number is (866) 434–5269 and the access code is 8087837. Counsel of record will receive an email with instructions to join the call. Throughout the telephonic hearing, each speaker will be expected to identify themselves for the record before speaking. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting court proceedings. Violation of these prohibitions may result in sanctions, including removal of court–issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Motions for leave to appear pro hac vice 4 , 6 , and 8 are granted. The appearance of Sandy A. Liebhard 5 is incorrectly filed as a motion and the motion is terminated. Signed by the Honorable Sara L. Ellis on 8/30/2022. Mailed notice. (lxk, ) (Entered: 08/30/2022) |
| 09/02/2022 | 14 | ATTORNEY Appearance for Defendant Walmart, Inc. by Daniel Michael Blouin (Blouin, Daniel) (Entered: 09/02/2022) |
| 09/02/2022 | 15 | ATTORNEY Appearance for Defendant Walmart, Inc. by Frank A. Battaglia (Battaglia, Frank) (Entered: 09/02/2022) |
| 09/06/2022 | 16 | MOTION by Defendant Walmart, Inc. for extension of time *to Respond to Class Action Complaint* (Blouin, Daniel) (Entered: 09/06/2022) |
| 09/06/2022 | 17 | NOTICE of Motion by Daniel Michael Blouin for presentment of extension of time 16 before Honorable Sara L. Ellis on 9/13/2022 at 09:45 AM. (Blouin, Daniel) (Entered: 09/06/2022) |
| 09/12/2022 | 18 | MINUTE entry before the Honorable Sara L. Ellis: The Court grants Defendant's motion for extension of time to answer or otherwise plead 16 . Defendant's responsive pleading is due by 9/29/2022. Mailed notice (rj, ) (Entered: 09/12/2022) |
| 09/27/2022 | 19 | NOTIFICATION of Affiliates pursuant to Local Rule 3.2 by Walmart, Inc. (Blouin, Daniel) (Entered: 09/27/2022) |

| 09/28/2022 | 20 | MOTION by Defendant Walmart, Inc. for extension of time to file answer regarding complaint 1 (Blouin, Daniel) (Entered: 09/28/2022) |
|---|---|---|
| 09/28/2022 | 21 | NOTICE of Motion by Daniel Michael Blouin for presentment of motion for extension of time to file answer 20 before Honorable Sara L. Ellis on 10/4/2022 at 09:45 AM. (Blouin, Daniel) (Entered: 09/28/2022) |
| 10/03/2022 | 22 | MINUTE entry before the Honorable Sara L. Ellis: The Court grants Defendant's motion for extension of time to answer or otherwise plead 20 . Defendant's responsive pleading is due by 10/6/2022. Mailed notice (rj, ) (Entered: 10/03/2022) |
| 10/04/2022 | 23 | MOTION by Plaintiff Yoram Kahn for extension of time *re initial status hearing and report (Joint Motion)* (Gingold, Scott) (Entered: 10/04/2022) |
| 10/04/2022 | 24 | *(Joint Motion)* NOTICE of Motion by Scott H. Gingold for presentment of extension of time 23 before Honorable Sara L. Ellis on 10/11/2022 at 09:45 AM. (Gingold, Scott) (Entered: 10/04/2022) |
| 10/06/2022 | 25 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant Walmart, Inc. (Blouin, Daniel) (Entered: 10/06/2022) |
| 10/06/2022 | 26 | MEMORANDUM by Walmart, Inc. in support of Motion to Dismiss for Failure to State a Claim 25 (Attachments: # 1 Index of Exhibits, # 2 Exhibit A, # 3 Exhibit B)(Blouin, Daniel) (Entered: 10/06/2022) |
| 10/06/2022 | 27 | NOTICE of Motion by Daniel Michael Blouin for presentment of Motion to Dismiss for Failure to State a Claim 25 before Honorable Sara L. Ellis on 10/11/2022 at 09:45 AM. (Blouin, Daniel) (Entered: 10/06/2022) |
| 10/06/2022 | 28 | MOTION by Defendant Walmart, Inc. to set a briefing schedule *on Motion to Dismiss Plaintiff's Complaint (Joint)* (Blouin, Daniel) (Entered: 10/06/2022) |
| 10/06/2022 | 29 | NOTICE of Motion by Daniel Michael Blouin for presentment of motion by filer to set a briefing schedule 28 before Honorable Sara L. Ellis on 10/11/2022 at 09:45 AM. (Blouin, Daniel) (Entered: 10/06/2022) |
| 10/11/2022 | 30 | MINUTE entry before the Honorable Sara L. Ellis: The Court grants the parties' motion to set a briefing schedule 28 and sets the following briefing schedule on Defendant's motion to dismiss 25 : Plaintiff's response is due by 11/22/2022 and Defendant's reply is due by 12/22/2022. The Court grants the parties' motion for extension of time 23 . The Court strikes the status date set for 10/12/2022 and resets it to 3/22/2023 at 9:30 a.m. for ruling on Defendant's motion to dismiss. The Court stays discovery pending ruling on Defendant's motion to dismiss. The Court will set a date for submission of the initial status report on ruling on Defendant's motion to dismiss. Members of the public and media will be able to call in to listen to this hearing. The call–in number is (866) 434–5269 and the access code is 8087837. Counsel of record will receive an email with instructions to join the call. Throughout the telephonic hearing, each speaker will be expected to identify themselves for the record before speaking. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting court proceedings. Violation of these prohibitions may result in sanctions, including removal of court–issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (rj, ) (Entered: 10/11/2022) |
| 11/14/2022 | 31 | |

| | | MOTION by Plaintiff Yoram Kahn for leave to file excess pages *(UNOPPOSED)* (Gingold, Scott) (Entered: 11/14/2022) |
|---|---|---|
| 11/14/2022 | 32 | *(UNOPPOSED)* NOTICE of Motion by Scott H. Gingold for presentment of motion for leave to file excess pages 31 before Honorable Sara L. Ellis on 11/17/2022 at 01:45 PM. (Gingold, Scott) (Entered: 11/14/2022) |
| 11/17/2022 | 33 | MINUTE entry before the Honorable Sara L. Ellis: The Court grants Plaintiff's motion for leave to file excess pages 31 and limits Plaintiff's response brief to 25 pages. Mailed notice (rj, ) (Entered: 11/17/2022) |
| 11/22/2022 | 34 | MEMORANDUM by Yoram Kahn in Opposition to Motion to Dismiss for Failure to State a Claim 25 (Attachments: # 1 Exhibit A)(Beige, Stephanie) (Entered: 11/22/2022) |
| 12/22/2022 | 35 | REPLY by Walmart, Inc. to MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant Walmart, Inc. 25 (Blouin, Daniel) (Entered: 12/22/2022) |
| 12/29/2022 | 36 | ANNUAL REMINDER: Pursuant to Local Rule 3.2 (Notification of Affiliates), any nongovernmental party, other than an individual or sole proprietorship, must file a statement identifying all its affiliates known to the party after diligent review or, if the party has identified no affiliates, then a statement reflecting that fact must be filed. An affiliate is defined as follows: any entity or individual owning, directly or indirectly (through ownership of one or more other entities), 5% or more of a party. The statement is to be electronically filed as a PDF in conjunction with entering the affiliates in CM/ECF as prompted. As a reminder to counsel, parties must supplement their statements of affiliates within thirty (30) days of any change in the information previously reported. This minute order is being issued to all counsel of record to remind counsel of their obligation to provide updated information as to additional affiliates if such updating is necessary. If counsel has any questions regarding this process, this LINK will provide additional information. Signed by the Executive Committee on 12/29/2022: Mailed notice. (tg, ) (Entered: 12/30/2022) |
| 03/21/2023 | 37 | OPINION AND ORDER. For the reasons stated in the accompanying Opinion and Order, the Court grants Walmart's motion to dismiss 25 . The Court dismisses Kahn's individual claims with prejudice and his putative class claims without prejudice. Civil case terminated. Signed by the Honorable Sara L. Ellis on 3/21/2023:Mailed notice(rj, ) (Entered: 03/22/2023) |
| 03/21/2023 | 38 | ENTERED JUDGMENT. Mailed notice(rj, ) (Entered: 03/22/2023) |
| 04/19/2023 | 39 | PAYMENT by Yoram Kahn of Filing fee $ 505, receipt number AILNDC–20556211. (Beige, Stephanie) (Entered: 04/19/2023) |
| 04/19/2023 | 40 | NOTICE of appeal by Yoram Kahn regarding orders 38 , 37 Filing fee $ 505, receipt number AILNDC–20556405. Receipt number: n (Beige, Stephanie) (Entered: 04/19/2023) |
| 04/19/2023 | 41 | DOCKETING Statement by Yoram Kahn regarding notice of appeal 40 (Beige, Stephanie) (Entered: 04/19/2023) |

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| YORAM KAHN, individually and on behalf of all others similarly situated, | Case No. 22-cv-4177 |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| | **DEMAND FOR A JURY TRIAL** |
| v. | |
| WALMART, INC., | |
| Defendant. | |

Plaintiff Yoram Kahn, by and through his undersigned counsel, brings this class action complaint against Defendant Walmart, Inc. ("Walmart" or the "Defendant"), individually and on behalf of all others similarly situated, and alleges upon personal knowledge as to his own acts and experiences, and as to all other matters, upon information and belief, including the investigation conducted by Plaintiff's counsel.

