No. 23-1751

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | | |
|---|---|---|
| YORAM KAHN, individually and on behalf of all others similarly situated, | ) ) ) | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division |
| Plaintiff-Appellant, | ) ) | No. 1:22-cv-04177 |
| v. | ) ) | |
| WALMART INC., | ) ) | The Honorable SARA L. ELLIS, |
| Defendant-Appellee. | ) | Judge Presiding. |

**BRIEF OF AMICUS CURIAE STATE OF ILLINOIS IN SUPPORT OF PLAINTIFF-APPELLANT AND SEEKING REVERSAL**

**KWAME RAOUL**
Attorney General
State of Illinois

**SARAH A. HUNGER**
Deputy Solicitor General
100 West Randolph Street
Chicago, Illinois 60601
(312) 814-5202 (office)
(312) 771-3885 (cell)
Sarah.Hunger@ilag.gov

**JANE ELINOR NOTZ**
Solicitor General

100 West Randolph Street
12th Floor
Chicago, Illinois 60601
(312) 814-3312

Attorneys for the State of Illinois

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................... i

IDENTITY AND INTEREST OF AMICUS CURIAE ................................... 1

SUMMARY OF ARGUMENT ....................................................................... 2

ARGUMENT ................................................................................................... 4

I.     The District Court's Dismissal Of Kahn's Deceptive Practices Claim Rests On A Misapplication Of The Consumer Fraud Act. ................................. 4

    A.    Courts assess the totality of the circumstances to determine whether conduct is deceptive under Illinois law. ................................... 5

    B.    The intent-to-rely requirement is satisfied where, as here, the defendant intends for consumers to rely on the deceptive act ............. 12

II.    Under The Consumer Fraud Act, Claims Based On Unfair Practices Are Distinct From Claims Based on Deceptive Conduct. ............................... 15

CONCLUSION ............................................................................................. 16

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aliano v. Sears, Roebuck & Co.*, 48 N.E.3d 1239 (Ill. App. Ct. 2015) ........................ 10

*American Buyers Club of Mt. Vernon, Ill., Inc. v. Honecker*, 361 N.E.2d 1370
(Ill. App. Ct. 1977) ................................................................................................ 13

*Benson v. Fannie Mae Confections Brands, Inc.*, 944 F.3d 639 (7th Cir. 2019) .. 15, 16

*Bober v. Glaxo Wellcome PLC*, 246 F.3d 934 (7th Cir. 2001) ........................ 5, 7, 8, 11

*Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732 (7th Cir. 2014) ...................... 8

*Camasta v. Omaha Steaks Int'l, Inc.*, No. 12-cv-08285, 2013 WL 4495661
(N.D. Ill. Aug. 21, 2013) ...................................................................................... 9, 14

*Chandler v. Am. Gen. Fin., Inc.*, 768 N.E.2d 60 (2002) .............................................. 10

*Davis v. G.N. Mortg. Corp.*, 396 F.3d 869 (7th Cir. 2005) ............................................ 7

*Demitro v. Gen. Motors Acceptance Corp.*, 902 N.E.2d 1163 (Ill. App. Ct. 2009) ...... 16

*Dunham v. Sherwin-Williams Co.*, No. 1:22-cv-300, 2022 WL 13764806
(N.D.N.Y. Oct. 24, 2022) ........................................................................................ 9

*Falcon Associates, Inc. v. Cox*, 699 N.E.2d 203 (Ill. App. Ct. 1998) .......................... 13

*Newman v. Metropolitan Life Ins. Co.*, 885 F.3d 992 (7th Cir. 2018) ........................ 8

*Phillips v. DePaul Univ.*, 19 N.E.3d 1019 (Ill. App. Ct. 2014) .................................... 5

*Price v. Philip Morris, Inc.*, 848 N.E.2d 1 (Ill. 2005).................................................... 4

*Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951 (Ill. 2002)............................ 4

*Sullivan's Wholesale Drug Co. v. Faryl's Pharmacy, Inc.,* 573 N.E.2d 1370
(Ill. App. Ct. 1991) ................................................................................................ 11

