Case No. 23-1751

IN THE

# United States Court of Appeals

## FOR THE SEVENTH CIRCUIT

◆—◆

YORAM KAHN, individually and on behalf of all others similarly situated,

*Plaintiff-Appellant,*

—v.—

WALMART INC.,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION
NO. 1:22-CV-04177
HONORABLE SARA L. ELLIS, DISTRICT COURT JUDGE

## REPLY BRIEF FOR PLAINTIFF-APPELLANT

STANLEY D. BERNSTEIN
MICHAEL S. BIGIN
STEPHANIE M. BEIGE
BERNSTEIN LIEBHARD LLP
10 East 40th Street
New York, New York 10016
(212) 779-1414

SCOTT H. GINGOLD
GINGOLD LEGAL
1326 Isabella Street
Evanston, Illinois 60201
(773) 793-9093

*Attorneys for Plaintiff-Appellant*

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................... 1

ARGUMENT ...................................................................................................... 3

I.   Plaintiff Properly Pled that Walmart's False Shelf Pricing Is a Deceptive
     Practice Violating the ICFA ................................................................... 3

     A.   Plaintiff Pled Facts Showing Walmart's Deceptive Practices ................. 4

          1.   False Price Advertising Is a Deceptive Act Under the ICFA ....... 6

          2.   Reasonable Consumers, Including Plaintiff, Are Likely to Be
               Misled by Walmart's False Shelf Pricing Practices ...................... 9

     B.   Plaintiff Pled Facts Showing Walmart Intended for Plaintiff to
          Rely on its False Shelf Pricing ........................................................ 15

II.  Plaintiff Properly Pled that Walmart's False Shelf Pricing Is an Unfair
     Practice That Violates the ICFA ............................................................ 16

III. The District Court Erred in Dismissing Plaintiff's UDTPA Claims ................. 19

IV.  Plaintiff Properly Pled a Claim for Unjust Enrichment ................................... 20

V.   Dismissal of the Complaint Was Improper With or Without Prejudice ........... 21

CONCLUSION .................................................................................................. 21

## TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*Al Haj v. Pfizer Inc.*,
  No. 17 C 6730, 2019 WL 3202807 (N.D. Ill. July 16, 2019) .................................. 14

*Albany Bank & Trust Co. v. Exxon Mobil Corp.*,
  310 F.3d 969 (7th Cir. 2002) ....................................................................... 13, 14

*AnchorBank, FSB v. Hofer*,
  649 F.3d 610 (7th Cir. 2011) .............................................................................. 5

*Bell v. Publix Super Markets, Inc.*,
  982 F.3d 468 (7th Cir. 2020) ............................................................................ 10

*Benson v. Fannie May Confections Brands, Inc.*,
  No. 17 C 3519, 2018 WL 1087639 (N.D. Ill. 2018) .............................................. 19

*Benson v. Fannie May Confections Brands, Inc.*,
  944 F.3d 639 (7th Cir. 2019) ................................................................. 9, 12, 17

*Bober v. Glaxo Wellcome PLC*,
  246 F.3d 934 (7th Cir. 2001) .............................................................................. 9

*Bonahoom v. Staples, Inc.*,
  No. 20-cv-1942, 2021 WL 1020986 (N.D. Ill. Mar. 17, 2021) .............................. 17

*Camasta v. Jos. A. Bank Clothiers*,
  761 F.3d 732 (7th Cir. 2014) ........................................................................ 13, 19

*Camasta v. Omaha Steaks Int'l, Inc.*,
  No. 12-cv-08285, 2013 WL 4495661 (N.D. Ill. Aug. 21, 2013) ............................. 12

*Capiccioni v. Brennan Naperville, Inc.*,
  791 N.E.2d 553 (2003) ...................................................................................... 5

*Chow v. Aegis Mortg. Corp.*,
  286 F. Supp. 2d 956 (N.D. Ill. 2003) ................................................................. 15

*Cooper v. Retrieval-Masters Creditors Bureau, Inc.*,
  42 F.4th 675 (7th Cir. 2022) ............................................................................. 14

*Duran v. Leslie Oldsmobile, Inc.*,
  594 N.E.2d 1355 (1992) ...................................................................................... 5

ii

*Fosnight v. Jones,*
  41 F.4th 916 (7th Cir. 2022) .................................................................. 21

*Gansberg v. Kroger,*
  No. 2022-CH-08071 (Ill. Cir. Ct. Cook Cnty. Apr. 7, 2023) ..................... *passim*

*Gohari v. McDonald's Corp.,*
  No. 2016-CH-08261, 2017 WL 11676255
  (Ill. Cir. Ct. Cook Cnty. July 13, 2017) ................................................ *passim*

*Griffin v. Universal Cas. Co.,*
  654 N.E.2d 694 (Ill. App. Ct. 1995) .......................................................... 15

*Killeen v. McDonald's Corp.,*
  317 F. Supp. 3d 1012 (N.D. Ill. 2018) ........................................................ 13

*Kirkruff v. Wisegarver,*
  697 N.E.2d 406 (Ill. App. Ct. 1998) ............................................................ 7

*Le v. Kohls Dep't Stores, Inc.,*
  160 F. Supp. 3d 1096 (E.D. Wisc. 2016) ................................................ 19, 20

*Oliveira v. Amoco Oil Co.,*
  776 N.E.2d 151 (Ill. 2002) ........................................................................... 7

*People v. Stianos,*
  475 N.E.2d 1024 (Ill. App. Ct. 1985) ......................................................... 18