## NATURE OF THE ACTION

1.     This action seeks to address and remedy the unfair and deceptive business practices Walmart has engaged in by placing false and misleading price advertisements on shelf signs and price displays ("Shelf Pricing") throughout its stores in Illinois and nationwide.

2.     Walmart uses Shelf Pricing to advertise prices for merchandise to enable consumers to calculate pricing differences among brands, identify bargains, and to induce consumers to purchase the advertised merchandise. Consumers reasonably rely on Shelf Pricing

1

to make informed purchasing decisions, and reasonably expect to pay the advertised Shelf Price when they reach the checkout.

3. However, Walmart's Shelf Pricing frequently misrepresents the prices consumers are charged at the point of sale. As a result, consumers fall victim to a classic "bait and switch," and unknowingly overpay Walmart a higher price for the falsely-advertised merchandise at checkout (the "Overcharged Goods").

4. The false and misleading Shelf Pricing affects various merchandise throughout Walmart's stores, with Overcharged Goods costing consumers higher prices in a range of 5-10%, and some much higher.

5. Walmart is well aware that it is deceiving its consumers. In fact, Walmart has been fined for this practice in multiple states. But preventing Walmart from continuing its unfair and deceptive practices thus far has been a game of whack-a-mole for local agencies because even when Walmart is fined, the fines are a drop in the bucket for the $500 billion-dollar retailer and dwarf the hundreds of millions of dollars Walmart profits each year from selling Overcharged Goods. So, Walmart pays the fines but continues its misleading, unfair and deceptive pricing practices.

6. Walmart's false, misleading, unfair and deceptive pricing practices violate the consumer protection statutes of Illinois and the other states in the Multi-State Classes, as well as the common laws of all states where Overcharged Goods are sold at Walmart stores.

7. Plaintiff brings this action on behalf of a class of persons who purchased Overcharged Goods from Walmart stores located in the United States within the applicable statute of limitations (the Classes are defined below), and seeks, *inter alia*, actual damages, refunds, injunctive relief, attorneys' fees, and the costs of this litigation.

## JURISDICTION AND VENUE

8.      The Court has original jurisdiction under 28 U.S.C. § 1332(d)(2) because the matter in controversy, exclusive of interests and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members, and some of the members of the class are citizens of states different from Defendant.

9.      This Court has personal jurisdiction over Defendant because Defendant conducts significant amounts of business in Illinois. Walmart has 184 retail stores in Illinois, with 58,139 employees working in those stores.[1] Additionally, because Defendant marketed, promoted, distributed, and sold the Overcharged Goods to Plaintiff in Illinois, the claims arise out of or relate to Defendant's contacts with Illinois, subjecting Defendant to personal jurisdiction in Illinois.

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(a) and (b) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this judicial district.

11.     Venue is also proper under 28 U.S.C. § 1391(c) because Defendant is a corporation that does business in and is subject to personal jurisdiction in this District.

## PARTIES

12.     Plaintiff Yoram Kahn is a citizen of Ohio.

13.     On August 2, 2022, while traveling in Illinois, Plaintiff purchased Overcharged Goods at a Walmart store located in this judicial district at 5630 W. Touhy Avenue, Niles, Illinois.

14.     Walmart is a multi-national corporation that operates chains of retail and grocery stores. Walmart is incorporated in Delaware and its principal offices are located in Bentonville,

---

[1] *See* https://corporate.walmart.com/about/illinois (claiming figures are as of April 2022).

Arkansas. Walmart has 184 retail stores in Illinois, employing 58,139 in these stores, and distributes, markets, advertises, and sells the Overcharged Goods in Illinois, this judicial district, and throughout the United States.

## FACTUAL ALLEGATIONS

### A.    Walmart's Business Model

15.    Walmart's business model focuses on "help[ing] people around the world save money and live better . . ." and its strategy is "to make every day easier for busy families . . . and make trust a competitive advantage . . . includ[ing] our commitment to price leadership, which has been and will remain a cornerstone of our business. . . ."[2]

16.    Walmart's operations comprise of three reportable business segments: Walmart U.S., Walmart International and Sam's Club. Walmart U.S. is the Company's largest segment, operating in all 50 states, Washington D.C. and Puerto Rico. Walmart U.S. is a mass merchandiser of consumer products, operating under the "Walmart" and "Walmart Neighborhood Market" brands, including Walmart.com.[3]

17.    Walmart U.S. does its business in three strategic merchandise units:

**Grocery**:  consisting of a full line of grocery items, including dry grocery, snacks, dairy, meat, produce, deli & bakery, frozen foods, alcoholic and nonalcoholic beverages, as well as consumables such as health and beauty aids, pet supplies, household chemicals, paper goods and baby products;

**General Merchandise**: consisting of: Entertainment (*e.g.*, electronics, toys, seasonal merchandise, wireless, video games, movies, music and books); Hardlines (*e.g.*, automotive, hardware and paint, sporting goods, outdoor living and stationery); Apparel (*e.g.*, apparel for men, women, girls, boys and infants, as well as shoes, jewelry and

---

[2]    Walmart 2022 Annual Report, Walmart, Inc. (March 18, 2022) at 6, *available at*: https://s2.q4cdn.com/056532643/files/doc_financials/2022/ar/WMT-FY2022-Annual-Report.pdf    (the "2022 Annual Report").

[3] 2022 Annual Report at 7.

accessories); and <u>Home</u> (*e.g.*, housewares and small appliances, bed & bath, furniture and home organization, home furnishings, home décor, fabrics crafts).

**Health and Wellness:** including pharmacy, over-the-counter-drugs and other medical products, optical services and other clinical services.[4]

18.    Historically, the Walmart U.S. segment has had the highest gross profit as a percentage of net sales ("gross profit rate"). In addition, the Walmart U.S. segment has historically contributed the greatest amount to Walmart's net sales and operating income.[5]

19.    For its fiscal years, Walmart reported: $572.754 billion in revenues from February 1, 2021 to January 31, 2022; $559.151 billion in revenues from February 1, 2020 to January 31, 2021; and $523.964 billion in revenues from February 1, 2019 to January 31, 2020.[6]

20.    Walmart's total consolidated revenues are driven by its revenues from Walmart U.S. Specifically, in its fiscal year 2022, Walmart U.S. alone reported $470.295 billion in revenues representing over 80% of Walmart's total revenues. Additionally, no individual country other than the U.S. had total revenues that were material to Walmart's reported consolidated total revenues.[7]

21.    The overwhelming majority of Walmart U.S.'s sales come from consumers purchasing merchandise at Walmart brick and mortar store locations. For fiscal year 2022, in-store sales represented approximately 88% of Walmart U.S.'s total net sales.[8]

---

[4] *Id*.

[5] *Id*.

[6] *Id*. at 38.

[7] *Id*. at 78.

[8] *Id*.

      **B.**      **Walmart Deceived Plaintiff and Class Members with its False, Misleading, Unfair and Deceptive Pricing Practices Resulting in Actual Damage to Plaintiff and Class Members**

      22.      Walmart uses Shelf Pricing to advertise prices, price changes and bargains inside its stores, which are designed to, and do, induce consumers in Illinois and throughout the United States, including Plaintiff and Class members, into selecting the advertised goods from among similar products located nearby on the shelf and into believing that they will pay the price advertised.

      23.      In reality, however, after being enticed by the Shelf Pricing to purchase the advertised items, Plaintiff and Class members are charged higher prices for Overcharged Goods at checkout.