*Totz v. Continental DuPage Acura*, 602 N.E.2d 1374 (Ill. App. Ct. 1992) .................. 4

*Toulon v. Continental Casualty Co.*, 877 F.3d 725 (7th Cir. 2017) ............................ 5

*Tudor v. Jewel Food Stores, Inc.*, 681 N.E.2d 6 (Ill. App. Ct. 1997)................. *passim*

*Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730 (7th Cir. 2019) .......................... 16

*Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012) ............................... 13

*Williams v. Bruno Appliance & Furniture Mart, Inc.*, 379 N.E.2d 52
    (Ill. App. Ct. 1978) ........................................................................................ 10-11

## Statutes

815 ILCS 505/2J.1............................................................................................... 5

815 ILCS 505/3..................................................................................................... 1

**IDENTITY AND INTEREST OF AMICUS CURIAE**

The State of Illinois submits this brief in support of Plaintiff-Appellant Yoram Kahn pursuant to Federal Rule of Appellate Procedure 29(a)(2). The State urges this court to reverse the district court's dismissal order because that decision was premised on an incorrect interpretation of Illinois law. Specifically, the court determined that a consumer cannot state a claim for deceptive practices or unfair conduct under the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act") against a retailer that places false and misleading prices on its store shelves when the retailer also provides a receipt that enables the consumer to compare the shelf price with the purchase price. SA39 (citing *Tudor v. Jewel Food Stores, Inc.*, 681 N.E.2d 6 (Ill. App. Ct. 1997)).[1] Additionally, the court incorrectly conflated deceptiveness claims and unfairness claims, SA38, when each has its own elements and pleading standards.

The State and its officials have an interest in the proper development and application of the Consumer Fraud Act. This is of particular importance to the Illinois Attorney General, who is vested with the authority to investigate and enforce violations of the Act. 815 ILCS 505/3. Additionally, the State has an interest in this appeal because resolution of the questions presented will affect consumers in Illinois. Among other possible repercussions, a decision holding that a retailer may evade liability for deceptive or unfair conduct by providing a receipt

---

[1] Kahn's opening brief is cited as "AT Br. __," and the Short Appendix to that brief is cited as "SA__."

with the correct price would allow retailers (and others covered by the Act) to make any manner of deceptive or unfair statements to induce consumers into purchasing a good or service, so long as they provide a receipt after the fact.

## SUMMARY OF ARGUMENT

In 2022, Kahn brought suit alleging that Defendant-Appellee Walmart, Inc., violated Illinois law by placing false and misleading prices on shelves and displays in its stores. SA6 ¶ 1. Relevant here, Kahn alleged that he was charged more for certain items at the checkout counter than the prices that were advertised on the store shelves. SA11 ¶¶ 22-24. According to Kahn, Walmart's shelf prices and other displays are designed to induce customers into purchasing products. SA11 ¶ 22. Indeed, he alleged that he relied on the shelf prices to select the items that he ultimately purchased and that he would not have chosen those items but for the advertised shelf price. SA15 ¶¶ 26-27. Kahn further alleged that Walmart is aware that its shelf prices are inaccurate and misleading but continues its practice of overcharging consumers at the register. SA7 ¶¶ 3-5. Based on these allegations, Kahn raised claims for deceptive practices and unfair conduct under the Consumer Fraud Act, unfair and deceptive acts under the Illinois Uniform Deceptive Trade Practices Act, and unjust enrichment. SA23-32 ¶¶ 61-118. He also sought to serve as a representative for three proposed classes. SA19-21 ¶¶ 49-52.

Walmart moved to dismiss the complaint, arguing that Kahn's individual claims were insufficient because he had not properly alleged deception or an intent to rely. Doc. 26 at 4-5, 7-8. The district court agreed and granted Walmart's

motion. Beginning with the Consumer Fraud Act claim—which it interpreted "solely as a deceptive practices claim," SA38—the court determined that the principles articulated in the Illinois appellate court's decision in *Tudor* "appl[y] equally to this case," SA39. In particular, the court determined that where "Walmart provides its customers with a receipt to compare the scanned price with the shelf price," there is no deception because "Kahn could, and indeed did, use this receipt to compare the prices Walmart charged him with the advertised shelf pricing." *Id.* Likewise, the court explained, Kahn could not satisfy the intent-to-rely element because the provision of a receipt shows that Walmart did not intend for Kahn "to rely on the incorrectly scanned price." SA40. With respect to the remaining claims, the court concluded that those failed "for the same reasons" as Kahn's Consumer Fraud Act claim. SA41.