*Robinson v. Toyota Motor Credit Corp.,*
  775 N.E. 2d 951 (Ill. 2002) ...................................................................... 3,7

*Saunders v. Mich. Ave. Nat. Bank,*
  662 N.E.2d 602 (Ill. App. Ct. 1996) ........................................................... 13

*Siegel v. Shell Oil Co.,*
  612 F.3d 932 (7th Cir. 2010) ...................................................................... 7

*Tudor v. Jewel Food Stores,*
  681 N.E.2d 6 (Ill. App. Ct. 1997) ........................................................ *passim*

*Ulrich v. Probalance, Inc.,*
  No. 16 C 10488, 2017 WL 3581183 (N.D. Ill. Aug. 18, 2017) .................. 19

*Wigod v. Wells Fargo Bank, N.A.,*
  673 F.3d 547 (7th Cir. 2012) ..................................................................... 15

*Statutes*

815 ILCS 505/1 ............................................................................................. 7

815 ILCS 505/2 ........................................................................................ 3, 7

815 ILCS 505/2J.2 ...................................................................................... 7

815 ILCS 510/2(a)(9) .................................................................................. 7

815 ILCS 510/2(a)(11) ................................................................................ 7

815 ILCS 510/2(a)(12) ................................................................................ 7

*Rules*

Fed. R. Civ. P. 12(b)(6) ......................................................................... 10, 13

Fed. R. Civ. P. 9(b) ............................................................................ 3, 4, 17

## INTRODUCTION

This case is about Walmart's unfair and deceptive false pricing practices whereby it overcharges consumers in Illinois and nationwide through false Shelf Pricing. Walmart uses Shelf Pricing to advertise the prices of products, intending that consumers will rely on the Shelf Pricing to select the advertised goods. However, consumers, like the Plaintiff, frequently are charged more at checkout than the prices indicated on the Shelf Pricing.

This case is *not* about innocent price discrepancies or "pricing errors," and Plaintiff is not arguing for "pricing perfection" or "strict liability," as Walmart misleadingly suggests (although the ICFA should provide a remedy when a defendant advertises false prices).[1] Rather, Plaintiff alleges that ***Walmart knows*** its Shelf Pricing practices often cause consumers to be overcharged at checkout and that Walmart ***purposely*** keeps its deceptive and unfair pricing system in place because it results in hundreds of millions of dollars each year in extra profits. Walmart easily could stop overcharging consumers by confirming that the Shelf Pricing for items match the scanner prices, especially when prices are changed, but Walmart apparently does the opposite: Walmart changes scanner prices first, and *then* changes the Shelf Pricing at some later time, thereby guaranteeing that its Shelf Pricing is wrong for at least some duration. Walmart chooses to continue its unfair and deceptive pricing practices, knowing that it is frequently overcharging consumers.

---

[1] Any undefined terms have the definitions set forth in Plaintiff's opening brief.

Walmart does not deny that its Shelf Pricing is inaccurate, that it overcharges consumers, or that it has been fined for these practices many times in the past. Instead, Walmart argues that Plaintiff is seeking to impose strict liability for mere human errors and that pricing perfection is not required (words and concepts that appear nowhere in the Complaint, Plaintiff's briefs, or in the District Court's Order at issue) and improperly introduces new facts not pled in the Complaint or briefed below (through its responding brief and the *amici curiae* brief of the Retail Litigation Center, Inc., National Retail Federation, FMI – the Food Industry Association, and the Illinois Retail Merchants Association) (the "Retailers Group").[2]

In so doing, Walmart ignores the well-pled allegations in the Complaint and the judicial authority cited in Plaintiff's opening brief. Walmart also elected not to respond to the Amicus Curiae brief filed by the State of Illinois, in which the State of Illinois argues that Walmart's false Shelf Pricing is deceptive and unfair under the ICFA and urges that the District Court's decision — finding that a receipt alone negates any potential for deception — is erroneous and will have negative consequences for Illinois consumers.

Walmart and the Retailers Group are also critical of Plaintiff's decision to file this case, as opposed to seeking a refund. Rather than correct its deceptive practices, Walmart prefers to put the onus on the consumers it misleads to memorize the prices of every item they select off the shelves, so they can detect overcharges at checkout, and then be burdened to seek redress. The law does not require that, and it's

---

[2] Cited herein as the "Retailers' Amici Br. at __".

impractical when many consumers purchase dozens of items at a time. This case seeks exactly the refund Walmart suggests Plaintiff should have sought for himself, but also seeks it collectively on behalf of an overcharged class of similarly situated consumers.

In sum, Plaintiff alleged detailed facts demonstrating the "who, what, when, where, and how" of Walmart's deception in accordance with Federal Rule of Civil Procedure 9(b), as well as facts showing Walmart's false Shelf Pricing is unfair under the ICFA. The District Court erred in dismissing Plaintiff's ICFA and UDTPA claims, as well as his unjust enrichment claim premised on Walmart's deceptive conduct, all based solely on the fact that Plaintiff was provided with a receipt after he completed his purchase. As the State of Illinois also urges, the District Court's decision that a receipt alone negates any deception and intent under the ICFA is erroneous and unsupported by the law and will have dire consequences for Illinois consumers. The District Court's decision should be reversed.