      24.      For example, on August 2, 2022, Plaintiff purchased Overcharged Goods at Walmart's store located at 5630 W. Touhy Avenue in Niles, Illinois. As shown below, Plaintiff was charged higher prices for certain merchandise at checkout than what Walmart advertised on its Shelf Pricing:

      **a.**      **Strawberry Kit-Kats:** Walmart's Shelf Pricing advertised that the candy cost $1.64. Plaintiff was charged and paid $1.88 at checkout (a 14% markup) (highlighting added for easy reference):



**b.      Reese Minis Dessert Topping:** Walmart's Shelf Pricing advertised that the candy cost $2.00. Plaintiff was charged and paid $2.28 at checkout (a 14% markup) (highlighting added for easy reference):



**c.      Hershey Strawberry Syrup:** Walmart's Shelf Pricing advertised that the candy cost $2.48. Plaintiff was charged and paid $2.87 at checkout (a 15% markup) (highlighting added for easy reference):



d.     **Chi-Chi's Mild Salsa:** Walmart's Shelf Pricing advertised that the salsa cost $2.00. Plaintiff was charged and paid $2.28 at checkout (a 14% markup) (highlighting added for easy reference):



e.     **Entenmann's Lite Bite Banana Muffins:** Walmart's Shelf Pricing advertised that the muffins cost $3.60. Plaintiff was charged and paid $3.94 at checkout (a 9.4% markup) (highlighting added for easy reference):

8



    **f.**    **Hostess Chocolate Cupcakes:** Walmart's Shelf Pricing advertised that the muffins cost $3.12. Plaintiff was charged and paid $3.48 at checkout (a markup of over 11%) (highlighting added for easy reference):



    25.    Plaintiff considers Shelf Pricing in making his shopping decisions; and the Shelf Pricing in Walmart on August 2, 2022 materially drove his shopping decisions that day.

9

26.     Prior to purchasing these Overcharged Goods, Plaintiff read and relied upon Defendant's false and misleading Shelf Pricing that was prepared and approved by Walmart. For each purchase, he understood that he was paying the price reflected on the Shelf Pricing and such pricing was being offered by Walmart.

27.     Plaintiff purchased Overcharged Goods based on Walmart's Shelf Pricing and would not have purchased the Overcharged Goods but for the advertised Shelf Pricing.

28.     Plaintiff suffered actual damages because he paid for more for the Overcharged Goods than the value of the merchandise as reflected on the Shelf Pricing.

**C.     The Federal Trade Commission Forbids Walmart's Unfair and Deceptive Pricing Practices**

29.     The Federal Trade Commission (the "FTC") requires that any retailer who offers price comparisons "should make certain that the bargain offer is genuine and truthful. Doing so will serve their own interest as well as that of the general public." 16 C.F.R. § 233.5.

30.     When a retailer offers an item for sale, then, the offer must be entirely genuine and truthful, and not contain any deceptive or unfair aspect.

31.     Walmart, however, fails to comply with this FTC guideline. Instead, through its unfair and deceptive pricing practices, Walmart deceives consumers into paying more for Overcharged Goods than the value represented on Walmart's Shelf Pricing.

**D.     Walmart Willfully Engages in Systemic and Pervasive Unfair and Deceptive Pricing Practices**

32.     Walmart knows that it overcharges consumers through its unfair and deceptive pricing practices.  Even though Walmart has been fined locally for these practices — essentially a slap on the wrist for this $500-billion-dollar retailer — it has continued to allow its stores to charge more for Overcharged Goods than what is advertised on the deceptive Shelf Pricing and

10

elects not to implement institutional systemic controls to prevent such practices, willfully continuing to mislead and overcharge consumers.

33.     For example, at least two state agencies have taken action against Walmart for its unfair and deceptive pricing practices and its overcharging of consumers, resulting in millions of dollars in fines.

34.     For example, in 2012, the state of California, led by then-Attorney General Kamala Harris, assessed Walmart a $2 million fine for violating a 2008 ruling requiring it to resolve pricing errors at checkout.[9]

35.     Similarly, in November 2021, the North Carolina Department of Agriculture and Consumer Services fined two Walmart stores in Wilmington, North Carolina after an investigation found "repeated" and "excessive" price-scanner errors that resulted in customer overcharges.[10]  Specifically, the investigation found overcharges on between 3% to 7% of purchases *each month*.  During an August 2021 inspection, 21 out of 300 items purchased, or 7% of the purchases resulted in overcharges.

36.     As recently as February 2022, five Walmart stores in North Carolina were required to pay fines of more than $15,000 for price scanning errors resulting in overcharging consumers.[11]

---

[9] *Available at*: https://www.sandiegouniontribune.com/sdut-walmart-fined-21-million-overcharging-customers-2012mar21-htmlstory.html

[10] *Available at:* https://www.starnewsonline.com/story/news/2021/11/09/wilmington-nc-walmart-dollar-general-fined-price-scanning-errors/6358289001/

[11] *Available at:* https://www.ncagr.gov/paffairs/release/2022/Twenty-twostorespayfinesforpricescanningerrors.htm

37.     Store-specific fines in the thousands of dollars, and even a statewide $2 million fine — if and when Walmart is caught, and if and when state agencies elect to investigate — are not an effective deterrent to this $500-billion corporation. Walmart continues its false, misleading, unfair and deceptive pricing practices unabated.

38.     Plaintiff's counsel's investigation identified numerous and frequent overcharges at stores examined across many of the United of the States during the relevant period, including Walmart stores located in Illinois.

39.     For example, in June 2022, the Shelf Pricing at a Walmart located at 3626 Touhy Avenue, Skokie, Illinois advertised that: (1) Sweet Ray's BBQ Sauce cost $2.98, when the price at checkout was $3.60; (2) Ragu Old World Style Traditional Sauce cost $1.78, when the price at checkout was $1.96; and (3) S. Rosen Bread cost $3.38, when the price at checkout was $3.88.

40.     Similarly, in August 2022, the Shelf Pricing at a Walmart located at 137 W. North Avenue, Northlake, Illinois advertised that: (1) Scotch Gift Wrap cost $5.14, when the price at checkout was $5.34; and (2) GV LED Light Bulbs cost $3.94, when the price at checkout was $4.12.

41.     Additionally, during the relevant period, Plaintiff's counsel's investigation identified Walmart's unfair and deceptive pricing practices throughout the United States, including stores located in Florida, Indiana, Maryland, New Jersey, New York, and other states, demonstrating that the unfair and deceptive practices are not limited to Illinois and extend from coast-to-coast. Paragraphs 42 through 48 contain a non-exhaustive set of examples:

42.     **Florida**: In February 2022, the Shelf Pricing at Walmart located at 301 S. State Road 7, Hollywood, Florida advertised that: (1) StarKist Chunk Light Tuna cost $1.00, when the price at checkout was $1.24; (2) Florida Natural Orange Juice cost $2.98, when the price at

checkout was $3.18; (3) Pitted Queen Olives cost $5.57, when the price at checkout was $5.94; (4) Crisco Vegetable Oil cost $2.00, when the price at checkout was $2.34; and (5) McCormick Black Pepper cost $3.18, when the price at checkout was $3.62.

43.    **Maryland**: In April 2022, the Shelf Pricing at Walmart located at 1 Frankel Way in Cockeysville, Maryland advertised that Idahoan Buttery Golden Selects Mashed Potatoes cost $1.00, when the price at checkout was $1.12.

44.    **New Jersey**: In January 2022, the Shelf Pricing at Walmart located at 326 Main Street, Freehold, New Jersey advertised that: (1) Crisco Pure Canola Oil cost $3.12, when the price at checkout was $3.64; and (2) Del Monte Fresh Cut Diced Potatoes cost $0.98, when the price at checkout was $1.18; in January 2022, the Shelf Pricing at Walmart located at 4900 U.S. Highway #9, Howell, New Jersey advertised that: (1) Great Value Chocolate Syrup cost $1.38, when the price at checkout was $1.74; and (2) Hershey Chocolate Syrup cost $2.33, when the price at checkout was $2.48; and in May 2022, the Shelf Pricing at Walmart located at 1872 Route 88, Brick, New Jersey advertised that: (1) Oreo Fireworks Chocolate Sandwich Cookies cost $3.58, when the price at checkout was $4.28; and (2) Libby's Whole Sweet Corn cost $0.82, when the price at checkout was $0.98.

45.    **Pennsylvania**: In January 2022, the Shelf Pricing at Walmart located at 100 Lunger Drive, Bloomsburg, Pennsylvania advertised that: (1) Hanover Garbanzo Beans Chick Peas cost $0.92, when the price at checkout was $0.98; and (2) McCormick Black Pepper cost $3.18, when the price at checkout was $3.62.

46.    Further, Plaintiff's investigation revealed that even in North Carolina – a state in which Walmart has been fined for its unfair and deceptive pricing practices – Walmart continues

13

to use deceptive Shelf Pricing to overcharge consumers at checkout – even at the very same stores that had been fined for overcharging consumers as recently as February 2022.

47.     For example, in August 2022, the Shelf Pricing at Walmart located at 1205 Eastern Avenue, Nashville, North Carolina advertised that: (1) Celestial Seasonings, Country Peach Passion Herbal Tea cost $2.72, when the price at checkout was $2.98; (2) Campbell's Condensed Tomato Soup cost $1.18, when the price at checkout was $1.26; and (3) Sunbeam Queen Enriched White Bread Loaf cost $2.52, when the price at checkout was $2.84.