The district court's decision should be reversed because it is based on a misapplication of the Consumer Fraud Act that, if allowed to stand, would have serious repercussions for Illinois consumers. Most importantly, there is no bright-line rule in Illinois (announced in *Tudor* or elsewhere) that a plaintiff cannot satisfy the deception element of a Consumer Fraud Act claim where, as here, the retailer provides a receipt to consumers. On the contrary, as this court has recognized, Illinois law requires courts to consider the totality of the information made available to the consumer at the time of the consumer transaction. And here, as Kahn explains, the receipt was not made available to him until after he completed his purchase. For many of the same reasons, the district court was wrong in

concluding that the provision of a receipt somehow obviates the intent-to-rely aspect of a Consumer Fraud Act claim.  Finally, the district court erred in assessing Kahn's deceptive practices and unfair conduct allegations under the same standard. As this court has recognized, these are distinct claims with separate elements and legal standards.

## ARGUMENT

### I.    The District Court's Dismissal Of Kahn's Deceptive Practices Claim Rests On A Misapplication Of The Consumer Fraud Act.

The Consumer Fraud Act was "enacted in 1961 as a regulatory and remedial statute for the purpose of protecting consumers and others against fraud, unfair methods of competition, and unfair or deceptive acts or practices in the conduct of any form of trade or commerce."  *Price v. Philip Morris, Inc.*, 848 N.E.2d 1, 32 (Ill. 2005).  As a remedial statute, the Act "is to be liberally construed to effectuate [its] purpose."  *Id.*; *see also Totz v. Continental DuPage Acura*, 602 N.E.2d 1374, 1380 (Ill. App. Ct. 1992) (Consumer Fraud Act gives Illinois courts a "clear mandate . . . to utilize the Act to the greatest extent possible to eliminate all forms of deceptive or unfair business practices and provide appropriate relief for consumers").

For a private party to state a claim for deception under the Consumer Fraud Act, a plaintiff must allege:  (1) a deceptive act by the defendant, (2) that the defendant intended for the plaintiff to rely on the deception, (3) that the deception occurred during a course of conduct involving trade or commerce, and (4) that the deception proximately caused actual damage.  *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002).  This brief will focus on the deception and

intent-to-rely elements, which were the grounds asserted by Walmart in its motion to dismiss and relied upon by the district court in its decision.

> **A.    Courts assess the totality of the circumstances to determine whether conduct is deceptive under Illinois law.**

Under the Consumer Fraud Act, an act "is deceptive if it creates a likelihood of deception or has the capacity to deceive." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001). In determining whether a plaintiff has sufficiently alleged deception, "the analysis must consider whether the act was deceptive as reasonably understood in light of all the information available." *Phillips v. DePaul Univ.*, 19 N.E.3d 1019, 1031 (Ill. App. Ct. 2014); *see also Toulon v. Continental Casualty Co.*, 877 F.3d 725, 739 (7th Cir. 2017) ("When analyzing a claim under the [Consumer Fraud Act], the allegedly deceptive act must be looked upon in light of the totality of the information made available to the plaintiff.") (internal quotations omitted).

As Kahn explains, he has satisfied this standard because mislabeled shelf and display prices have the capacity to deceive consumers, especially where, as here, the retailer provides no indication that its shelf prices may be inaccurate. AT Br. 13-15. There can be no question that the price of an item is one of the most essential pieces of information (if not the most essential) to a consumer considering whether to purchase the item. In fact, Illinois law requires sellers using electronic scanning technology at checkout to display the current price of the good on the shelf. 815 ILCS 505/2J.1. Accordingly, when retailers advertise the *wrong* price for an item on the shelf, they are misrepresenting a highly material fact to consumers.