## ARGUMENT

## I. Plaintiff Properly Pled that Walmart's False Shelf Pricing Is a Deceptive Practice Violating the ICFA

The ICFA prohibits:

> … deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act, approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

3

815 ILCS 505/2; *Robinson v. Toyota Motor Credit Corp.*, 775 N.E. 2d 951, 960 (Ill. 2002) (stating the elements of a deceptive practices claim are: (1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive statement; (3) the deception occurred in the course of conduct involving trade or commerce; and (4) actual damages to the plaintiff proximately caused by the deception). Walmart does not challenge the Complaint's allegations concerning elements (3) and (4): conduct involving trade and damages.

As set forth in his opening brief, Plaintiff alleged facts establishing the remaining requisite elements of a deceptive practices claim under the ICFA: deceptive acts or practices and an intent that Plaintiff rely thereon in accordance with Rule 9(b). *See* Opening Br. at 6-7; 13, 28.[3]

### A.    Plaintiff Pled Facts Showing Walmart's Deceptive Practices

Plaintiff alleged facts establishing a deceptive practice under the ICFA. Walmart utilizes a pricing system whereby it uses Shelf Pricing with the intent that consumers will rely on those advertisements to select certain items, but often charges higher prices when the items are scanned at checkout (likely due to raising the prices charged by the scanner at checkout before changing the shelf price). Walmart knows that this occurs, as it has been fined for this practice on a local level many times. But Walmart chooses not to implement systems to stop the deception from occurring because the overcharges result in hundreds of millions of dollars a year for Walmart. (SA7 at ¶5; SA16 at ¶36; SA18-19 at ¶¶46-48).

---

[3] Plaintiff's opening brief is cited as "Opening Br. at __"; the Short Appendix to that brief is cited as "SA__"; and Walmart's Response Brief is cited as "Response Br. at __."

Walmart's response brief ignores these allegations, and the District Court failed to consider them let alone view them in the light most favorable to Plaintiff as required at the pleading stage. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011) ("In evaluating the sufficiency of the complaint, we view it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor").

Instead, Walmart repeatedly mischaracterizes Plaintiff's allegations as asserting innocuous "price discrepancies" or "pricing errors," apparently preferring to litigate its motion to dismiss on a different set of facts than those alleged. *See* Response Br. at 6-13. Nevertheless, "[t]he Consumer Fraud Act eliminated the requirement of scienter, and innocent misrepresentations are actionable as statutory fraud." *Duran v. Leslie Oldsmobile, Inc.*, 594 N.E.2d 1355, 1361 (1992) (citations omitted); *Capiccioni v. Brennan Naperville, Inc.*, 791 N.E.2d 553, 558-59 (2003) (same). Accordingly, Walmart's arguments about whether "pricing perfection" is required in other states are irrelevant.

Further, Walmart's reliance on the National Institute of Standards and Technology of the U.S. Department of Commerce ("NIST") handbook (the "Handbook"), and on states' regulations implementing versions of the Handbook, is of no value. *See* Response Br. at 7-9. The Handbook does not permit charging more than an advertised shelf price. The NIST also refutes Walmart's implication that it is allowed to profit from any false advertising:

> **It is unlawful in all States to advertise a price that is not accurate**. *It would be incorrect to interpret [the guideline] to mean that*

> *stores are allowed to have 2% of their products incorrectly priced." … The error rate in the [guideline] is only a guideline to help regulatory officials evaluate whether a store has good pricing practices and **must not be interpreted to mean that any error is 'acceptable'**….*

*See* NIST official website (FAQ No. 8, emphases added).[4]

When Walmart finally addresses *Tudor v. Jewel Food Stores*, 681 N.E.2d 6 (Ill. App. Ct. 1997), it fails to acknowledge how the Complaint's allegations are distinguishable from those alleged in *Tudor*. Critically, unlike the plaintiff in *Tudor*, Plaintiff here has not alleged a claim based on innocent pricing errors; Plaintiff's claims are based on Walmart's knowledge and intent that its pricing practices (*e.g.*, changing prices at the checkout scanners before changing the Shelf Pricing and/or not verifying the accuracy of the Shelf Pricing) result in false Shelf Pricing and overcharges, and Walmart's intentional failure to institute practices to prevent the false pricing. Had the plaintiff in *Tudor* alleged similar intentional conduct, the *Tudor* court would have held differently (as the courts distinguishing *Tudor* have held since).

### 1.    False Price Advertising Is a Deceptive Act Under the ICFA

Plaintiff's opening brief and the State of Illinois' Amicus Curiae Brief (the "State Amicus Brief")[5] demonstrate that Walmart's false Shelf Pricing practices are deceptive under the ICFA and Plaintiff alleges that he was misled by the deception. *See* Opening Br. at 13-30; State Amicus Br. at 5-12. Walmart wrongly argues that

---

[4] *See* https://www.nist.gov/pml/owm/laws-and-regulations/price-verification (stating these FAQs were created January 30, 2012 and updated October 8, 2019) (internal footnote omitted).

[5] The State of Illinois' Amicus Brief is cited herein as "State Amicus Br.__."

Plaintiff has not pled facts supporting a "deceptive" act under the ICFA, UDTPA, or common law. Response Br. at 11-14.

The ICFA prohibits any unfair or deceptive act or practice using any false promise, misrepresentation; *or* the use or employment of any practice described in Section 2 of the UDTPA. 815 ILCS 505/2. In turn, Section 2 of the UDTPA defines a "deceptive trade practice" to include: (1) advertising goods with intent not to sell them as advertised; and/or (2) engaging in any other conduct which similarly creates a likelihood of confusion or misunderstanding. 815 ILCS 510/2(a)(9), (11) and (12); *see also* 815 ILCS 505/2J.2.