48.     Similarly, in August 2022, the Shelf Pricing at Walmart located at 1049 Durham Road, Roxboro, North Carolina advertised that: (1) Entenmann's Little Bites Fudge Brownie Mini Muffins cost $3.60, when the price at checkout was $3.94; (2) Popcorners Kettle Corn Popped Corn Snacks cost $3.28, when the price at checkout was $3.68; (3) Snyder's of Hanover Nacho Cheese Twisted Pretzel Sticks cost $3.38, when the price at checkout was $3.68; and (4) Wild Style Garlic Parmesan Sauce cost $2.62, when the price at checkout was $3.34.

## CLASS DEFINITIONS AND ALLEGATIONS

49.     Pursuant to Rule 23(b)(2), (b)(3), and (c)(4) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself and the proposed Classes.[12] Plaintiff brings this action on behalf of himself and the proposed Nationwide Class:

> All persons who purchased merchandise from a Walmart store in the United States, within the applicable statute of limitations, until the date notice is disseminated, and paid higher prices for merchandise than the advertised shelf-prices (the "Nationwide Class").

50.     Pursuant to Federal Rules of Civil Procedure Rule 23(b)(2) and 23(b)(3), Plaintiff brings this action on behalf of himself and the proposed Illinois Class:

---

[12] Unless otherwise specified, all references in this Complaint to "Classes" or the "Class" refer collectively to the Nationwide Class, the Illinois Class, the Multi-State Consumer Protection Class, and the Multi-State Uniform Deceptive Trade Practices Act ("UDTPA") Class.

All persons who purchased merchandise from a Walmart store in the State of Illinois, within the applicable statute of limitations, and paid higher prices for merchandise than the advertised shelf-prices (the "Illinois Class").

51.    Pursuant to Federal Rules of Civil Procedure Rule 23(b)(2) and 23(b)(3), Plaintiff

brings this action on behalf of himself and the proposed Multi-State Consumer Protection Class:

All persons who purchased merchandise from a Walmart store in the State of Illinois or any state with similar laws,[13] within the applicable statute of limitations, until the date notice is disseminated, and paid higher prices for the merchandise than the advertised shelf-prices (the "Multi-State Class").

52.    Pursuant to Federal Rules of Civil Procedure Rule 23(b)(2) and 23(b)(3), Plaintiff

brings this action on behalf of himself and the proposed Multi-State Uniform Deceptive Trade

Practices Act ("UDTPA") Class:

All persons who purchased merchandise from a Walmart store in the State of Illinois or any state that has adopted similar UDTPA laws,[14] within the applicable

---

[13] While discovery may alter the following, Plaintiff asserts that the other states with similar consumer fraud laws under the fact of this case include but are not limited to: California (Cal. Civ. Code § 1770(a)(9)); Colorado (Colo. Rev. Stat. § 6-1-101, et seq.); Connecticut (Conn. Gen. Stat. § 42-110, et seq.); Delaware (Del. Code tit. 6, §§ 2511, et seq.); District of Columbia (D.C. Code § 28-3901, et seq.); Florida (Fla. Stat. § 501.201, et seq.); Hawaii (Haw. Rev. Stat. § 480-1, et seq.); Idaho (Idaho Code § 48-601, et seq.); Illinois (815 ICLS § 505/1, et seq.); Maryland (Md. Comm. Law Code Ann. § 13-1301, et seq.); Massachusetts (Mass. Gen. Laws Ch. 93A, et seq.); Michigan (Mich. Comp. Laws § 445.311, et seq.) (the notice requirement set forth in § 445.311, et seq. does not apply where, as here, the seller intentionally charges more for a consumer item than the price displayed for the item in pursuant to Mich. Comp. Laws § 445.319(4)); Minnesota (Minn. Stat. § 325F.67, et seq.); Minnesota (Minn. Stat. § 325F.67, et seq.); Missouri (Mo. Rev. Stat. § 407.010, et seq.); Nebraska (Neb. Rev. Stat. § 59 1601, et seq.); Nevada (Nev. Rev. Stat. § 598.0915, et seq.); New Hampshire (N.H. Rev. Stat. § 358A:1, et seq.); New Jersey (N.J. Stat. Ann. § 56:8-1, et seq.); New Mexico (N.M. Stat. § 57-12-1, et seq.); New York (N.Y. Gen. Bus. Law § 349, et seq.); North Dakota (N.D. Cent. Code § 51-15-01, et seq.); Oklahoma (Okla. Stat. tit. 15, § 751, et seq.); Oregon (Or. Rev. Stat. § 646.605, et seq.); Pennsylvania (73 Pa. Stat. § 201-1 et seq.); Rhode Island (R.I. Gen. Laws § 6-13.1-1, et seq.); South Dakota (S.D. Code Law § 37-24-1, et seq.); Utah (Utah Code § 13-11-1, et seq.); Virginia (VA Code § 59.1-196, et seq.); Vermont (Vt. Stat. tit. 9, § 2451, et seq.); Washington (Wash. Rev. Code § 19.86.010, et seq.); West Virginia (W. Va. Code § 46A-6-101, et seq.).

[14] While discovery may alter the following, Plaintiff asserts that the other states with similar UDTPA statutes under the facts of this case include but are not limited to: Colorado (Colo. Rev. Stat. § 6-1-105, et seq.); Delaware (Del. Code tit. 6, § 2531, et seq.); District of Columbia (D.C. Code § 28-3901, et seq.); Georgia (Ga. Code § 10-1- 372, et seq.); Hawaii (Haw. Rev. Stat. § 481A, et seq.); Idaho (Idaho Code § 48-601, et seq.); Illinois (815 ICLS § 510/1, et seq.); Maine (10 M.R.S.A. § 1210, et seq.); Minnesota (Minn. Stat. § 325D.43, et seq.); Mississippi (MS Code § 75-24-1, et seq.); Nebraska (Neb. Rev. Stat. § 87-301, et seq.); New Hampshire (Nev. Rev. Stat. § 598.0901, et seq.); New Mexico (N.M. Stat. § 57-12-

15

statute of limitations, until the date notice is disseminated, and paid higher prices for merchandise than the advertised shelf-prices (the "Multi-State UDTPA Class").

53.    Excluded from the Classes are: (i) the Defendant, and any entity in which any Defendant or its subsidiaries of affiliates have a controlling interest, and Defendant's legal representatives, predecessors, successors and assigns; (ii) governmental entities; (iii) Defendant's employees, officers, directors, agents, and representatives and their family members; (iv) all persons who make a timely election to be excluded from the Classes; and (v) the Judge and staff to whom this case is assigned, and any member of the Judge's immediate family.

54.    **Numerosity – Federal Rule of Civil Procedure 23(a)(1)**: The members of the proposed Classes are so numerous that the individual joinder of all absent Class members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and is in the exclusive control of Defendant, it is ascertainable by appropriate discovery. Plaintiff is informed and reasonably believes that Class members include hundreds of thousands of people or more, who are geographically diverse so that joinder of all Class members is impracticable.

55.    **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3):** This action involves common questions of law or fact, which predominate over any questions affecting individual Class members, including: (i) whether Walmart's pricing practices are false, deceptive, misleading, unfair and/or unlawful; (ii) whether Walmart's pricing practices with respect to Shelf Pricing and Overcharge Goods are false, deceptive, misleading, unfair and/or unlawful; (iii) whether Walmart's conduct violates the Illinois Consumer Fraud Act and Deceptive Business Practices Act; (iv) whether Walmart's violation is willful or grossly negligent; (v) whether Walmart should be enjoined from continuing to charge consumers higher

---

1, et seq.); Oklahoma (Okla. Stat. Ann. tit. 15 § 751, et seq); and Wyoming (Wyo. Stat. Ann. §40-12-101, et seq.).

prices for merchandise than is advertised on its Shelf Pricing, or required to implement systemic controls to ensure the same; (vi) whether Plaintiff and the Class members sustained actual damages; and (vii) whether Walmart has unjustly enriched itself by deceptively overcharging customers for Overcharged Goods.

56.    **Typicality – Federal Rule of Civil Procedure 23(a)(3):** Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were injured through the substantially uniform misconduct of Defendant. Plaintiff is advancing the same claims and legal theories on behalf of himself and all other Class members, and there are no defenses that are unique to Plaintiff. The claims of Plaintiff and those of the other Class members arise from the same operative facts and are based on the same legal theories.

57.    **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4):** Plaintiff is an adequate representative of the Classes because his interests do not conflict with the interests of the other Class members he seeks to represent; he has retained counsel competent and experienced in complex class action litigation and Plaintiff will prosecute this action vigorously. The Class members' interests will be fairly and adequately protected by Plaintiff and his counsel.