The district court, however, concluded that these allegations were insufficient to show deception because under *Tudor*, the provision of an accurate receipt dispels any possibility of deception. SA39. But the district court misread *Tudor*, which concluded that the plaintiff there failed to demonstrate deceptive conduct based on the totality of the circumstances alleged in the complaint and not merely the retailer's provision of a receipt. In *Tudor*, the plaintiff alleged that a grocery store violated the Consumer Fraud Act because the electronically scanned prices at the checkout counter "differed from the advertised or shelf prices for those items." 681 N.E.2d at 7. But the plaintiff also alleged that the store's "internal audits show its electronic scanners were accurate 96% of the time." *Id.* at 8. Significantly, the complaint acknowledged that the store had a "policy providing if the scanned price on any unmarked item is different from the price on the shelf, you will get the item free" and provided a receipt enabling customers to determine the accuracy of the charge for each item. *Id.* (cleaned up). Considering all of these circumstances together, the Illinois appellate court concluded that the plaintiff's allegations did not suffice to show deception. As the court explained, "[t]he *combination* of the high accuracy rate of the scanners, along with the issuance of a receipt and defendant's policy of providing a money-back guarantee if the scanned price differs from the shelf price, indicates there was no deception." *Id.* (emphasis added); *id.* at 9 ("the case turns on whether the 96% accuracy rate of the scanners, in conjunction with the receipt and the money-back guarantee, shows a violation of the Consumer Fraud Act").

The district court's decision to isolate a single fact—the provision of a receipt—as dispositive is thus inconsistent with the reasoning of *Tudor*, which looked to the totality of the circumstances alleged in the complaint. In fact, this court has recognized on at least two occasions that the outcome in *Tudor* was based on the totality of the information available to consumers in that case. *E.g.*, *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005) (citing *Tudor* for the proposition that "when analyzing a claim under the [Consumer Fraud Act], the allegedly deceptive act must be looked upon in light of the totality of the information made available to the plaintiff"); *Bober*, 246 F.3d at 938-39 (citing *Tudor* and stating that the Illinois appellate court dismissed the "claim on the ground that the allegedly deceptive act was not deceptive in light of all the information available to the plaintiff").

Because the same combination of factors in *Tudor* is not present here, *Tudor* does not control the outcome. Indeed, as even the district court recognized, the only similarity between *Tudor* and this case is the provision of a receipt. SA39. For instance, Kahn "has not alleged that Walmart has a similar money-back guarantee." *Id.* And that policy—which gives the consumer a product for free if the scanned price differed from the advertised shelf price—is significant because by alerting the consumer to the fact that the shelf price may be inaccurate, the policy diminishes the materiality of the shelf price to a consumer deciding whether to purchase an item.

Furthermore, because the relevant analysis takes into account the totality of the information available to consumers while they are deciding whether to engage in the transaction, information only provided to the consumer *after* the transaction is complete cannot reasonably impact this analysis. The district court's determination—that the provision of a receipt eliminates the possibility for deception because it dispels the tendency to mislead, SA39—is thus wrong for the related reason that it relies on information that was not actually available to the consumer at the time the consumer was choosing to complete the transaction with Walmart. Deception may not exist "if a consumer has been alerted to the possibility of the complained-of result." *Newman v. Metropolitan Life Ins. Co.*, 885 F.3d 992, 1001 (7th Cir. 2018); *Bober*, 246 F.3d at 938 (information dispelling deception was in the plaintiff's possession). In *Tudor*, for example, the grocery store had a known policy that recognized the potential for mislabeled items and "offered customers a money-back guarantee in those instances where they were overcharged." 681 N.E.2d at 9. This policy thus factored into the totality of information available to consumers at the time they selected items for purchase. By contrast, as this court has recognized, "[a] sales receipt provided to a consumer after a purchase cannot show what was supposedly advertised; the representation must have been made to him *before* the purchase of the merchandise." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737-38 (7th Cir. 2014) (emphasis in original).