Walmart first attempts to evade liability for its intentional false price advertisements by arguing that some of the statutory subsections of the ICFA and the UDTPA do not apply to Walmart's false Shelf Pricing. *See* Response Br. at 13-15. However, the ICFA also contains the broader, more general prohibitions cited above, and Walmart's narrow reading runs afoul of the very prohibitions and purpose of the ICFA, which is to protect consumers against unfair methods of competition and other unfair and deceptive business practices. 815 ILCS 505/1; *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010) (citing *Robinson*, 775 N.E.2d at 960). The ICFA is to be liberally construed to effectuate its purpose. 815 ILCS 505/2; *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 166 (Ill. 2002); *see also Kirkruff v. Wisegarver*, 697 N.E.2d 406, 416 (Ill. App. Ct. 1998) (courts should liberally construe and broadly apply the UDTPA to eradicate all forms of deceptive and unfair business practices). Further, the commentary from the drafters of the UDTPA itself makes clear that the act was

designed to remove "undue restrictions on the common law action for deceptive trade practices," and while "[c]ertain objectionable practices are singled out, the courts are left free to fix the proper ambit of the act in case by case adjudication." *See* Addendum A to Response Br. at 2 (ECF No. 24). Accordingly, Walmart's false Shelf Pricing is a deceptive act under the ICFA, including through the UDTPA.

Walmart next unsuccessfully attempts to distinguish two very recent Illinois Circuit Court opinions that reached the opposite conclusions as Judge Ellis did here with respect to the application of *Tudor*. *See* Response Br. at 16-18. As explained in Plaintiff's opening brief (Opening Br. at 22-25), the courts in *Gansberg v. Kroger*, No. 2022-CH-08071 (Ill. Cir. Ct. Cook Cnty. Apr. 7, 2023) (Opening Br. Addendum A (ECF No. 14)), and *Gohari v. McDonald's Corp.*, No. 2016-CH-08261, 2017 WL 11676255 (Ill. Cir. Ct. Cook Cnty. July 13, 2017), found that allegations of false pricing practices similar to those alleged by Plaintiff are deceptive under the ICFA. Walmart attempts to distinguish these cases without grappling with the many similar facts or the courts' broader conclusions of law. Both cases correctly conclude that *Tudor* does not comport with the District Court's interpretation. *See* Opening Br. at 16-18.

Lastly, the Illinois Attorney General – who is vested with the authority to investigate and enforce violations of the ICFA (*see* State Amicus Br. at 1) – states that Walmart's false Shelf Pricing practices are a deceptive act under the ICFA and UDTPA and considers the District Court's Opinion legally incorrect. *See* State Amicus

Br. at 10 (likening Walmart's false Shelf Pricing "to a traditional 'bait-and-switch' scheme").[6]

### 2.    Reasonable Consumers, Including Plaintiff, Are Likely to Be Misled by Walmart's False Shelf Pricing Practices

Under the broad language of the ICFA and UDTPA, a practice is deceptive if it "creates the likelihood of deception or has the capacity to deceive." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001). Courts apply a "reasonable consumer" standard in evaluating the likelihood of deception and look at this question in view of the "totality of information" available to the consumer at the point of deception. *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 647 (7th Cir. 2019). Plaintiff alleges facts showing that Walmart's Shelf Pricing and overcharge practices are deceptive:

- Walmart uses Shelf Pricing to induce consumers to select the advertised goods from among similar products located nearby on the shelf and into believing that they will pay the price advertised. (SA11 at ¶22).

- After enticing consumers with the false Shelf Pricing, Walmart charges them higher prices than advertised at checkout. (SA11 at ¶23).

- Consumers reasonably rely on Walmart's Shelf Pricing to make informed purchasing decisions, and reasonably expect to pay the advertised shelf price at checkout. (SA7 at ¶2).

- In selecting the items he did, Plaintiff relied on the Shelf Pricing and believed that he was paying the price reflected on the Shelf Pricing. (SA14-15 at ¶¶25-27).

- Plaintiff was deceived by Walmart's false Shelf Pricing practices. On August 2, 2022, Plaintiff purchased 15 items from a Walmart store in Niles, Illinois and was charged more for 6 of the items at checkout than

---

[6] Walmart attempts to argue that Subsection 2(a)(9) of the ICFA applies only to "bait-and-switch" cases. Response Br. at 13-14. This is a strange tactic, given that the State of Illinois agreed with Plaintiff's description of Walmart's scheme as a bait and switch in the State Amicus Brief at 10. *Accord* (SA7 at ¶3).

the prices misrepresented by the Shelf Pricing. (SA11 at ¶24; SA25 at ¶71).

*See* Opening Br. at 6, 15. Moreover, in this case, although not required to state an ICFA claim, Plaintiff also alleges that Walmart knows it is deceiving consumers and intends to continue to do so because it is so profitable for Walmart. (SA7 at ¶5; SA15-19 at ¶¶32-48; SA25 at ¶74).

In response Walmart denies the allegations and claims that "Walmart did not intend for its customers to rely on incorrect shelf pricing and reasonable consumers would not have been misled." Response Br. at 15-22, *compare to* (SA6 at ¶2; SA11 at ¶22; SA14-15 at ¶¶26-27; SA24 at ¶84). While Walmart's specific arguments were addressed in detail in Plaintiff's opening brief (*see* Opening Br. at 28-30 (re: intent) and 13-17 (re: reasonable consumers)), Walmart asserts that Plaintiff was not misled by the Shelf Pricing because he was provided with a receipt from which he could compare the scanned price with the Shelf Pricing. *See* Response Br. at 15. This assertion, however, disregards the allegations of deception in the Complaint, and therefore is improper on a Rule 12(b)(6) motion to dismiss. *See Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 481 (7th Cir. 2020) ("What matters here is how consumers actually behave – how they perceive advertising and how they make decisions. These are matters of fact, subject to proof that can be tested at trial").