58.    **Superiority – Federal Rule of Civil Procedure 23(b)(3):** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The damages, harm, or other financial detriment suffered individually by Plaintiff and Class members are relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against Defendant, making it impracticable for Class members to individually seek redress for Defendant's wrongful conduct. Even if Class

members could afford individual litigation, the court system could not. Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

59.     Further, Defendant has acted or refused to act on grounds generally applicable to each of the Classes and, accordingly, final injunctive or corresponding declaratory relief with regard to members of the Classes as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

60.     Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

<p style="text-align:center"><strong><u>CAUSES OF ACTION</u></strong></p>

<p style="text-align:center"><strong>COUNT I<br>VIOLATION OF THE ILLINOIS<br><u>CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT</u><br>(On Behalf of Plaintiff and the Illinois Class)</strong></p>

61.     Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1-60 as if fully set forth herein.

62.     Plaintiff brings this action individually and on behalf of the Illinois Class.

63.     In Illinois, the Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, *et seq*. (the "ICFA") prohibits "unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or

omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' . . . ." In turn, the Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/2(a)(11), states that making "false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions" constitutes a deceptive practice.

64.    The ICFA was enacted to protect the consuming public and legitimate business enterprises from those who engage in unfair or deceptive acts or practices in the conduct of any trade or commerce.

65.    Plaintiff is a "consumer" as defined by 815 Ill. Comp. Stat. 505/1(e).

66.    The subject transaction for Overcharged Goods is "trade" or "commerce" as defined by 815 Ill. Comp. Stat. 505/1(f).

67.    Defendant violated the ICFA by, within its Illinois stores, engaging in the unfair and deceptive pricing practices described herein and proscribed by ICFA, 815 Ill. Comp. Stat. 505/2 and, by incorporation therein, 815 Ill. Comp. Stat. 510/2.

68.    Defendant's actions constitute unfair and deceptive acts or practices within the meaning of the ICFA because, as alleged herein, Defendant advertised and marketed the Overcharged Goods at Shelf Prices that were lower than the prices Defendant charged consumers (like Plaintiff and Class members) at checkout.

69.    Further, Defendant's actions offend an established public policy, and are immoral, unethical, oppressive, and unscrupulous, and are and were substantially injurious to consumers.

70.    By misleading Plaintiff and Class members into believing that they were purchasing merchandise for the prices represented on the Shelf Pricing, Defendant induced them

to select such goods based on their Shelf Pricing and then to purchase these Overcharged Goods at higher prices for the benefit of Defendant.

71.     Plaintiff and Class members relied on and were misled by Defendant's unfair and deceptive pricing practices to their detriment by purchasing the Overcharged Goods at prices higher than were advertised through the Shelf Pricing.

72.     As a direct and proximate result of Defendant's conduct, Plaintiff and Class members suffered actual damages in that they paid Defendant more for Overcharged Goods than the value represented in Defendant's Shelf Pricing.

73.     Plaintiff and Class members have been and will continue to be deceived or misled by Defendant's false, misleading, unfair and deceptive pricing practices.

74.     Defendant knew and calculated that its practices would mislead consumers, continuing such practices despite knowledge of the deception and the harm it caused and causes. Such conduct thus is willful and in wanton disregard of Plaintiff's and Class members' rights.

75.     As a result of the Defendant's violations of the ICFA, Plaintiff and Class members are entitled to recover compensatory damages, restitution, punitive and special damages including but not limited to treble damages, reasonable attorneys' fees and costs, injunctive relief, and other relief as deemed appropriate or permitted pursuant to the relevant law.

76.     Plaintiff reserves the right to allege other violations of ICFA as discovery unfolds, as Defendant's conduct is ongoing.

**COUNT II**
**VIOLATION OF THE ILLINOIS**
**UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**(On Behalf of Plaintiff and the Illinois Class)**

77.     Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1-76 as if fully set forth herein.

20

78.    Plaintiff brings this action individually and on behalf of the Illinois Class.

79.    The Illinois Uniform Deceptive Trade Practices Act ("Ill. UDTPA"), 815 Ill. Comp. Stat. 510/2, *et seq*., prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact."

80.    815 ILCS 510/2 provides in pertinent part that a "person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation," the person does any of the following: "(9) advertises goods or services with intent not to sell them as advertised; . . . (11) makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions; [or] (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

81.    Defendant engaged in unfair and deceptive acts in violation of 815 Ill. Comp. Stat. 510/2 when, as set forth above, it advertised Shelf Pricing with the intent not to sell such goods at the prices advertised; advertised Shelf Pricing with false or misleading purported price reductions; and continued these practices despite knowledge that they create a likelihood of confusion or misunderstanding.

82.    Defendant's deceptive acts occurred in a course of conduct involving trade and commerce in Illinois and throughout the United States.

83.    Defendant's deceptive acts proximately caused actual injury Plaintiff and the Class members at the point of purchase.

84.     Plaintiff and Class members would not have purchased the Overcharged Goods but for Defendant's false and misleading pricing practices and Shelf Pricing. Defendant intended Plaintiff and all Class members to rely on the false and misleading Shelf Pricing when purchasing the Overcharged Goods.

85.     Defendant knew that its unfair and deceptive pricing practices were causing Plaintiff and Class members to pay more for Overcharged Goods than the value represented in the Shelf Pricing, and its behavior thus was willful.

86.     Defendant's unfair and deceptive pricing practices are company-wide, pervasive, and continuous. Because Defendant continues to allow its stores across the United States to charge more for Overcharged Goods than what is advertised on the deceptive Shelf Pricing, and elects not to implement institutional systemic controls to prevent such practices even after being fined for such practices by local agencies, Plaintiff and Class members are likely to be misled and overcharged in the future.

87.     As a result of the Defendant's violations of the Ill. UDTPA, Plaintiff and Class members are entitled to injunctive relief, attorneys' fees and costs, and other relief as deemed appropriate or permitted pursuant to the relevant law.

**COUNT III**
**VIOLATIONS OF STATE CONSUMER PROTECTION STATUTES**
**(On Behalf of Plaintiff and the Multi-State Consumer Class)**

88.     Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1-87 as if fully set forth herein.

89.     Plaintiff and Class members have been injured as a result of Defendant's violations of the state consumer protection statutes listed above in paragraph 51 and footnote 13,

which also provide a basis for redress to Plaintiff and Class members based on Defendant's fraudulent, deceptive, unfair and unconscionable acts, practices and conduct.

90.    Defendant's conduct as alleged herein violates the consumer protection, unfair trade practices and deceptive acts laws of each of the jurisdictions encompassing the Multi-State Consumer Class.

91.    Defendant violated the Multi-State Consumer Class's states' unfair and deceptive acts and practices laws by advertising sales prices for Overcharged Goods but charging Class members higher prices at checkout.

92.    Defendant's misrepresentations were material to Plaintiff's and Class members' decision to purchase the Overcharged Goods.

93.    Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and /or with reckless disregard for the truth and for the rights of consumers.

94.    As a result of Defendant's violations of the aforementioned states' unfair and deceptive practices laws, Plaintiff and Class members paid higher prices for Overcharged Goods.

95.    As a result of Defendant's violations, Defendant has been unjustly enriched.

96.    Pursuant to the aforementioned states' unfair and deceptive practices laws, Plaintiff and Class members are entitled to recover compensatory damages, restitution, punitive and special damages including but not limited to treble damages, reasonable attorneys' fees and costs and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant law.

**COUNT IV**
**VIOLATION OF THE UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**(On Behalf of Plaintiff and the Multi-State Consumer Class)**

97.    Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1-96 as if fully set forth herein.

98.    Plaintiff brings this action individually and on behalf of the Multi-State UDTPA Class.

99.    Plaintiff and Class members have been injured as a result of Defendant's violations of the UDTPA adopted by the states listed above in paragraph 52 and footnote 14.

100.    The UDTPA provides in pertinent part that a "person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation," the person does any of the following: "advertises goods or services with intent not to sell them as advertised; "makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;" [or] "engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

101.    Defendant engaged in unfair and deceptive acts in violation of the UDTPA when, as set forth above, it advertised Shelf Pricing with the intent not to sell such goods at the prices advertised; advertised Shelf Pricing with false or misleading purported price reductions; and continued these practices despite knowledge that they create a likelihood of confusion or misunderstanding.

102.    Defendant's deceptive acts occurred in a course of conduct involving trade and commerce in Illinois and throughout the United States.

103.    Defendant's deceptive acts proximately caused actual injury Plaintiff and the Class members at the point of purchase.

24

104.    Plaintiff and Class members would not have purchased the Overcharged Goods but for Defendant's false and misleading pricing practices and Shelf Pricing. Defendant intended Plaintiff and all Class members to rely on the false and misleading Shelf Pricing when purchasing the Overcharged Goods.