In this case, the deception occurred at the point when Kahn was selecting the items for purchase. SA11-15 ¶¶ 22-28. At that time, there was no information

available to Kahn alerting him to the fact that these prices might be incorrect. Nor was any additional information to dispel the inaccurate price provided to Kahn prior to his completing his purchase of the goods. He did not receive that information until after he completed his purchase and compared the prices on his receipt to the shelf pricing. SA11-15 ¶¶ 24-28. Because the information on the receipt—even if it could be said to dispel any tendency to mislead by the advertised shelf price—was provided after Kahn's transaction was complete, it is not relevant to whether a reasonable consumer in his position would be misled or deceived by the advertised price.

By ignoring the fact that consumers do not receive a receipt until *after* the transaction is complete, the district court's rule would enable bad actors to make misleading or otherwise deceptive statements to Illinois consumers, induce them to purchase goods or services based on those statements, and then evade liability by producing a receipt. Such a rule, which effectively allows a bad actor to "cure" deceptive statements with post-hoc disclosures, is antithetical to the purpose of consumer protection statutes and has been rejected by courts in similar circumstances. *E.g.*, *Camasta v. Omaha Steaks Int'l, Inc.*, No. 12-cv-08285, 2013 WL 4495661, at *9 (N.D. Ill. Aug. 21, 2013) (rejecting defendants' argument that the "claims of deception are unfounded because [the consumer] was able to determine defendants' pricing practices from public sources and defendants offer[ed] him a full refund"); *Dunham v. Sherwin-Williams Co.*, No. 1:22-cv-300, 2022 WL 13764806, at *4 (N.D.N.Y. Oct. 24, 2022) (rejecting defendant's argument that there was no

deception where the "total purchase price" was provided at the register because the key consideration is whether the price was available to the consumer "prior to the consummation of the transaction"); *Aliano v. Sears, Roebuck & Co.*, 48 N.E.3d 1239, 1242-43 (Ill. App. Ct. 2015) (upholding a finding of deception where plaintiff was overcharged for sales tax when making a purchase at a retail store).

The conduct alleged by Kahn can be likened to a traditional "bait-and-switch" scheme, which is unlawful under Illinois law. As Illinois courts have recognized, the deception element is satisfied where someone "had advertised goods with the intent not to sell them as advertised, that is, a bait-and-switch." *Chandler v. Am. Gen. Fin., Inc.*, 768 N.E.2d 60, 69 (2002) (cleaned up). Typically in these cases, retailers make "an alluring but insincere offer to sell a product or service" with the goal of ultimately selling another product, "usually at a higher price or on a basis more advantageous to the advertiser." *Id.* (cleaned up). Relevant here, courts consider the deception to occur when the consumers view the advertisements and rely on the information provided therein "in deciding to visit" the retailer. *Garcia v. Overland Bond & Inv. Co.*, 668 N.E.2d 199, 205 (Ill. App. Ct. 1996). In other words, the fact that the actual terms of the sale or financing are disclosed when the customer arrives at the store does not somehow obviate the deceptive statements made in the advertisements. *E.g.*, *id.* (finding deception where there was a difference between advertisement describing no downpayment for used cars and practice of routinely requiring "significant downpayments in purchasing their vehicles"); *Williams v. Bruno Appliance & Furniture Mart, Inc.*, 379 N.E.2d 52, 54

(Ill. App. Ct. 1978) (finding deception where advertisement states "that both the pictured sofa and lounge chair were selling for $298," but plaintiff was informed at the store "that the sofa alone sold for $298").

The district court's reasoning is also at odds with Illinois decisions applying these principles of disclosure in other contexts. Bad actors cannot, by virtue of a disclosure that consumers may not see, dispel the deceptive nature of misrepresentations made to consumers. For instance, in *Sullivan's Wholesale Drug Co. v. Faryl's Pharmacy, Inc.,* 573 N.E.2d 1370 (Ill. App. Ct. 1991), the Illinois appellate court reversed a grant of summary judgment to pharmacies that issued bills to residents of a nursing home "indicat[ing] that those residents were being charged a specified amount for specified drugs, when in fact the charge for pharmacy services was only 85% of what the patients were required to pay." *Id.* at 1377. According to the defendants, that additional charge was not deceptive because it could be viewed as a 15% fee for services rendered and because a "copy of the contract disclosing the 15% kickback scheme had been submitted to regulatory authorities and therefore could have been reviewed by any resident of the home who was interested in its contents." *Id.* The appellate court rejected the defendant's argument, concluding that it was "aware of no authority for a 'services rendered' exception for conduct which is otherwise deceptive" and that the defendants' attempt to rely on information not actually provided to the residents before payment was "singularly unpersuasive." *Id.*; *see also, e.g., Bober*, 246 F.3d at 944 (Wood, J., concurring) ("I find no Illinois case holding that a company can avoid