Walmart's attempts to distinguish this case from the sustained ICFA claims in *Gohari* and *Kroger* also fail. In *Gohari*, the critical allegations were not that the plaintiff complained of the false pricing or that the cashier refused to honor the advertised price. *See* Response Br. at 16. To the contrary, the court found that

alleging the plaintiff saw the false advertised prices was sufficient "to establish that she was, *in some manner*, deceived." *Gohari*, 2017 WL 11676255, at *7. And the court distinguished *Tudor*, recognizing that while the plaintiffs in both cases were issued receipts, unlike *Tudor* (and just as here) McDonalds did not have a store-specific policy that put customers on notice that the advertised prices might be inaccurate. *Id.* at *5-6. "[T]he important part of the plaintiff's allegations was that she was not told which items were mispriced" and, at the motion to dismiss stage, she had pled that "she was *in some manner* deceived" and that "the determination of whether Gohari was actually deceived is best left to the trier of fact." *Id.* at *8. These findings comport with Plaintiff's allegations here.[7] Furthermore, the court distinguished *Tudor*, recognizing that issuing a receipt does not conclusively prove there was no intent to deceive the consumer because McDonalds did not have a policy notifying consumers that the advertised prices might be inaccurate. *Id.* at *5-6.

Similarly, the court's decision finding the plaintiff alleged an ICFA claim in *Kroger* was not driven by the plaintiff's efforts to bring the overcharges to the defendant's attention. *See* Response Br. at 17. Rather, the court's decision was based on: (1) finding an absence of the determinative fact in *Tudor* – there was no store policy warning shoppers of the potential for incorrect shelf prices; and (2) the court's

---

[7] Walmart's repeated references to the amount of money Plaintiff was overcharged in one transaction are equally unavailing. *See e.g.*, Response Br. at 2, 8, 9, 16 n.13, and 17 (contrasting the amount of the class action claims with the $1.89 Plaintiff was overcharged). In *Gohari*, the court recognized, "[w]hile the sale in this case allegedly reflects only a few dollars in overcharges, similar overcharges, if true, could aggregate very substantial losses and injuries to the public." *Gohari*, 2017 WL 11676255, at *5.

rejection of the argument that a receipt dispelled any deception because, it reasoned, consumers are not required to record all of the shelf price data for every item they purchase in order to undergo a price audit after they are issued a receipt to ensure retailers are charging their advertised prices. *See Kroger* at ¶2 (attached as Opening Brief, Addendum A (ECF No. 14)).[8]

It is telling that Walmart cannot cite any authority in support of its position (and the District Court's holding) that a receipt alone negates the deception created by false Shelf Pricing.[9] At most, a receipt was one of a "combination of factors" that could lead to dismissal. *Tudor*, 681 N.E.2d at 8. Critically, there must also be a policy that specifically puts shoppers on notice in advance of their transactions, that scanning errors might occur, the prices advertised are not what are charged, and a means (a receipt and a free item) to enforce that policy. Walmart completely ignores this distinction – as well as the opinions of numerous courts that have recognized it. *See Camasta v. Omaha Steaks Int'l, Inc.*, No. 12-cv-08285, 2013 WL 4495661, at *9-

---

[8] Similarly, the fact that the plaintiff in *Kroger* was subjected to overcharges on more than one occasion (and therefore knew of the potential for false shelf prices) did not defeat her claim that she was deceived by the defendant's false shelf prices. *Id.*

[9] Further, despite Walmart's efforts to distinguish *Benson*, the case is instructive with respect to whether a receipt eliminates potential deception. *See* 944 F.3d at 647; Response Br. at 18. Although the receipts in *Benson* disclosed the weight and price of each box of chocolate (*id.* at 646-647), the Court did not consider the receipts relevant to the analysis of whether the plaintiff pled that a reasonable consumer would be misled by the candy box size. *See id.* at 647.

10 (N.D. Ill. Aug. 21, 2013) (stressing that it was a combination of facts in *Tudor* that dispelled the deception); *Kroger* at ¶2; *Gohari*, 2017 WL 11676255, at *5-6.[10]

Instead, Walmart argues that a court is not limited to weighing information available before an alleged fraud occurs as part of a "totality of information" analysis. *See* Response Br. at 19-20. This argument, however, upsets both applicable case law and common sense. If the "totality of information" available to the consumer legally included post-fraud disclosures or discoveries, there never could be any actionable ICFA claim because every would-be plaintiff would have to have discovered the deception prior to bringing such lawsuit. To be sure, none of the information found relevant in the cases cited by Walmart was information that became known to the plaintiff *after* the deception already occurred. *See Killeen v. McDonald's Corp.*, 317 F. Supp. 3d 1012, 1013-1014 (N.D. Ill. 2018)[11] (finding that "at the time she made her purchase" itemized prices were displayed *along with* the prices for the value meals enabling side-by-side comparisons); *Saunders v. Mich. Ave. Nat. Bank*, 662 N.E.2d 602, 608 (Ill. App. Ct. 1996) (information concerning the overdraft fees available *before* she opened her account); *Camasta v. Jos. A. Bank Clothiers*, 761 F.3d 732, 737-

---

[10] Rather than address the distinctions between this case and *Tudor*, Walmart improperly attempts to introduce new facts concerning its purported return policy. *See* Response Br. at 16, fn.13. However, Walmart's return policy is unknown and not part of the record as it was not alleged in the Complaint. *See Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 971 (7th Cir. 2002) (inappropriate for the Court of Appeals to rely on materials outside of the complaint on a Fed. R. Civ. P. 12(b)(6) motion). Regardless, there is no indication that Walmart has a policy that is anything like the "get a free item" policy in *Tudor* and there are no facts suggesting Walmart provided notice of such a policy.