105.    Defendant knew that its unfair and deceptive pricing practices were causing Plaintiff and Class members to pay more for Overcharged Goods than the value represented in the Shelf Pricing, and its behavior thus was willful.

106.    Defendant's unfair and deceptive pricing practices are company-wide, pervasive, and continuous. Because Defendant continues to allow its stores across the United States to charge more for Overcharged Goods than what is advertised on the deceptive Shelf Pricing, and elects not to implement institutional systemic controls to prevent such practices even after being fined for such practices by local agencies, Plaintiff and Class members are likely to be misled and overcharged in the future.

107.    As a result of the Defendant's violations of the UDTPA, Plaintiff and Class members are entitled to injunctive relief, attorneys' fees and costs, and other relief as deemed appropriate or permitted pursuant to the relevant law.

**COUNT V**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Nationwide Class)**

108.    Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1-107 as if fully set forth herein.

109.    To the extent of any overlap of claims, Plaintiff's Unjust Enrichment cause of action herein is pled in the alternative to Counts I, II, III and IV above.

110.    Plaintiff brings this action individually and on behalf of the Nationwide Class.

111.    Plaintiff and Class members conferred a monetary benefit on Defendant by paying higher prices for Overcharged Goods than Defendant's advertised Shelf Pricing.

112.    Defendant knew that Plaintiff and Class Members conferred a benefit on Defendant and accepted or retained that benefit. Through its false, misleading, unfair and deceptive pricing practices, Defendant unjustly received and retained benefits at the expense of Plaintiff and Class members, specifically the difference in price between what was charged and what should have been charged, and the failure to provide the Overcharged Goods based on its representations.

113.    By and through Defendant's false, misleading, unfair and deceptive pricing practices, Defendant has received, had use of, and accrued interest on these funds wrongfully obtained from Plaintiff and Class members.

114.    Defendant should not be permitted to retain the money belonging to Plaintiff and Class members, because Defendant failed to provide the Overcharged Goods at the advertised price, and Defendant has not provided compensation to Plaintiff and Class members.

115.    Plaintiff and Class members have suffered pecuniary harm as a direct and proximate result of Defendant's conduct.

116.    If Plaintiff and Class members knew that Defendant was going to charge higher prices for Overcharged Goods, they would not have purchased Overcharged Goods from Defendant.

117.    Plaintiff and Class members have no adequate remedy at law.

118.    Plaintiff and Class members are entitled to restitution of, disgorgement of, and/or the imposition of a construct trust upon all profits, benefits, and other compensation obtained by

Defendant, and for such other relief that this Court deems proper, as a result of their unfair, misleading, and inequitable conduct.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of other members of the proposed Classes, respectfully requests that the Court enter judgment in Plaintiff's favor and against Defendant as follows:

A.    Declaring that this action is a proper class action, certifying the Classes as requested herein, designating Plaintiff as Class Representative and appointing the undersigned counsel as Class Counsel.

B.    Ordering injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful, unfair and deceptive business practices as set forth herein, and requiring it to implement systemic controls to prevent the same from continuing to occur;

C.    Ordering restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the Class members as a result of Defendant's unlawful, unfair and deceptive business practices;

D.    Awarding actual damages, compensatory damages, and punitive damages in an amount to be determined at trial;

E.    Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Classes;

F.    Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

G.    Ordering such other relief as may be just and proper.

## JURY DEMAND

119.    Plaintiff demands a trial by jury of all claims in this Complaint so triable.

Dated: August 9, 2022

<div style="margin-left:40%">

Respectfully submitted,

**GINGOLD LEGAL**
/s/ Scott H. Gingold
SCOTT H. GINGOLD
1326 Isabella Street
Evanston, IL 60201
 scott@gingoldlegal.com
Telephone: (773)793-9093

STANLEY D. BERNSTEIN*
 bernstein@bernlieb.com
SANDY A. LIEBHARD*
 liebhard@bernlieb.com
STEPHANIE M. BEIGE*
 beige@bernlieb.com
JEFFREY MCEACHERN*
 jmceachern@bernlieb.com
HAIRONG BASIL*
 hbasil@bernlieb.com
**BERNSTEIN LIEBHARD LLP**
10 East 40th Street
New York, New York 10016
Telephone: (212)779-1414
Facsimile: (212)779-3218

*Attorneys for Plaintiff*

*Application for *Pro Hac Vice* Forthcoming

</div>

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| YORAM KAHN, individually and on behalf of all others similarly situated, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 22 C 4177 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| WALMART, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

After Defendant Walmart, Inc. charged Plaintiff Yoram Kahn more than the prices

reflected on the store shelf for certain items that he purchased, Kahn filed this putative class

action against Walmart.  Kahn brings claims for violation of the Illinois Consumer Fraud and

Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/1 *et seq.*, the Illinois

Uniform Deceptive Trade Practices Act ("UDTPA"), 815 Ill. Comp. Stat. 510/1 *et seq.*, and other

similar state consumer protection statutes.  Kahn also brings a claim for unjust enrichment.

Walmart filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure

12(b)(6).  Because Kahn has not sufficiently alleged the required elements of his claims and any

attempt to amend to do so would be futile, the Court grants Walmart's motion and dismisses this

case with prejudice.

BACKGROUND[1]

Walmart uses shelf pricing to advertise merchandise prices and enable consumers to calculate pricing differences between brands and identify bargains, as well as to induce consumers to purchase the advertised merchandise. But Walmart's shelf pricing does not always reflect the price it charges consumers at the point of sale, causing consumers to pay higher prices at checkout. Various agencies have imposed fines on Walmart for this practice. In 2012, the State of California assessed a $2 million fine against Walmart for violating a 2008 ruling requiring it to resolve pricing errors at checkout. In November 2021, the North Carolina Department of Agriculture and Consumer Services fined two Walmart stores in Wilmington, North Carolina after an investigation found repeated and excessive scanning errors that caused customer overcharges on between three and seven percent of purchases each month. An additional five Walmart stores, including one of the previously fined stores, had to pay over $15,000 in fines for overcharging consumers due to price scanning errors in February 2022.

Kahn, an Ohio resident, visited a Walmart store at 5630 W. Touhy Avenue, Niles, Illinois, on August 2, 2022. Kahn read and relied on the shelf pricing in deciding what to purchase. Ultimately, Kahn purchased fifteen items, with a pretax total of $27.69. Reviewing his receipt, Kahn determined that Walmart charged him more than the listed shelf price on six of the items he purchased: (1) strawberry Kit-Kats, which shelf pricing advertised as costing $1.64 but which rang up at checkout at $1.88 (a 14% markup); (2) Reese's Minis dessert topping,

---

[1] The Court takes the facts in the background section from Kahn's complaint and presumes them to be true for the purpose of resolving Walmart's motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013). Although the Court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment, *Jackson v. Curry*, 888 F.3d 259, 263 (7th Cir. 2018), the Court may consider "documents that are central to the complaint and are referred to in it" in ruling on a motion to dismiss, *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). The Court "may also take judicial notice of matters of public record." *Orgone Cap. III, LLC v. Daubenspeck*, 912 F.3d 1039, 1043–44 (7th Cir. 2019).

which shelf pricing advertised as costing $2.00 but which rang up at checkout as $2.28 (a 14% markup); (3) Hershey strawberry syrup, which shelf pricing advertised as costing $2.48 but which rang up at checkout as $2.87 (a 15% markup); (4) Chi-Chi's mild salsa, which shelf pricing advertised as costing $2.00 but which rang up at checkout as $2.28 (a 14% markup); (5) Entenmann's Lite Bite banana muffins, which shelf pricing advertised as costing $3.60 but which rang up at checkout as $3.94 (a 9.4% markup); and (6) Hostess chocolate cupcakes, which shelf pricing advertised as costing $3.12 but which rang up at checkout as $3.48 (an over 11% markup).

Kahn's counsel performed additional investigation of shelf pricing across the country, including in Florida, Indiana, Maryland, New Jersey, and New York, finding examples of overcharges at various stores. Counsel also found that, despite being fined in February 2022 for overcharges, two Walmart stores in North Carolina continued to have overcharges in August 2022.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the

3

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "This ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011) (citation omitted). Rule 9(b) does not govern only claims of fraud; it applies to all allegations and averments of fraud. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 446–47 (7th Cir. 2011); *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). "A claim that 'sounds in fraud'—in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements." *Borsellino*, 477 F.3d at 507.