11

potential liability for deceptive statements if it has buried further explanatory material on a web site or in a brochure that some consumers may never see.").

In short, this court should look to the totality of information that was available to Kahn before he completed his transaction to determine whether he has sufficiently alleged that deception has occurred.  And here, the only information available to Kahn was the mislabeled shelf price; no other information was provided to correct this essential misrepresentation until after the transaction was complete. Kahn has thus sufficiently alleged that Walmart engaged in deceptive acts.  The district court's conclusion to the contrary is inconsistent with Illinois law and, if affirmed, would harm Illinois consumers in any number of circumstances.  If defendants could avoid liability solely through production of a receipt showing price discrepancies, then companies and stores could tack on all sorts of hidden fees and deceptive price increases knowing that consumers will be locked into the deceptive purchase as soon as the receipt is provided.  This court should thus apply the Consumer Fraud Act's deception analysis in a way that properly keeps the focus on the acts and information that induced the consumer to show up at a store, select an item off of a shelf, or agree to contractual or financing terms.

**B.  The intent-to-rely requirement is satisfied where, as here, the defendant intends for consumers to rely on the deceptive act.**

For many of the same reasons, the district court also misapplied Illinois law when assessing the intent-to-rely element of a Consumer Fraud Act claim.  To determine whether a plaintiff has satisfied this element, courts focus "upon the effect that that conduct might have on the consumer who was unjustifiably misled

into purchasing that which he did not intend to purchase." *American Buyers Club of Mt. Vernon, Ill., Inc. v. Honecker*, 361 N.E.2d 1370, 1375 (Ill. App. Ct. 1977); *see also, e.g.*, *Falcon Associates, Inc. v. Cox*, 699 N.E.2d 203, 210 (Ill. App. Ct. 1998) ("key consideration" is "the effect of the seller's conduct").  Accordingly, as this court has recognized, "'intent to deceive' is not a required element of a claim under the [Consumer Fraud Act]." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574-75 (7th Cir. 2012) (internal quotations omitted).  "It is enough to allege that the defendant committed a deceptive act . . . and intended that the plaintiff rely on that act." *Id.* at 575.  In other words, "the intention of the seller—his good or bad faith— is not important," *Honecker*, 361 N.E.2d at 1374-75, and even "innocent misrepresentations may be actionable," *Falcon Associates, Inc*, 699 N.E.2d at 210.

As Kahn explains, AT Br. 28-30, this element is satisfied because the complaint alleged that Walmart intends for consumers to rely on shelf and display prices to induce them into purchasing items, SA11 ¶ 22.  Here again, however, the district court relied on *Tudor* and the provision of a receipt to conclude that Kahn failed to allege an intent to rely.  SA40.  According to the court, "the fact that Walmart provided Kahn with a receipt against which he could, and indeed did, compare the shelf price to the scanned price to determine if they differed, the Court cannot find that Walmart intended for Kahn to rely on the incorrectly scanned price." *Id.* (citing *Tudor*, 681 N.E.2d at 8-9).