[11] Walmart mistakenly cites this case as being a decision from this Court rather than from the Northern District of Illinois. *See* Response Br. at 20.

38 (7th Cir. 2014) ("A sales receipt provided to a consumer after a purchase cannot show what was supposedly advertised"); *Al Haj v. Pfizer Inc.*, No. 17 C 6730, 2019 WL 3202807, at *7 (N.D. Ill. July 16, 2019) (recognizing that events occurring after the relevant purchase have no bearing on an ICFA claim).

The absence of case law supporting Walmart's argument is not surprising. The State of Illinois points out that "courts consider the deception to occur when the consumers view the advertisements and rely on the information" and that the District Court's reasoning is not only at odds with the cases cited above, but it is at odds with Illinois decisions applying these principles of disclosure in other contexts. *See* State Amicus Br. at 10-12.

Here, Plaintiff was misled when he relied on and selected specific items to purchase based on Walmart's Shelf Pricing. The receipt provided to him after he purchased the items did not dispel the misleading nature of the Shelf Pricing because, among other reasons, it did not list the Shelf Pricing. To undergo the price comparison necessary to determine if Plaintiff was overcharged, he had to go back into the store and compare each shelf price to the prices he was charged – the exact process Judge Reilly rejected in *Kroger*. *See* Opening Br. at 23-24 (discussing same). Accordingly, reasonable consumers, including the Plaintiff, are likely to be misled by Walmart's false Shelf Prices.[12]

---

[12] Notably, Walmart and the Retailers assert a new argument on appeal based on facts that are not in record – this time concerning display screens that it argues Plaintiff would have been able to view at check out. *See* Response Br. at 15-16, 20-21; Retailers' Amici Br. at 19. Again, it is inappropriate for this Court to consider new facts and arguments that are outside of the record. *See Albany Bank*, 310 F.3d at 971; *see also Cooper v. Retrieval-Masters Creditors*

## B.     Plaintiff Pled Facts Showing Walmart Intended for Plaintiff to Rely on its False Shelf Pricing

Plaintiff alleged that Walmart intends for consumers to rely on its deceptive Shelf Pricing in choosing which items to purchase at the stated prices. (SA7 at ¶2; SA11 at ¶22; SA25 at ¶70; SA27 at ¶84). The intent required to plead a claim under the ICFA is tied only to whether Defendant intended Plaintiff to rely on the posted Shelf Pricing. *See* Opening Br. at 28; State Amicus Br. at 12.

Without any legal support, Walmart argues that an ICFA plaintiff must plead a defendant's *intent to deceive consumers*. Response Br. at 22. Walmart's attempt to create new defenses for retailers by misconstruing the ICFA should be rejected. It is well settled that a defendant's intent to deceive consumers is not an element of an ICFA claim as held by this Court and the Illinois Court of Appeals. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574-75 (7th Cir. 2012) ("intent to deceive is not a required element of a claim under the [Consumer Fraud Act].") (internal quotations omitted); *see also Chow v. Aegis Mortg. Corp.*, 286 F. Supp. 2d 956, 963 (N.D. Ill. 2003) ("To satisfy [the ICFA's] intent requirement, plaintiff need not show that defendant intended to deceive the plaintiff, but only that the defendant intended the plaintiff to rely on the (intentionally or unintentionally) deceptive information given"); *Griffin v.*

---

*Bureau, Inc.*, 42 F.4th 675, 688 (7th Cir. 2022) (arguments not presented to the district court are waived if raised for the first time on appeal). Further, Walmart's argument that there was no deception because Plaintiff was able to view the price display is wrong. The suggestion that Plaintiff or any consumer should – and indeed could – recall the Shelf Pricing for each and every item purchased is absurd, especially when items are quickly scanned and the prices are displayed for mere seconds while consumers are often simultaneously unloading items from shopping carts. *See Kroger* at ¶2 (rejecting the argument that this type of in-store audit is required of consumers).

*Universal Cas. Co.*, 654 N.E.2d 694, 700-01 (Ill. App. Ct. 1995) ("plaintiff need not show that a defendant intended to deceive but only that it intended the plaintiff to rely on its act or information; even an innocent or negligent misrepresentation therefore, may be actionable under the [ICFA]"). All that is required is that Plaintiff allege – as he did – that Walmart intended Plaintiff to rely on the deceptive (or potentially deceptive) Shelf Pricing.

Moreover, Walmart makes no real attempt to respond to Plaintiff's discussion of *Tudor* or the District Court's erroneous application of *Tudor* to find that because Walmart provided Plaintiff with a receipt, Walmart did not intend for Plaintiff to rely on the "incorrectly scanned price" (a mistaken characterization of the allegations). *See* Opening Br. at 29-30. Unlike in *Tudor*, Plaintiff does not allege that Walmart's scanned prices are the result of some technical error but instead, Plaintiff alleges that Walmart ***knows*** it advertises lower shelf prices than it charges consumers, that Walmart ***intended*** for Plaintiff to rely on its Shelf Pricing, and that Plaintiff did so to his detriment. That easily satisfies the requirements of the ICFA.