## ANALYSIS

### I.    ICFA Claim

Kahn brings claims of deception and unfair conduct under ICFA, "a regulatory and remedial statute intended to protect consumers . . . against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645 (7th Cir. 2019) (quoting *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 416–17 (2002)). To state an ICFA claim, Kahn must allege (1) a deceptive or unfair act or practice by Walmart, (2) Walmart's intent that Kahn rely on the deceptive or unfair practice, (3) the deceptive or unfair practice occurred during a course of conduct involving trade or commerce, and (4) Walmart's deceptive or unfair practice proximately caused Kahn actual

damage.[2] *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012); *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010). A deceptive practices claim must meet Rule 9(b)'s heightened pleading standard, while an unfair practices claim need not because it is not based on fraud. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014). Kahn may recover for either deceptive or unfair conduct. *See Robinson*, 201 Ill. 2d at 960. Although Kahn uses language of unfairness in his complaint, he premises his ICFA claim on Walmart's alleged concealment of the actual prices of its items, and so the Court interprets it solely as a deceptive practices claim that must meet Rule 9(b)'s heightened pleading standard. *See Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) ("Although Haywood brings one ICFA claim alleging unfair practices, that claim still sounds in fraud because it relies upon the same baseline allegation that Massage Envy intentionally misled consumers by hiding information on the length of massage time."); *Jos. A. Bank*, 761 F.3d at 737 (addition of "unfairness" language did not change ICFA claim "entirely grounded in fraud" to an unfairness claim); *Pirelli*, 631 F.3d at 446–47 (pleading premised on intentional concealment appropriately interpreted as deceptive practices claim subject to Rule 9(b), not unfair practices claim subject to Rule 8).

Walmart argues that Kahn has not sufficiently alleged a deceptive act or that Walmart intended that he rely on any alleged deception. Walmart essentially argues that the price discrepancy between the shelf price and the scanner price amounted to a mere error and that the issuance of a receipt allowed Kahn to check the charges, dispelling any deception and establishing that Walmart had no intent to deceive. An act "is deceptive if it creates a likelihood

---

[2] Unlike for common law fraud, reliance is not an element of an ICFA claim. *See, e.g.*, *Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 576–77 (7th Cir. 2001) (affirming dismissal of common law fraud claim because the plaintiff could not show it relied on oral representations different from contract terms, while allowing the ICFA claim to proceed past motion to dismiss based on the same facts because reliance is not a required element of an ICFA claim).

of deception or has the capacity to deceive." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001). In making this determination, the Court considers the allegedly deceptive act "in light of the totality of the information made available to the plaintiff." *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005).

Walmart relies heavily on *Tudor v. Jewel Food Stores, Inc.*, 288 Ill. App. 3d 207 (1997), to argue that Kahn has not sufficiently alleged that Walmart engaged in a deceptive act. As here, in *Tudor*, the plaintiff alleged that the defendant charged her a price higher than that advertised on the shelf. *Id.* at 210. She also alleged, however, that the defendant's internal audits indicated its scanners were accurate 96% of the time from 1991 through 1993, the defendant provided her with a receipt to allow her to compare the scanned prices with the advertised prices, and the defendant had a money-back guarantee if the scanned price differed from the shelf price. *Id.* The *Tudor* court concluded that "[t]he combination of the high accuracy rate of the scanners, along with the issuance of a receipt and defendant's policy of providing a money-back guarantee if the scanned price differs from the shelf price, indicates there was no deception by defendant." *Id.*

Although Kahn contends that Walmart's accuracy rate is much lower than that in *Tudor* and he has not alleged that Walmart has a similar money-back guarantee, the Court finds the reasoning in *Tudor* applies equally to this case, where Walmart provides its customers with a receipt to compare the scanned price with the shelf price. "Illinois law is clear that where other information is available to dispel [a tendency to mislead], there is no possibility for deception." *Killeen v. McDonald's Corp.*, 317 F. Supp. 3d 1012, 1013 (N.D. Ill. 2018). Here, Walmart provided Kahn with a receipt, reflecting the incorrectly scanned prices. Kahn could, and indeed did, use this receipt to compare the prices Walmart charged him with the advertised shelf pricing.

This comparison revealed the discrepancy and dispelled any potential deception.[3] *See id.* at

1013–14 (no deception where store displayed prices near registers and a comparison between the

prices for individual items as opposed to a bundled meal "would have dispelled the deception"

that "could be drawn from the name 'Extra Value Meal'"); *Fuchs v. Menard, Inc.*, No. 17-cv-

01752, 2017 WL 4339821, at *5 (N.D. Ill. Sept. 29, 2017) (consumers' "direct and complete

access to the information needed" to determine the accuracy of the defendant's statements

defeated a claim of deception); *Saunders v. Mich. Ave. Nat'l Bank*, 278 Ill. App. 3d 307, 313

(1996) (no deception existed for allegedly hidden overdraft fee where the defendant disclosed the

fee in a pamphlet that the plaintiff received).

      Additionally, the Court finds that Kahn cannot adequately allege ICFA's intent element.

"To satisfy the intent requirement, plaintiff need not show that defendant intended to deceive the

plaintiff, but only that the defendant intended the plaintiff to rely on the (intentionally or

unintentionally) deceptive information given." *Chow v. Aegis Mortg. Corp.*, 286 F. Supp. 2d

956, 963 (N.D. Ill. 2003). Here, in light of the fact that Walmart provided Kahn with a receipt

against which he could, and indeed did, compare the shelf price to the scanned price to determine

if they differed, the Court cannot find that Walmart intended for Kahn to rely on the incorrectly

scanned price. *See Tudor*, 288 Ill. App. 3d at 210 (1997) ("[T]he combination of the issuance of

the receipt, along with the money-back guarantee if the scanned price differs from the shelf

---

[3] Kahn relies heavily on *Camasta v. Omaha Steaks International, Inc.*, No. 12-cv-08285, 2013 WL
4495661 (N.D. Ill. Aug. 21, 2013), to argue that *Tudor* does not compel dismissal in this case. But the
underlying alleged deceptive conduct in *Omaha Steaks* differs from that in *Tudor* and here, with the
plaintiff in that case alleging that the defendant had a pattern and practice of advertising the normal retail
price as a temporary price reduction. *Id.* at *1. Therefore, the Court does not find *Omaha Steaks*
persuasive, as nothing suggests that the provision of the receipt in *Omaha Steaks* would have dispelled the
deception, as it did here.

price, indicates defendant did not intend that plaintiff rely on an incorrectly scanned price.");[4] *cf.*

*Omaha Steaks*, 2013 WL 4495661, at *10 (plaintiff sufficiently alleged the intent element where,

among other things, the plaintiff could not "determine what the normal retail price is by

comparing his receipt to defendants' various advertisements").  Because Kahn cannot plead two

of the required elements of his ICFA claim, the Court dismisses that claim.

## II.    Remaining Claims

Kahn's remaining claims fail for the same reasons as his ICFA claim.  His UDTPA claim

requires an allegation of a false, misleading, or deceptive representation, made with the intention

that the consumer rely on the misrepresentation.  815 Ill. Comp. Stat. 510/2; *Lynch Ford, Inc. v.

Ford Motor Co.*, 957 F. Supp. 142, 147 (N.D. Ill. 1997).  Kahn alleges that Walmart violated the

UDTPA in the same way it violated ICFA: by advertising one price on the shelf while selling the

items at a higher, scanned price.  As the Court has already found, Kahn cannot plead the required

deceptive conduct or intent to deceive, and so his UDTPA claim fails for the same reasons as his

ICFA claim.

Similarly, absent a plausible allegation of deception, Kahn's claim for unjust enrichment

fails.  *See Bober*, 246 F.3d at 943 ("[I]n the absence of any deception on the part of the

defendants, the requisite [elements of unjust enrichment are] not present.").  Moreover, a claim

for unjust enrichment cannot stand on its own in light of the Court's dismissal of Kahn's ICFA

and UDTPA claims.  *See Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 740 (7th Cir. 2019)

("[T]he request for relief based on unjust enrichment is tied to the fate of the claim under the

---

[4] In *Tudor*, the plaintiff acknowledged in her complaint that the defendant had a money-back guarantee for overcharges.  288 Ill. App. 3d at 210.  Here, Kahn makes no such allegation nor does Walmart point us to any such policy that the Court could consider in ruling on Walmart's motion to dismiss. Nonetheless, the Court finds that *Tudor*'s reasoning concerning ICFA's intent requirement applies with equal force here where Kahn received a receipt identifying the prices Walmart charged him for the items he purchased, allowing him to identify any discrepancies between the scanned and shelf prices and raise any such discrepancies with Walmart.

Consumer Fraud Act."); *Martis v. Grinnell Mut. Reins. Co.*, 388 Ill. App. 3d 1017, 1024 (2009)

("Unjust enrichment is not a separate cause of action that, standing alone, will justify an action

for recovery.").