*Tudor*, however, does not stand for the proposition that the mere provision of a receipt dispels any intent to rely.  On the contrary, the court in *Tudor* determined

that "the *combination* of the issuance of the receipt, along with the money-back guarantee if the scanned price differs from the shelf price, indicates defendant did not intend that plaintiff rely on an incorrectly scanned price." 681 N.E.2d at 8-9 (emphasis added). And here, unlike in *Tudor*, there are no allegations that Walmart has instituted and disclosed to consumers a policy specifically geared toward correcting a overcharges at the checkout. This is a critical distinction, because a retailer's disclosure of the potential for mislabeled shelf prices, combined with a mechanism to remedy that problem, shows that the retailer did not intend for the consumer to rely on incorrect shelf prices. *E.g.*, *Camasta*, 2013 WL 4495661, at *10 ("this case is distinguishable from *Tudor*, for the money back guarantee was not specifically targeted at correcting charges based on scanner error"). The same cannot be said, however, for the provision of a receipt. That is because providing a receipt sheds no light on the retailer's approach to mislabeled items. Indeed, retailers provide receipts for any number of reasons unrelated to correcting price discrepancies. But if the district court's reasoning were adopted, a retailer would be able to evade liability for mislabeling the price of goods so long as it provided a receipt, regardless of whether the employer's decision to provide a receipt was connected in any way to an effort to remedy such overcharges. This result would unduly weaken the protections of the Consumer Fraud Act and harm consumers throughout Illinois.

## II.    Under The Consumer Fraud Act, Claims Based On Unfair Practices Are Distinct From Claims Based On Deceptive Conduct.

Separately, the district court wrongly combined Kahn's unfair practices claim with his deceptive practices claim.  As this court has recognized, the Consumer Fraud Act "allows a plaintiff to premise her claim on either deceptive conduct or unfair conduct (or both), but the two categories have different pleading standards." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (internal quotations omitted).  Unlike the deceptive practices standard outlined above, unfairness claims are assessed by taking three considerations into account: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers."  *Id.* (cleaned up).  "A court may find unfairness even if the claim does not satisfy all three criteria."  *Id.*  "A practice might be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id.* (cleaned up).  And while Federal Rule of Civil Procedure 9(b)'s heightened pleading standard applies to claims of deception, it "does not apply to an allegation of unfair conduct, because fraud is not a required element under that branch of the statute."  *Id.*

The district court recognized that Kahn's complaint included allegations based on both deception and unfair conduct but determined that because the complaint is premised on concealment, "the Court interprets it solely as a deceptive practices claim that must meet Rule 9(b)'s heightened pleading standard."  SA38. As this court has explained, however, when a complaint alleges that conduct "is

15

both deceptive and unfair," the court should "consider both possibilities." *Benson*, 944 F.3d at 646; *see also, e.g.*, *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738-39 (7th Cir. 2019) (reviewing complaint under both standards after recognizing that "deceptive conduct is distinct from unfair conduct"); *Demitro v. Gen. Motors Acceptance Corp.*, 902 N.E.2d 1163, 1168 (Ill. App. Ct. 2009) ("A plaintiff may allege that conduct is 'unfair' under the Consumer Fraud Act without alleging that it was deceptive."). The district court's failure to do so was erroneous.[2]

## CONCLUSION

For these reasons, the judgment below should be reversed.

Respectfully submitted,

KWAME RAOUL
Attorney General
State of Illinois

JANE ELINOR NOTZ
Solicitor General

/s/ Sarah A. Hunger
SARAH A. HUNGER
Deputy Solicitor General
100 West Randolph Street
Chicago, Illinois 60601
(312) 814-5202 (office)
(312) 771-3885 (cell)
Sarah.Hunger@ilag.gov

July 24, 2023

---

[2] Although this brief focuses on the Consumer Fraud Act, the State agrees with Kahn that claims brought under the Illinois Uniform Deceptive Trade Practices Act are not assessed under the same standard as those raised under the Consumer Fraud Act. AT Br. 36-38.

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitations set forth in Circuit Rule 29 because it contains 4,266 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii). This brief complies with the typeface requirement of Rules 32(a)(4), 32(a)(5), and 32(a)(6) because the brief is double-spaced and has been prepared in a proportionally spaced typeface (12-point Century Schoolbook) using Microsoft Word.

/s/ Sarah A. Hunger
SARAH A. HUNGER

July 24, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2023, I electronically filed the foregoing Brief of Amicus Curiae State of Illinois with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit using the CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


/s/ Sarah A. Hunger
SARAH A. HUNGER