Indeed, Walmart does not dispute that shelf prices are material, and that the idea that they should not or are not intended to be relied upon by consumers is absurd. The very purpose of Shelf Pricing is to inform consumers of prices so that they can compare items and make purchasing decisions. (SA6 at ¶2; SA23 at ¶63).

## II.    Plaintiff Properly Pled that Walmart's False Shelf Pricing Is an Unfair Practice That Violates the ICFA

Deceptive practice claims and unfair practice claims are separate claims under the ICFA with different elements and pleading standards. *See* Opening Br. at 33-36;

State Amicus Br. at 15-16. The District Court wrongly combined Plaintiff's deceptive practice and unfair practice claims and erroneously dismissed Plaintiff's unfair practice claim with prejudice, without considering whether Plaintiff's allegations establish an unfair practice under the ICFA.

In response, Walmart asserts only that Rule 9(b) applies to Plaintiff's unfair practice claim and argues that because Plaintiff has not alleged the same exact facts as the plaintiff in *Gohari*, Plaintiff has failed to plead that Walmart's false Shelf Pricing practices are unfair. *See* Response Br. at 22-25. Walmart is wrong.

First, Walmart tacitly concedes that deceptive practice and unfair practice claims have different elements under the ICFA. *See* Response Br. at 23 (failing to address *Benson*, 944 F.3d at 646-647 (finding that the same behavior can be both a "deceptive act" and an "unfair practice"); *Bonahoom v. Staples, Inc.*, No. 20-cv-1942, 2021 WL 1020986, at *1, *5 (N.D. Ill. Mar. 17, 2021) (false advertising and overcharge allegations adequately pled both a deceptive practice and an unfair practice)); *see also* Opening Br. at 33; State Amicus Br. at 15.

Second, Walmart wrongly argues that because Plaintiff is not alleging that he was subject to "time constraints" or "limited choices" like the plaintiff in *Gohari*, Plaintiff has failed to allege that Walmart's false Shelf Pricing practices are unfair under the ICFA. *See* Response Br. at 25. However, to determine if conduct is unfair under the ICFA, courts consider: (1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and/or (3) whether it causes substantial injury to consumers. *Gohari*, 2017 WL 11676255, at *4-5 (noting

that "all three factors do not need to be met" to plead an unfair practice). While Walmart focuses solely on the *Gohari* court's discussion of the particular limits placed on the plaintiff in that case (*see Gohari*, 2017 WL 11676255, at *6), Walmart completely ignores that the false price advertisements in *Gohari* were found to be an unfair practice under both the first and third prongs (*i.e.*, the conduct violated public policy because it was so oppressive it left the consumer with little alternative but to submit *and* it could cause substantial injury to consumers); *see Gohari*, 2017 WL 11676255, at *6 (noting that similar overcharges "could aggregate very substantial losses and injury to the consuming public); *see also id*. at *5 (quoting *People v. Stianos*, 475 N.E.2d 1024, 1029 (Ill. App. Ct. 1985) and noting that the Illinois appellate court found that overcharging sales tax was unfair under the ICFA because although the Attorney General's case was premised on just three sales reflecting "only a few cents in overcharges, it is apparent that similar overcharges, if permitted to continue, could aggregate very substantial losses and injury to the consuming public").

Here too, Plaintiff alleged that Walmart profits by hundreds of millions of dollars each year from its unfair practice of overcharging consumers through false Shelf Pricing. Walmart's practice is not only injurious to consumers, but it is also unscrupulous and unethical, as Walmart knows its false Shelf Pricing practices result in overcharges and while price accuracy is possible (*e.g.*, by changing the Shelf Pricing before changing the scanner pricing or using digital shelf price displays), Walmart instead opts to continue its unfair pricing practices, placing the burden on consumers to ensure that the Company is charging its advertised prices. (SA7 at ¶5; SA15 at

¶32). Walmart's conduct is an unfair practice under the ICFA and it was reversible error for the District Court to dismiss that separate claim with prejudice.

## III. The District Court Erred in Dismissing Plaintiff's UDTPA Claims

Plaintiff's allegations that Walmart continues to advertise merchandise for sale at one price with intent to sell them at a higher price at checkout establishes deceptive conduct under the UDTPA. *See* Opening Br. at 36-38. Unlike the cases relied upon by Walmart (*see* Response Br. at 26), Walmart's false Shelf Pricing practices likely will cause Plaintiff harm in the future because the overcharges apply to different products at different times and Plaintiff has no way of knowing which items are subject to false Shelf Pricing on any given day.[13]

As the court correctly held in *Kroger*, Plaintiff's claim is not based on some confusion over an undisclosed fact of which he is now aware and is no longer likely to be confused about. Rather, "[p]laintiff alleges that Defendant continues to overcharge consumers for items by entering the wrong price or not applying advertised discounts." *See Kroger* at ¶3 at Opening Br. Addendum A (ECF No. 14) (rejecting the argument that "Plaintiff is essentially assuming the risk of being incorrectly charged

---

[13] The cases relied upon by Walmart are distinguishable in that each involved a deceptive practice that applied to all of the defendants' goods or services (as opposed to here, where Walmart's false Shelf Pricing affects different merchandise at different times). *See Camasta*, 761 F.3d at 740-41 (defendant's practice of advertising normal retail prices as temporary price reductions applied to all of its merchandise); *Benson v. Fannie May Confections Brands, Inc.*, No. 17 C 3519, 2018 WL 1087639, at *5 (N.D. Ill. 2018) (defendant used slack-fill in all of its candy boxes); *Ulrich v. Probalance, Inc.*, No. 16 C 10488, 2017 WL 3581183, at *7 (N.D. Ill. Aug. 18, 2017) (all of the defendant's products the plaintiff complained of contained the same misleading misrepresentations).

for items" and holding that the plaintiff sufficiently pled risk of future harm under the UDTPA).