Finally, because the Court has concluded that Kahn has not adequately pleaded claims

under Illinois' consumer fraud statutes, leaving him without any individual claim, he cannot

pursue his class claims. *See Bryant v. All Ways Auto Transp., LLC*, No. 1:22-cv-00906, 2022

WL 17338295, at *6 (N.D. Ill. Nov. 30, 2022) ("Class action claims cannot be filed by class

representatives who have no individual claims, because they lack standing and have no 'personal

stake in the outcome.'" (quoting *O'Shea v. Littleton*, 414 U.S. 488, 493–94 (1974))). Thus, the

Court dismisses Kahn's claims on behalf of a multi-state class for violations of other states'

consumer protection statutes.[5] *See Bondick v. Ricoh Imaging Ams. Corp.*, No. 21 C 6132, 2022

WL 2116664, at *8 n.4 (N.D. Ill. June 13, 2022) ("Plaintiff also brings a claim for the violation

of state consumer fraud acts on behalf of the proposed Consumer Fraud Multi-State Class. Since

Plaintiff's own state-based consumer fraud act is dismissed, the proposed class has not been

certified, and no other claims brought by the individual Plaintiff remain, this claim is also

dismissed.").

### III.    Dismissal with Prejudice

Having found that Kahn has not sufficiently pleaded any of his claims, the Court must

determine whether to dismiss his complaint with or without prejudice. Although courts typically

grant leave to amend liberally, the Court may divert from this general rule where amendment

would be futile. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Ind.*, 786

F.3d 510, 520 (7th Cir. 2015) (court may dismiss complaint with prejudice "[w]here it is clear

that the defect cannot be corrected so that amendment is futile"); *Vargas-Harrison v. Racine*

---

[5] Because no claims remain, the Court need not address Walmart's other arguments for dismissal.

9

*Unified Sch. Dist.*, 272 F.3d 964, 974 (7th Cir. 2001) (leave to amend is futile if a new claim would be unable to survive a Rule 12(b)(6) motion to dismiss). Here, providing Kahn with the opportunity to amend his complaint would be futile because he cannot correct the defects the Court has identified with his individual claims. Therefore, the Court dismisses Kahn's individual claims with prejudice and his class claims without prejudice.

## CONCLUSION

For the foregoing reasons, the Court grants Walmart's motion to dismiss [25]. The Court dismisses Kahn's individual claims with prejudice and his putative class claims without prejudice. Case terminated.


Dated: March 21, 2023

SARA L. ELLIS
United States District Judge

10

ILND 450 (Rev. 10/13) Judgment in a Civil Action

# IN THE UNITED STATES DISTRICT COURT
## FOR THE
### NORTHERN DISTRICT OF ILLINOIS

Yoram Kahn, individually and on behalf
of all others similarly situated,

Plaintiff(s),

v.

WALMART, INC.,

Defendant(s).

Case No.  22-cv-4177
Judge Sara L. Ellis

## JUDGMENT IN A CIVIL CASE

Judgment is hereby entered (check appropriate box):

☐    in favor of plaintiff(s)
and against defendant(s)
in the amount of $          ,

which ☐ includes          pre–judgment interest.
☐ does not include pre–judgment interest.

Post-judgment interest accrues on that amount at the rate provided by law from the date of this judgment.

Plaintiff(s) shall recover costs from defendant(s).

---

☐    in favor of defendant(s)
and against plaintiff(s)

.

Defendant(s) shall recover costs from plaintiff(s).

---

☒    other: The Court dismisses Kahn's individual claims with prejudice and his putative class claims without prejudice.

---

This action was *(check one)*:

☐ tried by a jury with Judge          presiding, and the jury has rendered a verdict.
☐ tried by Judge          without a jury and the above decision was reached.
☒ decided by Judge Sara L. Ellis on a motion to dismiss.

Date:   3/21/2023                    Thomas G. Bruton, Clerk of Court

                                     Rhonda Johnson, Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| YORAM KAHN, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No. 1:22-cv-04177 |
| v. | Judge: Honorable Sara L. Ellis |
| WALMART, INC. | Magistrate: Honorable Young B. Kim |
| Defendant. | |

### NOTICE OF APPEAL

PLEASE TAKE NOTICE that the plaintiff Yoram Kahn ("Plaintiff"), on behalf of himself and all others similarly situated, hereby appeals to the United States Court of Appeals for the Seventh Circuit from this Court's March 21, 2023 Opinion and Order dismissing Plaintiff's claims with prejudice and entering final judgment against Plaintiff (Docket Nos. 37, 38).

**DATED:**  April 19, 2023

By: /s/ Stephanie M. Beige

**GINGOLD LEGAL**
Scott Gingold
1326 Isabella Street
Evanston, IL 60201
(773) 793-9093
scott@gingoldlegal.com

**BERNSTEIN LIEBHARD LLP**
Stephanie M. Beige
Stanley D. Bernstein
10 East 40th Street
New York, New York 10016
(212) 779-1414
beige@bernlieb.com
bernstein@bernlieb.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 19, 2023, I caused a true and correct copy of the foregoing

NOTICE OF APPEAL to be served upon counsel of record as of this date by electronic filing.


<u>/s/ Stephanie M. Beige</u>

One of the attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| YORAM KAHN, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No. 1:22-cv-04177 |
| v. | Judge: Honorable Sara L. Ellis |
| WALMART, INC. | Magistrate: Honorable Young B. Kim |
| Defendant. | |

**SEVENTH CIRCUIT RULE 3(c) DOCKETING STATEMENT**

Plaintiff Yoram Kahn ("Plaintiff"), on behalf of himself and all others similarly situated, respectfully submits this Docketing Statement pursuant to Circuit Rule 3(c) of the United States Court of Appeals for the Seventh Circuit.

**I.     DISTRICT COURT JURISDICTION**

The United States District Court for the Northern District of Illinois had original jurisdiction over this case under 28 U.S.C §1332 because this is a civil action where (a) some of the members of the putative class of plaintiffs are citizens of a different State from a defendant, *i.e.,* there is minimal diversity; (b) the number of members of all proposed plaintiff classes in the aggregate is in excess of 100; and (c) the amount in controversy for the aggregated claims of putative class members exceeds the sum or value of $5,000,000, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2)(A), (d)(5)(B), (d)(6); *see also* Cplt. at ¶ 8.

### A.      Minimal Diversity Pursuant to 28 U.S.C. § 1332(d)(2)(A) Exists

Minimal diversity exists where "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). Plaintiff is a citizen of Ohio. Defendant is incorporated in Delaware with its principal offices located in Arkansas. *See* Cplt. at ¶¶ 12-14.

Additionally, this Court had personal jurisdiction over the Defendant because it conducts significant amounts of business in Illinois. Defendant has 184 retail stores in Illinois with over 58,000 employees working in those stores. Further, Defendant marketed, promoted, distributed, and sold the subject goods to Plaintiff in Illinois, and thus the claims arise out of or relate to Defendant's contacts with Illinois, subjecting Defendant to personal jurisdiction in Illinois. *Id.* at ¶ 9.

### B.      There Are At Least One Hundred Members of the Proposed Class

Plaintiff alleged that the Class consists of over 100 class members. It was undisputed, for purposes of Defendant's Motion, that there are at least one hundred members in the proposed class.

### C.      The Amount in Controversy Exceeds $5,000,000

Plaintiff alleged that the amount in controversy exceeds $5 million. It was undisputed, for purposes of Defendant's Motion, that the amount in controversy exceeds $5 million.

## II.      APPELLATE COURT JURISDICTION

The United States Court of Appeals for the Seventh Circuit has jurisdiction over this case under 28 U.S.C. §1291 and FRAP 3. Plaintiff appeals from an Order and Opinion entered on March 21, 2023 by the United States District Court of the Northern District of Illinois, dismissing Plaintiff's claims with prejudice and terminating this case. Plaintiff's Notice of Appeal was filed in the District Court on April 19, 2023. No motions were filed which claim to toll the time within which to appeal. There have not been any prior or related appellate proceedings in this case.

**DATED:**  April 19, 2023

                                        By: */s/ Stephanie M. Beige*

**GINGOLD LEGAL**                       **BERNSTEIN LIEBHARD LLP**
Scott Gingold                           Stephanie M. Beige
1326 Isabella Street                    Stanley D. Bernstein
Evanston, IL 60201                      10 East 40th Street
(773) 793-9093                          New York, New York 10016
scott@gingoldlegal.com                  (212) 779-1414
                                        beige@bernlieb.com
                                        bernstein@bernlieb.com

*Attorneys for Plaintiff*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 19, 2023, I caused a true and correct copy of the foregoing SEVENTH CIRCUIT RULE 3(C) DOCKETING STATEMENT to be served upon counsel of record as of this date by electronic filing.

<u>*/s/ Stephanie M. Beige*</u>
One of the attorneys for Plaintiff