Further, because Plaintiff has alleged a company-wide, pervasive, and continuous" false advertising campaign, the court's holding in *Le v. Kohls Dep't Stores, Inc.*, 160 F. Supp. 3d 1096, 1109 (E.D. Wisc. 2016), is instructive. Specifically, the court in *Le* held that:

> [u]nlike *Bohn*, where the plaintiff was clearly put on notice of a certain[] drug['s] inefficacy, without further factual development, the Court is unclear just exactly what Le would be expected to be 'aware" of to avoid future harm from Kohls. For example, should Le be 'aware' that housewares are deceptively priced, while men's apparel is not? Should Le be "aware" that Kohls' holiday sales are more egregiously deceptive than their day-to-day offers? These hypothetical questions underscore the point that discovery is necessary to parse out the salient facts in relation to Le's claim for relief.

160 F. Supp. 3d at 1110 (internal citations omitted).

The same is true here. Plaintiff is at risk for future harm because Walmart's false Shelf Pricing is company-wide, pervasive, continuous, and affects different products at different times. Therefore, as long as Walmart's deceptive practices are allowed to continue, Plaintiff cannot be "aware" of what items will have false Shelf Pricing on any given day.

## IV.  Plaintiff Properly Pled a Claim for Unjust Enrichment

The District Court dismissed Plaintiff's claim for unjust enrichment based on its erroneous dismissal of Plaintiff's ICFA and UDTPA claims. *See* Opening Br. at 38-39. Because Plaintiff has sufficiently pled claims under the ICFA and the UDTPA, Plaintiff's Complaint claim sufficiently states a claim for unjust enrichment.

**V.      Dismissal of the Complaint Was Improper With or Without Prejudice**

The District Court's ruling bars any consumer from making an ICFA, UDTPA, or unjust enrichment claim when a retailer issues a receipt for the transaction at issue. Plaintiff received a receipt. Under this new rule of law created by the District Court's erroneous decision, any request to amend his claims would be futile.

As Walmart quotes from this Court: "[a] plaintiff should 'offer [a] meaningful indication of how [he] would plead differently" in order to be granted the liberal and discretionary right to amend. *Fosnight v. Jones*, 41 F.4th 916, 925 (7th Cir. 2022); Response Br. at 29. Since the District Court dismissed the Complaint, with prejudice, because Walmart issued a receipt, there was no guidance from the District Court about how a different pleading could sustain any action. Accordingly, there was no opportunity to address this below, and filing this appeal is not a waiver of any right or ability to amend the Complaint. Plaintiff continues to reserve all rights but concedes that if a retailer is insulated from any ICFA, UDTPA, or Unjust Enrichment claim by merely issuing a receipt after misleading its shoppers, Illinois consumers have no claims under the Illinois consumer protection laws.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court reverse the District Court's order dismissing this case, direct the District Court to find that Plaintiff stated cognizable causes of action against Walmart under the ICFA for deceptive and unfair practices, the UDTPA, and for unjust enrichment, and remand for further proceedings.

Respectfully submitted,

**BERNSTEIN LIEBHARD LLP**
Stanley D. Bernstein
Michael S. Bigin
Stephanie M. Beige

By: /s/ Stanley D. Bernstein
        STANLEY D. BERNSTEIN
        10 East 40th Street
        New York, New York 10016
        Telephone: (212)779-1414
        Bernstein@bernlieb.com
        Bigin@bernlieb.com
        Beige@bernlieb.com


        **GINGOLD LEGAL**
        Scott H. Gingold
        1326 Isabella Street
        Evanston, IL 60201
        Telephone: (773)793-9093
        scott@gingoldlegal.com

## CERTIFICATE OF SERVICE

The Undersigned Counsel of Record for the Plaintiff-Appellant, Yoram Kahn,

hereby certifies that on 6th day of October, 2023, I electronically filed the foregoing

with the Clerk of the Court for the United States Court of Appeals for the Seventh

Circuit by using the CM/ECF system. I certify that all participants in the case are

registered CM/ECF users and will be served by the CM/ECF system.

Dated: October 6, 2023

**BERNSTEIN LIEBHARD LLP**
Stanley D. Bernstein
Michael S. Bigin
Stephanie M. Beige

By:/s/ Stanley D. Bernstein
    STANLEY D. BERNSTEIN

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with Federal Rule Appellate Procedure 32 and Circuit Rule 32.

1.     This brief complies with the type-volume limitations set forth in FederalRule Appellate Procedure 32(a)(7) and 32(g), as supplemented by Circuit Rule 32, because it contains 6,995 words based on the Word Count feature of Microsoft Word.

2.     This brief complies with the typeface and type style requirements set forth in Circuit Rule 32 because the brief has been prepared in a proportionally spaced typeface using Microsoft Word in 12-point Century Schoolbook font.

Dated: October 6, 2023

**BERNSTEIN LIEBHARD LLP**
Stanley D. Bernstein
Michael S. Bigin
Stephanie M. Beige

By:/s/ Stanley D. Bernstein
        STANLEY D. BERNSTEIN